IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

ZEPHYRINUS EGBUONU

      Plaintiff

2007 NOV -8  A 10: 16

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

-against-

Civil Number 2:07cv998 - WKW

Jury Trial Demanded

CAPTAIN, BARRETT; DEPUTY WARDEN,
ROWELL; WARDEN, McDONELL; ALABAMA
DEPARTMENT OF CORRECTION LEGAL
DIVISION, KIM THOMAS; ALABAMA
DEPARTMENT OF CORRECTION
COMMISSIONER OFFICER, COMMISSIONER
RICHARD ALLEN; ALABAMA DEPARTMENT
OF CORRECTION, COMMISSIONER
CAMPBELL;  AND  JOHN AND JANE DOE
No. 1 - 10, SUED IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITIES.

      Defendants.

Plaintiff reserves the right
to Amend complaint and
damages.

## CIVIL COMPLAINT

This is a civil complaint under **42 U. S. C. § 1983**, against the above
named defendants.  Plaintiff is alleging that defendants arbitrary denial
Plaintiff access to legal materials for preparation of legal document, right
of access to the court, adequate law library, access to internet print out
materials, failed to train its staffs on how to conduct their duties and to
protect prisoners constitutional rights.

**JURISDICTION**

1.  Jurisdiction is conferred pursuant to **28 U. S. C. § 1331, 1343(a)(3)** and **1367.**  In addition, the damages exceeds $75,000.00.

**VENUE**

2.  The Middle District of Alabama is an appropriate venue under **28 U. S. C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

3.  Kilby Correctional Facility (KCF) is a state facility of confinement for convicted criminal especially felons.  KCF is located at 12201 Wares Ferry Road, Montgomery, Alabama 36117.  He is sued in his individual and official capacities.  KCF holds over about 1000 inmates.

4.  Alabama Department of Correction (ADOC) is a governmental agency that manage and administer jurisdiction's prison and state correctional facility including KCF.  ADOC is located at 301 South Ripley Street, Montgomery, Alabama 36104.

5.  Plaintiff was incarcerated at KCF during the events described below in this complaint.

6.  Defendant Barrett is the Correctional Captain at KCF, employed at KCF, is responsible for administration, security and inmates safety, and also in charge of inmates job assignments, law library, inmates complaints, mail contents and its compalints, safety and supervision of inmates general population.  He is sued in his individual and official capacities.

7.  Defendant Rowell is the Correctional Deputy Warden and acts as Warden in the absence of the Warden, employed by KCF, is responsible for all administration, security, condition and operations at KCF and is in charge of the supervision of daily operations, policy maker, discipline of all

8.  Defendant McDonell is the Warden at KCF, employed at KCF, and is responsible for condition and operation at KCF, reviewing all administratives and inmates unsolved complaints, final policy-maker, maintain inmates' safety at all levels, and provides training to his correctional staffs.  He is sued in his individual and official capacities.  Presently employed at the ADOC.

9.  Defendant Thomas works at ADOC legal Division, employed by ADOC, responsible to manage administer ADOC facilities inmates' law libraries, law library policy-maker, and in charge of reviewing administrative law library requests and complaints made by law librarian and inmates, providing ADOC inmates law libraries with legal materials needed by inmates, providing inmates with adequate law library, finding and assembling of authorities that bear on a question of law for the ADOC facilities inmates law libraries, and training of ADOC facilities staffs on legal assistance to inmates.  He is sued in his individual and official capacities.

10. Defendant Commissioner  Campbell  is the commissioner of ADOC at the time the Plaintiff entered the KCF, employed by ADOC and State of Alabama, is responsible for manage and administer all state's correctional facilities, final policy-maker, and in charge of providing inmates with adequate law library and right of access to the court.  He is sued in his individual and official capacities.

11. Defendant Commissioner Allen is the commissioner of ADOC at the time Plaintiff was in the KCF, was successor of Commissioner Campbell  employed by ADOC and State of Alabama, is responsible for manage and administer all state's correctional facilities, final policy-maker, and in charge of providing inmates with adequate law library, right of acces to the court and safety. He is sued in his individual and official capacities.

3

12. At the times relevant to the events described herein, all defendants have acted under color of laws, and continue to act under color of state law.

**FACTS**

13. Plaintiff exhausted his state pre-trial writ; **Ex. parte Egbuonu** 911 So. 2d 755 (Ala. Crim. App. Nov 24, 2004), Cert. Denied 911 So. 2d 755 (Ala. Apr. 22, 2005), his pre-trial writ was denied. (**See Exhibit No. 1).**

14. Plaintiff was not appointed a public defender (defense counsel) by State of Alabama to appeal his exhausted pre-trial writ state remedies to federal court.

15. Plaintiff choses to proceeded Pro-Se and litigated his writ to federal court.

16. Plaintiff requested several assistance from the Kilby Correctional Facility (KCF) law library to furnish him several out of state caselaw decisions including the one's cited on his denied **Ex. parte Egbuonu** so that he would prepare and file his writ to the federal court.

17. The KCF law library did not have the caselaw decisions plaintiff requested.

18. Plaintiff requested assistance from the KCF institution law library to assist him on obtaining the caselaw decisions dealing with identifying informations within and outside of state of Alabama, so he would further prepare and file his writ in time to federal court.

19. The requested informations and caselaw decisions were unavailable at the KCF institution law library and were never furnished to him.

20. On February 13, 2006, the KCF law librarian replied to one of his several requests, informed him to contact Alabama Department of Correction (ADOC) Legal Division for further assistance.

21. The KCF law librarian also stated that the KCF have no access to federal district or circuit cases from the 1st, 2nd, 3rd, 4th, 6th, 8th, 9th, 10th, D. C. or federal circuits other than the hardback volumes currently in the back room of the law library which ended with cases whose opinions were issued in approximately March of 2005. **(See Exhibit No. 2)**

22. The KCF law librarian further stated that Plaintiff's requested caselaw decisions is not a state case from the State of Alabama. It is from Northwestern Reporter which the KCF law library do not have.

23. Plaintiff's requested Northwestern Reporter caselaw decision was cited by State of Alabama in Plaintiff's State of Alabama denied writ.

24. Furthermore, the KCF law librarian provided Plaintiff form to complete and send to ADOC legal division. Plaintiff completed the form, signed and gave the form back to the KCF law librarian to process and provide him the informations requested so that Plaintiff would prepare and file his writ to the federal court.

25. Plaintiff did not receive the caselaw decisions requested from the defendants McDonell, Rowell and Barrett.

26. On about February 26th, 2006, Plaintiff received the State of Alabama Attorney General's response reply brief of his post-conviction direct appeal (Appellee brief) which cited another out of state caselaw decisions. **(See Exhibit No. 3)**

27. Plaintiff was represented by public defender on his states' post-conviction direct appeal. In pre-trial writ Plaintiff was not appointed a public defender by the State of Alabama.

28. On February 28, 2006, Plaintiff requested assistance from the KCF law library to provide him the out of state caselaw decisions cited by the Alabama Attorney General on the Appellee brief for his review, prepare and file his exhausted State of Alabama writ to the federal court in time.

29. The KCF law library did not have the caselaw decisions plaintiff requested.

30. The law librarian later informed plaintiff that his requested caselaw decisions were not available in the law library computer database.

31. The law librarian advised plaintiff to have family/someone print the caselaw decisions in free world internet and mail it to plaintiff through United States Postal Service (USPS) mail.

32. The KCF law librarian also advised plaintiff to talk to defendants Rowell and Barrett for further assistance.

33. As advised by the KCF law librarian, plaintiff asked his family and friends to print out the caselaw decisions cited in plaintiff's denied state writ, appellee brief, other states identity theft statutes and informations from the internet and mail to him through USPS.

34. Defendant Barrett ordered plaintiff's mails containing the internet print out to be returned to the sender, denying plaintiff's access to receive the internet mails containing internet printed out caselaw decisions.

35. Plaintiff files IRS to defendants KCF Warden and Rowell requesting assistance to allow him receive internet print out documents including the caselaw decision through the USPS mail from his family and friends.

36. Plaintiff did not receive response from defendant KCF Warden and Rowell.

37. On February 28, 2006 plaintiff informed Captain Bohr about the inadequate of the KCF law library.  Captain Bohr told plaintiff that others ADOC's correctional facilities he knew have access to internet but decline to state the reasons the KCF law library lacks such access to the caselaw decisions plaintiff requested.  Captain Bohr advised plaintiff to contact defendant Rowell and Barrett.

38. Plaintiff did not received the caselaw decisions requested from the defendants McDonell,  Rowell and Barrett.

39. On March 6, 2006 defendant Thomas of ADOC Legal Division respond back to

plaintiff's law library IRS requests dated February 13rd, 2006 signed by defendant Barrett on February 14, 2006.

40. Defendant Thomas only furnish Plaintiff the conclusion of two caselaw decisions, failed again to provide plaintiff all the caselaw decisions cited in Plaintiff's denied state's writ and appellee nor explain his reasons not to do so.

41. The State of Alabama did not appoint Plaintiff's a public defender to litigate his state denied writ to federal court.

42. On March 8, 2006, Plaintiff sent letter to defendant Thomas requesting for assistance to provide him with legal informations; out of state caselaw decision including the caselaw decisions cited in Plaintiff's state denied writ and appellee brief.

43. On March 16, 2006, defendant Thomas of ADOC Legal Division respond back to plaintiff's letter request dated March 8, 2006.

44. Defendant Thomas did not provide Plaintiff the out of state caselaw cited on Plaintiff's writ, appellee brief and other states identity theft statute containing similar provision venue so Plaintiff would review, prepare and file his exhausted states' writ to the federal court as Pro-Se.

45. Plaintiff did not received response from defendant Thomas nor was plaintiff's requested legal caselaw decision and material documents provided to him by the KCF law library and or ADOC Legal Division.

46. On May 02, 2006, Plaintiff send letter to defendant Commissioner Allen requesting for assistance to provide him legal material document needed to prepare his writ to federal court; the out of states caselaw decisions cited in Plaintiff's denied writ, appellee brief, and other states identity theft statute containing venue provisions.

47. On Plaintiff did not received a reponse from defendant Commissioner Allen nor

his office or ADOC Legal Division.   Plaintiff also did not received the legal informations requested from defendant Commissioner Allen nor his office or ADOC Legal Division.

48. No reason or explanation were so ever given to Plaintiff by defendants KCF Warden, Rowell, Barrett, Thomas,  Campbell  and  Allen on their failure to provide him the legal material documents requested.

49. On July 30, 2006, Plaintiff sent IRS to defendants Rowell and Barrett requesting the cited out of state caselaw decisions in Plaintiff's  writ and appellee brief.  Plaintiff received no response back from the defendant.

50. On August 1, 2006, Plaintiff was transferred to Staton Correctional Facility (SCF), Elmore, Alabama.

51. Upon information and belief, Plaintiff files several slip (IRS) to defendants KCF Warden, Rowell, and Barrett requesting assistance to provide him with the caselaw decisions cited in his Plaintiff's pre-trial writ and post-conviction appellee briefs, to allow him receive internet print out including caselaw decisions through the USPS mail from his family and friends so Plaintiff would review further prepare and file his denied writ to the federal court as Pro-Se.

52. Upon information and belief, Plaintiff sent letters to defendants Thomas and Commissioner Allen requesting legal assistance to provide him the caselaw decisions and other identifying information statute provision containing venue for his review and file his writ to the federal court as Pro-Se.

53. As a result of defendants KCF Warden, Rowell, Barrett, Thomas and Campbell, Commissioner Allen intentional discrimination, conspiracy, deliberate indifference and negligence to Plaintiff's serious legal material documents needs, Plaintiff suffered to litigate his States' exhausted writ to the federal court.

54. As a result of defendants KCF Warden, Rowell, Barrett, Thomas and Commissioner Allen intentional discrimination, conspiracy, deliberate indifference and negligence to Plaintiff's serious legal material documents needs, Plaintiff suffered frequent heacdaches, nightmares, psychological effects.

55. As a result of defendants kCF Warden, Rowell, Barrett, Thomas, Commission-er Campbell and Allen    failure to train staffs and no adequate law library policy in place, Plaintiff suffered the above aforesaid, economic and non economical damages, and continue to suffer.

56. Despite the events described above, inmates law library at the KCF has not improved. Defendants KCF Warden, Rowell, Barrett, Thomas, Commissioner Campbell and Allen have not improved procedures for inmates  to have access to receive the caselaw decisions needs to research and appeal his case to the federal court, to have access to other states and federal caselaw decisions of new enacted laws, to provide inmates adequate computer database terminal to conduct reserach in absence of current books, to provide inmate with adequate assistance from train official with knowledge of law and computer database search, to allow inmates receive internet print out documents, to provide inmates with legal materials supplies needed, to provide inmate with typewriter and reasonable xerox copy fees, and to provide inmates with adequate current caselaw decisions.

57. Defendants have failed to improve their law library and mail control policies.  They have failed to provide inmates with an legal material documents and adequate law library.  They haved failed to increase staffing or improve the training of KCF officials in the inmates' legal work assistant.  They have failed to share certain caselaw decisions with inmates upon inmates request. They have failed to increase staffing to a level adequate to provide inmates

9

incoming internet print out materials needed for legal work. As result of these
their failure, plaintiff has suffered in their hand and continue to suffer.

58. Plaintiff submits that his claim was "arguably actionable or nonfrivolous",
Plaintiff was a victim of identifying information, falsely labelled fugitive
from Alabama, tried in the accuser's state where no offenses or element of
offenses were committed, a State Plaintiff has never been before nor set
his foot or had any contact. Plaintiff was labelled falsely fugitive pursuant
to Alabama State Statute 13A-8-196 inconsistent with Federal Statute,
Constitution of the United States. Plaintiff now submits if grant to proceed,
would not overturn his conviction in direct appeal pending before the State of
Alabama Courts since August, 2005. **United States V. Rodriguez-Moreno** 526 US
275, 143 L Ed 2d 388, 119 S. Ct. 1239 (1999); **Hyatt V. Pope** 188 US 691, 47 L Ed
657, 23 S. Ct. 456 (1903); **State of Georgia V. Mayze** 622 S. E. 2d 836 (GA. Nov.
2005)(Dissenting Opinion). **(See Exhibit No. 4)**

59. Plaintiff has exhausted all available administrative remedies regarding the
matters described in this complaint. Plaintiff had filed IRS to defendants
KCF Warden, Rowell, Barrett asking for legal material assistance. Plaintiff
sent letters to Defendants Thomas and Commissioner Allen of the ADOC asking for
legal materials assistances so he would further litigate his writ to federal
court.

**Cause of Actions**

60. Plaintiff support the following claim by reference to the previous
paragraph of this complaint.

61. The action of defendant Barrett in returning plaintiff's incoming mail
containing internet print out without close security inspection is in conflict
with Department of Correction Services Directives, constitutes deliberate
indifference to the plaintiff's legal needs, prompt constructive development,
interfere with plaintiff's right of process to the court, and contributed to

and proximately caused violation of First, Eighth, and Fourteenth Amendment rights to the United States Constitution.

62. The action of defendants Rowell and Barrett in returning Plaintiff's incoming mails containing internet print out without close security inspection are arbitarily and selective enforcement of policies based on the lack of regulations resulted in deprivation of plaintiff's liberty interest, due process of law, and right of access to the court in violation of First and Fourteenth Amendment rights to the United States Constitution.

63. The failure of defendants Allen, Thomas, KCF Warden, Rowell and Barrett to provide the plaintiff the out of states caselaw decisions Plaintiff requested had hindered Plaintiff opportunity to research, prepare, file his federal writ pleading necessary to commence court proceeding affecting his personal liberty, thus caused actual prejudice to Plaintiff, and constitutes the tort of negligence under the law of state and federal, and in violation of First, and Fourteenth Amendment of the constitution of the United States.

64. The failure of defendants Allen, Thomas, KCF Warden, Rowell and Barrett failure to provide Plaintiff's access to legal material and supplies (caselaw decision and other identifying informations statute provisions) Plaintiff needed to prepare, serve, file court document resulted in frustrating plaintiffs' litigation efforts and placed him to the point not to file his constitutional legal claim, denied the Plaintiff the due process and equal protection of law, right of access to the court in violation of First, and Fourteenth Amendments rights to the United States Constitution and Eighth Amendment.

65. The failure of defendants Allen, Thomas, KCF Warden, Rowell and Barrett to intervene, despite their knowledges of the above described due process violations and their actions not to intervene haved caused plaintiff to miss court filing deadline and subject Plaintiff not to prepare purse his litigation constituted deliberate indifference and further denied the Plaintiff the due of law and right

of access to the court in violation of First, and Fourteenth Amendment of the United States of America.

66.    The defendants' conduct constituted discrimination, obstruction of justice and conspiracy.    Defendants are knowingly, willfully, intentionally over months designed pattern/policy in which they discriminated, aware that their conduct are wrong by working together denying Plaintiff access to caselaw decisions which Plaintiff's needed to review, prepare, file his denied writ to the Federal Court. Defendants conduct are carried out together among each responsible defendants which injured Plaintiff and continue to do so.

67.    The defendants Thomas and Commisioner Allen conducts are intentional continous pattern, because defendants Thomas and Commissioner Allen has been aware of their policy for many months but continued to use them deprived inmates like Plaintiff adequate legal law policy.and legal materials.

68.    The Defendants  have failed to adequately train its staff relating to Plaintiff's right of access to the court, failed to satisfy its legal obligation to provide Plaintiff meaning right of access to the court now resulted in deliberate indifference to the Plaintiff, and contributed to and proximately caused the above described violation of Plaintiff's First, Eighth and Fourteenth Amendments of the constitution.

69.    The Defendants  have failed to hire adequate staff, train and supervisor its staff in inmates' incoming mails containing prompt constructive development material print out from internet and right of access to the court caused deliberate indifference to the Plaintiff and contributed to violation of Plaintiff's First and Fourteenth Amendment of the constitution of United States of America.

70.    The defendants' conducts constituted that defendants conspired agreed among themselves and others not to provide the Plaintiff the caselaw decisions cited by

12

the State of Alabama Attorney General and Court of Criminal Appeals Honorable
Judges, deprived the Plaintiff to further litigate his case to federal court for
his freedom and liberty.

71.  The defendants and among others conspired agreed to maintain  inadequate law
library for the inmates and law library policy or custom of violating inmates
rights to adequate law library and access to the Courts.

72.  The actions of defendants Allen and Thomas conduct choices; knowingly about
Plaintiffs request for caselaw decisions and failed to provide Plaintiff's re-
quested caselaw decisions so that Plaintiff could further his litigation, is non-
discretionary regulating and defendants  of regulartory agencies have no discret-
ion to violate command of State or Federal Statutes or regulations and United
State Supreme Court set standard relating to Plaintiff's access to the Court.

73.  The defendants and their respective Supervisors and or Subordinates' action
conducts constituted violation of inmates Constitutional rights when they know
about the conduct of defendants and facilitated it, approved it, condone it,
turned a blind eye for fear of what they might see.  The  defendants' Supervisors
and or Subordinates  have acted either knowingly or with deliberate reckless in-
difference to the Plaintiff, depriving Plaintiff his Constitutional rights under
the First, Eighth and Fourteenth Amendment of the United States Constitution.

74.  Plaintiff assert the defendant's conduct were not reasonable in the light of
the precedent that existed at the time of alleged violation.

13

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this court:

A.  Declare that the acts and ommission described herein violated Plaintiff's rights under the constitution and laws of the United States.

B.  Enter an injuntion ordering defendants Alabama Department of Corrections, Kilby Correctional Facility, Commisioner Allen, Thomas, Campbell, Rowell, McDonell, Barrett, their sucessors, agents, employees, and all persons acting in concert with them; to provide inmates access to legal materials need for preparation of legal documents, adequate law librarian staff train in law and computer database search (new caselaw decisions are in computer), adequate computer database terminal for inmate's legal research, reasonable photocopy fees instead of 50 cents a photocopy, adequate access to law library, access to current legal caselaw decision journal, access to typewriter, access to receive internet print out material through United States Postal Service Mails, implement adequate and uniform mail and law library control policies, and train staff to satisfy its obligation to provide inmates meaning right of access to the access.

C.  Award Nominal damages in the following amounts:

  $100.00 each day for the time Plaintiff was in the Alabama Department of Corrections facility in absence of the caselaw decisions requested.

E.  Award Compensatory damages in the following amounts:

  1.  $800,000.00 jointly and severally against defendants Rowell and Barrett for the emotional pain, emotional distress, frustration, anxiety, injury, psychological effects, sleeplessness resulting Plaintiff's incoming mails containing internet print out and failure to hire adequate Staffs and take actions to curb the know pattern of denying depriving inmates' like Plaintiff access to the internet print out and internet print out of current caselaw decisions.

2.   $1,500,000.00 jointly and severally against defendants Allen and Thomas for the mental and emotional pain, emotional distress, frustration, anxiety, injury, psychological effects, sleeplessness substained as a result of defendants Allen and Thomas failure to provide Plaintiff access to legal material and supplies Plaintiff needed to further his litigation to the Federal Court for his freedom and liberty.

3.   $1,500,000.00 jointly and severally against defendants Thomas and Allen for deprivation of Plaintiff's due process, equal protection, fundamental interest and liberty as a result of failure to take actions curb the know pattern of denying depriving inmates' like Plaintiff access to legal material and supplies Plaintiff needed to purse his litigation to Federal Court.

4.   $3,000,000.00 jointly and severally against defendants Campbell, Allen, Thomas, McDonell for the mental and emotional distress, emotional pain, anxiety, frustration, injury, psychological effects, sleeplessness resulting from defendants Campbell, Allen, Thomas, McDonell failure to hire adequate Staffs train in laws and train to supervise its Staffs in inmates' Plaintiff's incoming internet mails, access to the Court and then satisfy it legal obligation.

F.   Awards consequential damages in the following amount relating to the above described Civil Complaint only:

$10,000,000.00 jointly and severally against the defendants Campbell, Allen Kim and McDonell for legal materials and supplies including caselaw decisions deprivation and loses  both economic and non-economic resulting from defendants Campbell, Allen, Kim and McDonell direct and indirect acts.

G.   Awards discretionary damages in the following amount:

$2,000,000.00 jointly and severally  against defendants for damages that are not precisely measurable but are determined by the subjective judgement of a

jury.

H. Award Nonpecuniary damages against defendants for defendants' direct and indirect acts.

I. Award Punitive Damages in the following amounts:

    1. $500,000.00 each against defendants Rowell and Barrett

    2. $1,000,000.00 against defendant McDonell

    3. $2,000,000.00 against defendant Campbell

    4. $7,000,000.00 against defendant Kim

    5. $2,000,000.00 against defendant Allen

J. Award Attorney fees and interest based upon the length of the time the suit is finally resolved.

K. Order such additional relief as this Court may deem just and proper.

Respectfully submitted, this __3rd__, day of November, 2007

                                             *Egbuonu Zephyr*

                                         Zephyrinus Egbuonu
                                         # 27041 - 265
                                         Federal Detention Center
                                         P. O. Box 5010
                                         Oakdale, Louisiana 71463

I declare under the penalty of perjury that the gorgoing is true and correct.

Executed on __3rd__, day of November, 2007

                                             *Egbuonu Zephyr*

                                         Zephyrinus Egbuonu

## CERTIFICATE OF SERVICE

    I certify that I have served a true and correct copy of Plaintiff's Civil Complaint, Exhibit 1, 2, 3 and 4 against Kilby Correctional Facility Captain Barrett, Deputy Warden Rowell, Warden McDonell, and Alabama Department of Correction Commissioners; Commissioner Richard Allen, Commissioner Campbell and John and Jane Doe No. 1 to 10, via United States Postal Service, postage prepaid, properly affixed and addresses to:

Office of the Clerk
Civil Division
United States District Courts
Middle District Alabama
15 Lee Street
Montgomery, Alabama 36104


Respectfully submitted, this __3rd__ , day of November, 2007.

_Egbuonu Zephyr_
-Zephyrinus Egbuonu

ZEPHYRINUS BG-BUONU
# 27041 - 265
FEDERAL DETENTION CENTER
P. O. BOX 50101
OAKDALE, LOUISIANA, 71463



Label 107R, February 2006

PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
www.usps.com



United States Postal Service®
DELIVERY CONFIRMATION™

0306 2400 0000 1958 0693

OFFICE OF THE CLERK
CIVIL DIVISION -United States Dist.
Court - Middle District Alabama
15 LEE STREET
MONTGOMERY, ALABAMA 36104



UNITED STATES
POSTAL SERVICE



0000          36104

U.S. PO
GRAND PRAI
7505
NOV 06
AMOUN

$5.
00025

Zephyrinus Egbuonu   v.   State of Alabama
Case. No.  2:07cv998 -WKW

**Exhibit No.**

1.      Ex. parte Egbuonu 911 So. 2d 755 (Ala. Crim. App. Nov. 24, 2004),
        Cert. Denied 911 So. 2d 755 (Ala. Apr. 22, 2005)

2.      Kilby Law Library respond dated February 13, 2006

3.      State of Georgia v. Mayze 622 S. E. 2d 836 (GA. Nov. 2005)[was cited
        on Alabama Attorney General's Appellee Brief ].

4.      State of Alabama v. Zephyrinus Egbuonu Partial Trial Reporter's
        Official Transcript on Appeal.

Westlaw.

911 So.2d 748

911 So.2d 748
**(Cite as: 911 So.2d 748)**

H
Ex parte EgbuonuAla.Crim.App.,2004.
Court of Criminal Appeals of Alabama.
Ex parte Zephyriuns **EGBUONU.**
(In re State of Alabama
v.
Zephyriuns Egbuonu).
CR-03-1721.

Nov. 24, 2004.
Rehearing Denied Jan. 21, 2005.

**Background:** Defendant, a resident of California who was arrested and extradited to Alabama on charges of identity theft, filed petition for writ of habeas corpus. The Circuit Court, Jefferson County, No. CC-04-1422,Alfred Bahakel, J., denied petition, and defendant appealed.

**Holdings:** The Court of Criminal Appeals held that:

(1) claim that venue provision of identity theft statute violated constitution was cognizable in habeas corpus;

(2) identity theft statute that allowed venue to be placed in the county of the residence of the person who was subject of identification documents or identifying information did not violate constitution;

(3) venue was proper in Alabama county where victim resided;

(4) Alabama had authority to enact statute penalizing identity theft separate from law enacted by federal government; and

(5) $100,000 bail was not excessive.

Petition denied.

Shaw, J., concurred in the result.

Certiorari denied, Ala., 911 So.2d 755.
West Headnotes
**[1] Habeas Corpus** 197 ☞444

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(A) Ground and Nature of Restraint
         197k443 Jurisdictional Defects
            197k444 k. Personal Jurisdiction; Venue. Most Cited Cases
Defendant's claim that statute allowing that venue for identity theft is proper in county other than where offense occurred was unconstitutional was cognizable in pretrial petition for writ of habeas corpus, where claim, if meritorious, would render charges void. Code 1975, §§ 13A-8-196, 15-21-1.

**[2] Habeas Corpus** 197 ☞445

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(A) Ground and Nature of Restraint
         197k445 k. Void or Invalid Judgment or Order. Most Cited Cases
The writ of habeas corpus is against void but not irregular or voidable judgments. Code 1975, § 15-21-1.

**[3] Criminal Law** 110 ☞107

110 Criminal Law
   110IX Venue
      110IX(A) Place of Bringing Prosecution
         110k107 k. Constitutional and Statutory Provisions. Most Cited Cases
Identity theft statute that allowed venue to be placed in the county of the residence of the person who was subject of identification documents or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT NO. 1

911 So.2d 748

911 So.2d 748
(Cite as: 911 So.2d 748)

identifying information did not violate constitutional requirement that venue be placed in county where offense occurred. Const. Art. 1, § 6; Code 1975, § 13A-8-196.

**[4] Criminal Law 110 ☞108(1)**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k108 Locality of Offense in General
                110k108(1) k. In General. Most Cited Cases
By utilizing the doctrine of a continuing offense, congress may provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates.

**[5] Criminal Law 110 ☞107**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k107 k. Constitutional and Statutory Provisions. Most Cited Cases
The legislature has the authority, within the confines of the constitution, to enact special venue statutes.

**[6] Criminal Law 110 ☞108(1)**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k108 Locality of Offense in General
                110k108(1) k. In General. Most Cited Cases
Venue for California defendant's trial for identity theft was proper in Alabama county where victim resided. Code 1975, § 13A-8-192.

**[7] Criminal Law 110 ☞108(1)**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k108 Locality of Offense in General
                110k108(1) k. In General. Most Cited Cases

Identity theft, by its definition, is a continuing offense that in most instances will occur in more than one county or even more than one state, for the purposes of venue. Code 1975, § 13A-8-192.

**[8] Criminal Law 110 ☞106**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k106 k. Nature and Necessity of Venue in Prosecution. Most Cited Cases
Where there is no legislation on the matter of venue courts look to the purpose of the statute defining the offense.

**[9] Criminal Law 110 ☞106**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k106 k. Nature and Necessity of Venue in Prosecution. Most Cited Cases
Venue in a criminal case, though a constitutional matter, requires an inquiry into what conduct the statute proscribes.

**[10] Criminal Law 110 ☞108(1)**

110 Criminal Law
    110IX Venue
        110IX(A) Place of Bringing Prosecution
            110k108 Locality of Offense in General
                110k108(1) k. In General. Most Cited Cases
Places that suffer the effects of a crime are entitled to consideration for venue purposes.

**[11] False Pretenses 170 ☞2**

170 False Pretenses
    170k2 k. Statutory Provisions. Most Cited Cases

**States 360 ☞18.15**

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.15 k. Particular Cases, Preemption

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 So.2d 748

911 So.2d 748
(Cite as: 911 So.2d 748)

or Supersession. Most Cited Cases
Alabama had authority to enact statute penalizing
identity theft separate from law enacted by federal
government.

[12] Extradition and Detainers 166 €═39

166 Extradition and Detainers
    166I Extradition
        166I(B) Interstate
            166k39 k. Examination, Determination,
and Review of Proceedings. Most Cited Cases
Defendant's waiver of extradition and voluntary
return to Alabama precluded appellate review of
challenge to validity of extradition.

[13] Extradition and Detainers 166 €═42

166 Extradition and Detainers
    166I Extradition
        166I(B) Interstate
            166k42 k. Rights of Persons Illegally
Brought Within Jurisdiction. Most Cited Cases
Once a fugitive has been brought within custody of
the demanding state, legality of extradition is no
longer proper subject of any legal attack by him.

[14] Bail 49 €═52

49 Bail
    49II In Criminal Prosecutions
        49k50 Amount of Bail
            49k52 k. Excessive Bail. Most Cited Cases
Bail of $100,000 on charge of identity theft was not
excessive with respect to California defendant who
was citizen of Nigeria who had no ties to Alabama.
Rules Crim.Proc., Rule 7.2.

*750 Sidney J. Hughes, Homewood, for petitioner.
Troy King, atty. gen., and Andy Scott Poole, asst.
atty. gen., for respondent.
PER CURIAM.
The petitioner, Zephyrius Egbuonu, appeals the
denial of his petition for a writ of habeas corpus.
In March 2003, the petitioner was arrested in
California and charged with first-degree identity
theft of the identity of an Alabama resident. §
13A-8-192, Ala.Code 1975. The charges stemmed

from items sent to a post office box in California
addressed to "James Roberson" [FN1]-a captain in
the Jefferson County Sheriff's Department.
Apparently, the post office box was traced to
Egbuonu.[FN2] Egbuonu waived any challenge to
extradition, and he was returned to Alabama in
October 2003. Bail was set at $100,000. In July
2004, Egbuonu filed a petition for a writ of habeas
corpus in Jefferson County-the county where he is
incarcerated. Egbuonu alleged that he is being
illegally detained in the Jefferson county jail
because, he argues, the statute that determines
venue for the crime of identity theft, § 13A-8-196,
Ala.Code 1975, is unconstitutional. Specifically,
he argued that § 13A-8-196 conflicts with Art. I, §
6, Ala. Const. of 1901. Egbuonu also moved to
reduce his $100,000 bail. Judge Alfred Bahakel
held a hearing and denied the petition and the
motion to reduce bail. This appeal followed.

        FN1. The victim's name is spelled
        differently throughout the documents that
        have been filed with this Court.

        FN2. The documents that this Court has
        received contain very little information
        concerning the facts surrounding the
        charge.

Because this case concerns the matter of pretrial
bail, on August 26, 2004, we issued an order
informing the parties that we would expedite this
case pursuant to Rule 9(a), Ala.R.App.P.,[FN3] and
treat it as an original petition for a writ of habeas
corpus. See Colbert v. State, 717 So.2d 868
(Ala.Crim.App.1998), and Rule 21(c), Ala.R.App.P
. Egbuonu's trial is scheduled for January 10, 2005.

        FN3. Rule 9(a), Ala.R.App.P., states:
        "A review authorized by law from an order
        refusing or imposing conditions of release
        shall be determined promptly. Upon entry
        of an order refusing or imposing
        conditions of release, the trial court shall
        state in writing the reasons for the action
        taken. The review shall be heard without
        the necessity of briefs upon such papers,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 So.2d 748

911 So.2d 748
**(Cite as: 911 So.2d 748)**

affidavits and portions of the record as the parties shall present. The appellate court may order the release of the appellant pending the review."

[1] Egbuonu argues that § 13A-8-196, Ala.Code 1975, which provides that venue for the offense of identity theft is proper in a county other than where the offense occurred is unconstitutional because, he argues, it conflicts with Art. I, § 6, Ala. Const. of 1901. The State asserts that we should not address this issue in this habeas corpus petition; it argues that the only issue that is appropriately before this *751 Court is the petitioner's claim that his bail is excessive.

The circuit court held a hearing on Egbuonu's petition and then made the following entry on the case action summary sheet: "Motion for Petition for habeas corpus regarding alleged improper venue heard and denied."

Alabama's habeas corpus statute, § 15-21-1, Ala.Code 1975, provides:
"Any person who is imprisoned or restrained of his liberty in the State of Alabama on any criminal charge or accusation or under any other pretense whatever, except persons committed or detained by virtue of process issued by a court of the United States or by a judge thereof in cases of which such courts have exclusive jurisdiction under the laws of the United States or have acquired exclusive jurisdiction by the commencement of actions in such courts, *may prosecute a writ of habeas corpus according to the provisions of this chapter to inquire into the cause of such imprisonment or restraint.*"

(Emphasis added.)

[2] The Alabama Supreme Court has stated the following concerning a petition for writ of habeas corpus:
"Where one is in custody which is predicated upon an assumed and exercised judicial jurisdiction of matter or person that it is asserted did not legally exist, habeas corpus is the remedy to institute an investigation of the existence of such jurisdiction; an inquiry very different from one involving the

merely erroneous or irregular exercise of existent jurisdiction. Code 1896, § 4838; *Ex parte Sam,* 51 Ala. 34 [(1824)], *City of Selma v. Till,* 42 South. 405 [(Ala.1906)]; Church on Habeas Corpus, §§ 356, 352. That this remedy, under the conditions defined, is appropriate, has, on several occasions, served to invite, without question, the decision of this court. We therefore take up for review the constitutionality of the act approved August 2, 1907. Acts 1907, pp. 518-519."

*Fourment v. State,* 155 Ala. 109, 112-13, 46 So. 266, 267 (1908). In *Howard v. Bessemer,* 40 Ala.App. 317, 114 So.2d 158 (1959), the Alabama Court of Appeals stated:"In *Barton v. City of Bessemer,* 234 Ala. 20, 173 So. 626, 627 [(1937)], it was held that the constitutionality of an ordinance under which the petitioner had been convicted may be determined in a habeas corpus proceedings, for if the ordinance be unconstitutional, then, 'the court would have no jurisdiction, and the arrest, trial, and conviction of the defendant under a void ordinance would be a nullity, and the petitioner would be entitled to his discharge on habeas corpus.' "

40 Ala.App. at 321, 114 So.2d at 162. "The writ is against void but not irregular or voidable judgments. " *Hable v. State,* 41 Ala.App. 398, 399, 132 So.2d 271, 272 (1961). See also *Greer v. State,* 49 Ala.App. 36, 268 So.2d 502 (1972); *Parham v. State,* 285 Ala. 334, 231 So.2d 899 (1970); *Nations v. State,* 41 Ala.App. 581, 141 So.2d 537 (1962); *State v. Baker,* 268 Ala. 410, 108 So.2d 361 (1959). Because Egbuonu's arguments, if meritorious, would render the charges against him void, we will consider those claims in this habeas corpus petition.

Art. I, § 6, Ala. Const. of 1901, states, in pertinent part:
"That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining *752 witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do; and, in all prosecutions by indictment, a speedy, public trial, *by an impartial jury of the county or district in which the offense was committed ....*"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 So.2d 748

Page 6

911 So.2d 748
(Cite as: 911 So.2d 748)

Art. I, § 6, Ala. Const. of 1901.FN4

    FN4. The Minnesota Supreme Court, in *State v. Krejci*, 458 N.W.2d 407 (Minn.1990), reviewing a special venue statute related to venue for a case involving child abuse, held that the child-abuse statute that provided that venue was proper in the county where the abuse occurred or the county where the child is found did not conflict with Minnesota's constitutional provision regarding venue, which is identical to our constitutional provision on venue.

[6] Egbuonu also argues that § 13A-8-192, Ala.Code 1975, is unconstitutional and that the charges against him are void because § 13A-8-192 seeks to extend Alabama's jurisdiction beyond the borders of the State. He argues that no element of the crime with which he is charged occurred in Alabama; therefore, he argues, Alabama is without jurisdiction to prosecute the crime.

[7] No provision in Art. I, § 6, Ala. Const.1901, limits venue in a criminal case to one county or even one state. Section 13A-8-192, Ala.Code 1975, defines the crime of identity theft as follows:
"(a) A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:
"(1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim.
"(2) Obtains goods or services through the use of identifying information of the victim.
"(3) Obtains identification documents in the victim's name."

The Legislature in § 13-8-196 specifically designated that venue is proper either in the county where the crime took place or where the victim resides. Identity theft, by its definition, is a continuing offense that in most instances will occur in more than one county or even more than one state.

[8][9][10] However, where there is no legislation on the matter of venue courts look to the purpose of the statute defining the offense. "Venue in a criminal case, though a constitutional matter, requires an inquiry into what conduct the statute proscribes." *United States v. Muench*, 153 F.3d 1298, 1304 (11th Cir.1998).
"[A] review of relevant authorities demonstrates that there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors-the site of the defendant's acts, *754 the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding....
"....
"... [P]laces that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime...."

*United States v. Reed*, 773 F.2d 477, 481-82 (2d Cir.1985). See also *United States v. Johnson*, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944).

Section 13A-8-190 et seq., Ala.Code 1975, entitled, "The Consumer Identity Protection Act," by its very name was enacted to protect Alabama citizens from defendants seeking to steal their identities. Section 13A-8-196 specifically provides that venue is proper where the victim resides. See *United States v. Muench*, 153 F.3d at 1301-02 ("The victims of Muench's crime ... are in Florida. Therefore, the United States Attorney for the Northern District of Florida has a particularly strong interest in prosecuting Muench for his failure to pay past due child support."). This issue has no merit.

[11] Egbuonu further argues that Alabama cannot enact identity-theft legislation because the federal government has already passed laws on identity theft.

As the United States Supreme Court stated in *United States v. Wheeler*, 435 U.S. 313, 320, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978):

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

911 So.2d 748

911 So.2d 748
(Cite as: 911 So.2d 748)

"States and the National Government are separate political communities. State and Federal Governments '[derive] power from different sources,' each from the organic law that established it. *United States v. Lanza*, 260 U.S. 377, 382 [(1922)]. Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.' *Ibid.* And while the States, as well as the Federal Government, are subject to the overriding requirements of the Federal Constitution, and the Supremacy Clause gives Congress within its sphere the power to enact laws superseding conflicting laws of the States, this degree of federal control over the exercise of state governmental power does not detract from the fact that it is a State's own sovereignty which is the origin of its power."

(Footnote omitted.) This argument thus has no merit.

[12][13] Egbuonu next argues that his extradition from California was illegal because, he argues, he was incorrectly labeled as a "fugitive." However, as Egbuonu admits in his petition, he waived extradition to return voluntarily to Alabama. As this Court stated in *Davis v. State*, 536 So.2d 110 (Ala.Crim.App.1987):
"[T]he appellant was returned to Alabama because of his voluntary waiver of extradition. In *Siegel v. Edwards*, 566 F.2d 958, 959-60 (5th Cir.1978), the court stated:
" 'Although the extradition papers of which appellant complains were never executed, appellant's return to Louisiana was not the result of those extradition papers. Appellant was returned to Louisiana because of his voluntary waiver of extradition. Once a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him.' "

536 So.2d at 116.

[14] Last, Egbuonu argues that his $100,000 bail is excessive. Identity theft *755 in the first degree is a Class C felony. The bail schedule found in Rule

7.2, Ala.R.Crim.P., recommends a bail of between $1,000 to $10,000 for a Class C felony. However, we have held that the factors set out in Rule 7.2(a)(1-14), Ala.R.Crim.P., may be used to increase the recommended bail. See *Ex parte Thomas*, 815 So.2d 592 (Ala.Crim.App.2001). As Egbuonu goes to great lengths to point out in his brief, he has no ties to Alabama; he is a citizen of Nigeria who was living in California at the time he was arrested. Given the unique circumstances of this case and the sparse record before this Court we cannot say that the $100,000 bail in this case is excessive.

For the foregoing reasons, this petition for a writ of habeas corpus is due to be denied.

PETITION DENIED.

McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur; SHAW, J., concurs in the result.
Ala.Crim.App.,2004.
Ex parte Egbuonu
911 So.2d 748

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

911 So.2d 755

Page 1

911 So.2d 755
(Cite as: 911 So.2d 755)

**H**
Ex parte **Egbuonu**Ala.,2005.
          Supreme Court of Alabama.
     Ex parte Zephyrinus C. **EGBUONU**.[FN1]

> FN1. The defendant filed his petition
> under the name "Zephyrinus C. Egbuonu."
> The related case in the Court of Criminal
> Appeals spelled his name "Zephyriums C.
> Egbuonu."
>      (In re State of Alabama
>              v.
>      Zephyriuns C. Egbuonu).
>            1040647.

          April 22, 2005.

Petition for Writ of Certiorari to the Court of
Criminal Appeals (Jefferson Circuit Court,
CC-04-1422, Alfred Bahakel, Judge; Court of
Criminal Appeals, CR-03-1721).

Sid Hughes, Homewood, for petitioner.
Submitted on petitioner's brief only.
Prior report: Ala.Cr.App., 911 So.2d 748.

STUART, Justice.
The petition for the writ of certiorari is denied. See
*Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55
L.Ed. 735 (1911); and *Heath v. Jones,* 941 F.2d
1126 (11th Cir.1991).

In denying the petition for the writ of certiorari, this
Court does not wish to be understood as approving
all the language, reasons, or statements of law in the
Court of Criminal Appeals' opinion. *Horsley v.
Horsley,* 291 Ala. 782, 280 So.2d 155 (1973).

WRIT DENIED.

NABERS, C.J., and SEE, LYONS, HARWOOD,
WOODALL, SMITH, BOLIN, and PARKER, JJ.,

concur.
Ala.,2005.
Ex parte Egbuonu
911 So.2d 755

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## § 13A-8-192. Identity theft - Elements.

(a)  A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:

(1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim.

(2) Obtains goods or services through the use of identifying information of the victim.

(3) Obtains identification documents in the victim's name.

(b)  Identity theft in which there is a financial loss of greater than five hundred dollars ($500) or the defendant has previously been convicted of identity theft constitutes identity theft in the first degree. Identity theft in the first degree is a Class C felony.

(c)  Identity theft in which the defendant has not previously been convicted of identity theft and there is no financial loss or the financial loss is five hundred dollars ($500) or less constitutes identity theft in the second degree. Identity theft in the second degree is a Class A misdemeanor.

(d)  This section shall not apply when a person obtains the identity of another person to misrepresent his or her age for the sole purpose of obtaining alcoholic beverages, tobacco, or another privilege denied to minors.

**History:** Acts 2001, No. 01-312; Acts 2003, No. 03-355.

**Effective date. -** Acts 2003, No. 03-355, effective September 1, 2003.

**2003 amendments.** Substituted "five hundred dollars ($500)" for "two hundred fifty dollars ($250)" in subsections (b) and (c); and made a nonsubstantive change.

**Related statutes. -** Acts 2003, No. 03-355, § 2: "Notwithstanding any other provision of law, in municipal court, the maximum fine for every person either convicted for violating any misdemeanor in this act adopted as a municipal ordinance violation or adjudicated as a youthful offender shall be one thousand dollars ($1,000)."

**Cross references. -** As to punishment for Class A misdemeanors, see § 13A-5-7.

As to punishment for Class C felonies, see § 13A-5-6.

## CASE NOTES

**Cited in** Ex parte Egbuonu 911 So. 2d 748, 2004 Ala. Crim. App. LEXIS 244 (Ala. Crim. App. 2004),

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

cert. denied, 911 So. 2d 755 (Ala. 2005).

01-312.

## § 13A-8-196. Jurisdiction.

In any criminal proceeding brought pursuant to this article, the crime shall be considered to be committed in any county in which any part of the crime took place, regardless of whether the defendant was ever actually present in that county, or in the county of residence of the person who is the subject of the identification documents or identifying information.

**History:** Acts 2001, No. 01 -312.

### CASE NOTES

**Constitutionality**
Where Ala. Code § 13A-8-196 was not in conflict with Ala. Const. art. I, § 6, and identity theft, in violation of Ala. Code § 13A-8-192, was a continuing offense that in most instances occurred in more than one county or even more than one state, Section 13A-8-196 was not unconstitutional; thus, a detainee was not entitled to a writ of habeas corpus granting him a release from custody. Ex parte Egbuonu 911 So. 2d 748, 2004 Ala. Crim. App. LEXIS 244 (Ala. Crim. App. 2004), cert. denied, 911 So. 2d 755 (Ala. 2005).

© 2006 Matthew Bender & Company, Inc.. a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT NO. 2

February 13, 2006

TO:        Egbuonu, Zephyriuns, AIS: 242109

FROM:        Law Library

This is a list of the cases you requested:

CLARK V UNITED STATES, US Supreme Statutory Case law Number 05-5491 (2005)
BEARD V BANKS, US Supreme Court Case Number 04A-1739 (2005)
UNITED STATES V HAVENS, Case Number 04-2956 (2005) Federal Circuit Case
UNITED STATES V. WILLIAM, No. 05-11594 (2006) Federal Circuit Case
UNITED STATES V CLARK No 05-4274 2006 (Federal Circuit Case)
MARY CLE, LLC V FIRST CHOICE INTERNET, INC. WL 2895955 (2004)
STATE V KREJCI, 458 NW 2d 407, 411

We were not successful in finding any of the cases you requested.  Our system is not geared to find cases by case number alone which is all you are providing.  These are the citation formats we need to search for US Supreme Court cases:  141 led 2d 111  or  517 us 843.
On the cases you requested from the federal circuits, we only have access to cases in the 11th Circuit which includes Alabama, Georgia, and Florida, or the 5th Circuit which includes Texas, Louisiana, and Mississippi. There are no circuits listed on any of the federal circuit cases unless you were requesting cases from the Federal Circuit itself to which we do not have access. We have no access to fedeal district or circuit cases from the 1st, 2nd, 3rd, 4th, 6th, 7th, 8th, 9th, 10th, D.C. or Federal Circuits other than the hardback volumes currently in the back room of the law library which ended with cases whose opinions were issued in approximately March of 2005.

This is a copy of the results of our search.

<u>U.S. SUPREME COURT CASES</u>
CLARK V U.S. No 04-8819, March 18, 2005
CLARK V U.S. No 04-9037, April 18, 2005
CLARK V U.S. No. 04-5169, January 24, 2005
CLARK V. U.S. No. 04-6340, January 24, 2005
CLARK V. U.S.  No. 04, 9864, June 6, 2005
CLARK V. U.S. No. 04-7815, January 24, 2005

BEARD V. BANKS, No 02-1603, January 26, 2004

<u>FEDERAL CIRCUIT CASES</u>
UNITED STATES V. WILLIAM, No. 05-11594 (2006) Federal Circuit Case
This was the only hit for the 5th or 11th Circuit.  US. V. WILLIAMS, No 02-12738, December 27, 2002.
UNITED STATES V CLARK No 05-4274 2006 (Federal Circuit Case)
This was the only hit for the 5th or 11th Circuit.  U.S. V. CLARK, No 02-10427, December 30, 2002.
U.S. V. HAVENS, 04-2956, 2005, no hits for the 5th or 11th Circuit
MARY CLE, LLC, V. FIRST CHOICE INTERNET, WL 2895955, 2004, no hits for the 5th or 11th Circuit

<u>CASES FROM OTHER STATES</u>
STATE V KREJCI, 458 NW 2d 407, 411.
This case is not a state case from the State of Alabama. It is from the Northwestern Reporter which we do not have.

I am attaching a copy of a form to be sent to the Alabama Department of Corrections Legal Division which you may fill out requesting these materials and send to DOC Legal Division, 301 S. Ripley Street. Montgomery, AL 36104.

EXHIBIT NO. 3

114008

LEXSEE 622 SE2D 836

THE STATE v. MAYZE.

S05A1225.

SUPREME COURT OF GEORGIA

*280 Ga. 5; 622 S.E.2d 836; 2005 Ga. LEXIS 825; 2005 Fulton County
D. Rep. 3521*

**November 21, 2005, Decided**

**PRIOR HISTORY:** [***1] *OCGA § 16-9-125*; constitutional question. Clayton Superior Court. Before Judge Boswell. *State v. Mayze, 2005 Ga. LEXIS 638 (Ga., Oct. 3, 2005)*

**DISPOSITION:** Judgment reversed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant was charged in Clayton County with two counts of identity fraud in violation of *O.C.G.A. § 16-9-121*. Defendant's demurrer to the indictment was sustained. The State appealed.

**OVERVIEW:** Defendant argued that the venue provision of *O.C.G.A. § 16-9-125* violated Ga. Const. art. art. VI, § II, para. VI, which required that the venue of a criminal case be set in the county where the crime was committed. The state's highest court held that the nature of identity fraud was the protection of the personal information contained in the victim's records. That information was deemed to be in the lawful possession of the victim, so that when a defendant violated *O.C.G.A. § 16-9-121* by engaging in an unauthorized access to the records, he engaged in the fraudulent use of information located in the county where the victim resided or was found. Since the crime of identity fraud, as defined by *O.C.G.A. §§ 16-9-121* and *16-9-125* when read in para materia, took place in the county where the victim and his or her personal information were located, there was no constitutional bar to trying the defendant in that county. *O.C.G.A. § 16-9-125* complied with the constitutional mandate. As it was alleged that defendant committed the crime of identity fraud in Clayton County by using personal information that was in the lawful possession of a resident of that county, venue was proper.

**OUTCOME:** The judgment was reversed.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN1] See Ga. Const. art. VI, § II, para. VI.

*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
*Governments > State & Territorial Governments > Legislatures*
[HN2] The Georgia general assembly is certainly bound by Ga. Const. art. VI, § II, para. VI, and cannot

1/13

enact a law providing for the prosecution of a crime in any county other than that wherein it was committed. Nevertheless, it is equally clear that the power to create crimes and to prescribe punishment therefor is legislative.

*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN3] Ga. Const. art. VI, § II, para. VI does not limit venue in a criminal case to one county. It provides for trial in whatever county the offense was committed. A crime may be ongoing or continuing, in which case venue would be appropriate in any county wherein the offense occurred.

*Governments > Legislation > Interpretation*
[HN4] Under the "verb test," the verbs which appear in a criminal statute and relate to the proscribed conduct are the determinative factor in identifying the substantive nature of the offense. The Georgia Supreme Court, like the Supreme Court of the United States, has never before held that verbs are the sole consideration in identifying the conduct that constitutes an offense. While the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language. The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.

*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
*Governments > Legislation > Interpretation*
[HN5] Exclusive reliance on the "verb test" when considering the constitutionality of a venue provision enacted by the Georgia general assembly is inappropriate. "Other relevant statutory language" must be considered in determining the scope of the prohibition imposed by *O.C.G.A. § 16-9-121* and, consequently, the location of permissible venues for a prosecution under that statute.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
*Governments > Legislation > Interpretation*
[HN6] *O.C.G.A. §§ 16-9-121* and *16-9-125* are in pari materia and must, therefore, be construed together. Looking beyond the verbs contained in *O.C.G.A. § 16-9-121* and giving consideration to the additional language contained in *O.C.G.A. § 16-9-125*, the Georgia general assembly has clearly defined the crime of identity fraud as a continuing offense which extends into the county where the victim resides or is located.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN7] See *O.C.G.A. § 16-9-125*.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN8] The "other relevant statutory language" clearly indicates that, regardless of where the victim's records may be physically located, the nature of the offense of identity fraud is the protection of the personal information contained therein. Moreover, that information is deemed to be in the lawful possession of the victim, so that when a defendant violates *O.C.G.A. § 16-9-121* by engaging in an unauthorized access to the records, he thereby engages in the fraudulent use of information located in the county where the victim resides or is found.

*Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation*
*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*

[HN9] Since the crime of identity fraud, as defined by *O.C.G.A. § § 16-9-121* and *16-9-125* when read in para materia, takes place in the county where the victim and his or her personal information are located, there is no constitutional bar to trying the defendant in that county.

*Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation*
*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN10] The "act" which constitutes the crime of "identity fraud" does occur in the county of the victim's residence, because that act is the unauthorized use of the victim's personal information. There is a valid connection between the act of accessing records and the use of information contained therein. Regardless of where the records were accessed, the use of the information obtained therefrom is consummated in the county where the victim lives. There is not any constitutional impediment to the authority of the Georgia general assembly to define a crime in such a manner as to provide that a defendant's conduct which takes place in one jurisdiction culminates in an unauthorized act or, as in this case, an unauthorized use occurring in another.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Criminal Offenses > Homicide > Murder*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN11] The Georgia general assembly can provide that the venue of a murder case is in the county where the death occurred, regardless of where the fatal act took place. This shows that the general assembly is not constitutionally bound by the "verb test," and can establish legislatively whether the crime of murder occurred where the defendant committed the act or where the victim died. If the "verb test" is not a limit on the general assembly's authority to define the crime of murder so as to compel a prosecution where the accused's act occurred, it cannot constitute a limit on legislative authority to define the crime of "identity fraud" so as to provide that an unauthorized use of information can be prosecuted in the county of residence of the victim whose privacy was invaded.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN12] It is undisputed that the Georgia Supreme Court has the duty to safeguard the defendant's constitutional right of prosecution in the county where the crime was committed. However, it also has the responsibility of upholding the Georgia general assembly when it passes constitutional legislation to protect the citizens of Georgia by authorizing a criminal prosecution in their counties of residence as against those who would make fraudulent use of the personal information located in those counties.

*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
*Governments > State & Territorial Governments > Legislatures*
[HN13] When exercising its constitutional power to create crimes, the Georgia general assembly is authorized to define identity fraud in such a way that, regardless of where the defendant may have accessed the records, the offense actually constitutes an unauthorized use of the personal information contained therein, which proscribed conduct occurs in the county where the information and the individual who is the subject thereof, rather than the underlying records themselves, are located.

*Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation*
*Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses*
*Criminal Law & Procedure > Jurisdiction & Venue > Venue*
[HN14] *O.C.G.A. § 16-9-125* clearly provides that an element of the offense of identity fraud is the unauthorized use of personal information, which element occurs in the county where the victim lives. The fact that the language denoting identity fraud as an offense involving the victim's possessory interest in his

or her own personal information appears in § 16-9-125, rather than *O.C.G.A. § 16-9-121*, does not have any constitutional significance.

***Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation***
***Criminal Law & Procedure > Jurisdiction & Venue > Venue***
[HN15] There is a fundamental distinction between the location where a defendant commits an act and the site where a crime occurs. The Georgia Constitution does not require that the Georgia general assembly provide that venue of a prosecution shall be only in the county where the accused committed a physical act. So long as venue is set in the county where the crime occurred, as that crime is defined by the general assembly, the constitutional mandate is satisfied.

***Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses***
***Criminal Law & Procedure > Criminal Offenses > Homicide > Murder***
***Criminal Law & Procedure > Jurisdiction & Venue > Venue***
[HN16] Unlike homicide or other crimes against the person, identity fraud is an offense against the victim's possessory interest in his or her personal information. Establishing the victim's residence as the venue of a prosecution for a crime committed through the invasion of that possessory interest certainly is not "based completely on fictional concepts." Personal information is an intangible commodity. Therefore, as evidenced by the numerous statutes from other jurisdictions which are analogous to Georgia's, it is entirely reasonable to provide that, personal information is deemed to be located in whatever county the owner of that information resides.

***Constitutional Law***
[HN17] The principle of strict construction cannot be used as a tool to achieve an unconstitutional result.

***Criminal Law & Procedure > Criminal Offenses > Fraud > False Pretenses***
***Criminal Law & Procedure > Jurisdiction & Venue > Venue***
[HN18] *O.C.G.A. § 16-9-125* complies with the constitutional mandate that the venue of a criminal case be set in the county where the crime was committed.

**HEADNOTES:** Georgia Advance Headnotes

 **(1) Criminal Law & Procedure. Jurisdiction & Venue. Venue.** Exclusive reliance on the "verb test" when considering the constitutionality of a venue provision enacted by the General Assembly is inappropriate. Looking beyond the verbs contained in *OCGA § 16-9-121* and giving consideration to the additional language contained in *OCGA § 16-9-125*, the General Assembly clearly defined the crime of identity fraud as a continuing offense which extends into the county where the victim resides or is located.

 **(2) Criminal Law & Procedure. Criminal Offenses. Fraud.** Since the crime of identity fraud, as thus defined by *OCGA §§ 16-9-121* and *16-9-125* when read in para materia, takes place in the county where the victim and his or her personal information are located, there is no constitutional bar to trying the defendant in that county. The "act" which constitutes the crime of "identity fraud" does occur in the county of the victim's residence, because that act is the unauthorized use of the victim's personal information.

 **(3) Criminal Law & Procedure. Criminal Offenses. Fraud.** When exercising its constitutional power to create crimes, the General Assembly is authorized to define identity fraud in such a way that, regardless of where the defendant may have accessed the records, the offense actually constitutes an unauthorized use of the personal information contained therein, which proscribed conduct occurs in the county where the information and the individual who is the subject thereof, rather than the underlying records themselves, are located. It is entirely reasonable to provide that personal information is deemed to be located in whatever county the owner of that information resides.

(4) **Criminal Law & Procedure. Criminal Offenses. Fraud.** *OCGA § 16-9-125* complies with the constitutional mandate that the venue of a criminal case be set in the county where the crime was committed. Because it was alleged that defendant committed the crime of identity fraud in a county by using personal information which was in the lawful possession of a resident of that county, venue of the prosecution was proper; the trial court erred in sustaining his demurrer to the indictment.

**COUNSEL:** *Jewel C. Scott, District Attorney, Todd E. Naugle, Tiffany C. Boulware, Anece B. White, Assistant District Attorneys*, for appellant.

*Brown & Gill, Angela B. Dillon*, for appellee.

**JUDGES:** Carley, Justice. All the Justices concur, except Sears, C. J., Hines and Melton, JJ., who dissent.

**OPINIONBY:** Carley

**OPINION:**

[*5] [**838] Carley, Justice.

In 2003, Owanna Lloyd, who resides in Clayton County, misplaced his wallet in Fulton County. Using information contained in the wallet, Willie Mayze allegedly accessed Mr. Lloyd's credit history in DeKalb County. Eventually, Mayze was arrested and charged in Clayton County with two counts of identity fraud in violation of *OCGA § 16-9-121*. In accordance with *OCGA § 16-9-125*, venue of the prosecution was predicated on Mr. Lloyd's residence in Clayton County.

Mayze filed a demurrer to the indictment, asserting that *OCGA § 16-9-125* was unconstitutional insofar as it authorized venue of an identity fraud prosecution in the county where the victim "resides or is found, ... regardless of whether the defendant was ever actually in such county." After a hearing, the trial court sustained the demurrer, and the State brings this appeal [***2] from that order.

We note at the outset that, in creating the crime of identity fraud and providing for venue of the prosecution in the county where the victim resides or is found, Georgia is not alone. A growing number of other states have enacted comparable provisions, including the following: Alabama (*Ala. Code § 13A-8-196*); Connecticut (*C.G.S.A. § 54-1d (c)*); District of Columbia (*DC Code § 22-3227.06 (1)*); Florida (*West's F.S.A. § 817.568 (15), (16)*); Illinois (*720 ILCS 5/1-6 (s)*); Iowa (*I.C.A. § 715A.8 (5)*); Kentucky (*KRS § 514.160 (5)*); Maryland (*MD Code, Criminal Law, § 8-301 (m) (2)*); Michigan (*M.C.L.A. § 762.10c (1) (c)*); Minnesota (*M.S.A. § 609.527, Subd. 6 (1)*); Missouri (*V.A.M.S. § 541.033 (2)*); Nevada (2005 Nevada Laws Ch. 485 (S.B. 347), § 13 (2) (effective October 1, 2005)); New Hampshire (*N.H. Rev. Stat. § 638:27*); New Mexico (*N.M.S.A. 1978, § 30-16-24.1 (G)*); North Carolina (NC Sess. Laws 2005-414, § 2 (effective December 1, 2005)); North Dakota (*NDCC § 12.1-23-12*); Pennsylvania (*18 Pa.C.S.A. § 4120 (e.1)*); Utah (*U.C.A. 1953 § 76-1-201 (7)*); [***3] Virginia (*Va. Code Ann. § 18.2-186.3 (D)*); Washington (*West's RCWA § 9.35.020 (5)*). The precise issue presented for resolution in this case is the constitutionality of the venue provision of our statute. [HN1] "[A]ll criminal cases shall be tried in the county where the crime was committed ... ." *Art. VI, Sec. II, Par. VI of the Georgia Constitution of 1983.* [*6] [HN2] The General Assembly is certainly bound by this provision, and cannot enact a law providing for the prosecution of a crime in any county other than that wherein it was committed. Nevertheless, it is equally clear that " '[t]he power to create crimes and to prescribe punishment therefor is legislative.' [Cit.]" (Emphasis omitted.) *Knight v. State, 243 Ga. 770, 771 (1) (257 SE2d 182) (1979)*. Thus, if the offense of "identity fraud," as defined by the General Assembly, is one which occurred in the county where the victim resides or is found, then there is no constitutional impediment to trying the defendant there.

[HN3] Art. VI, Sec. II, Par. VI of our Constitution does not limit venue in a criminal case to one county. It provides for trial in whatever county the offense was committed. A [***4] crime may be ongoing or continuing, in which case venue would be appropriate in any county wherein the offense occurred. See *State v. Kell, 276 Ga. 423 (577 SE2d 551) (2003)*. Mayze contends that the continuing crime theory does not apply because identity fraud, as defined by *OCGA § 16-9-121*, can be committed only in a county wherein the defendant obtained or recorded identifying information of the victim or accessed or attempted to access the resources of the victim. That interpretation of the limited scope of the offense

presumably is based on the so-called [HN4] "verb test," whereby the verbs which appear in a criminal statute and relate to the proscribed conduct are the determinative factor in identifying the substantive nature of the offense. It is true that "[s]tudying 'the key verbs which define the criminal offense in the statute is helpful in determining venue in doubtful cases.' [Cit.]" *State v. Kell, supra at 425.* However, this Court, like the Supreme Court of the United States, has

> [**839] never before held ... that verbs are the sole consideration in identifying the conduct that constitutes an offense. While [***5] the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language. The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.

*United States v. Rodriguez-Moreno, 526 U. S. 275, 280 (II) (119 S. Ct. 1239, 143 LE2d 388) (1999)* (interpreting *Art. III, Sec. 2, Cl. 3 of the Federal Constitution,* which provides that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed" and which is, therefore, virtually identical to our comparable state constitutional provision). **(1)** Thus, [HN5] exclusive reliance on the "verb test" when considering the constitutionality of a venue provision enacted by the General Assembly is inappropriate. "[O]ther [*7] relevant statutory language" must be considered in determining the scope of the prohibition imposed by *OCGA § 16-9-121* and, consequently, the location of permissible venues for a prosecution under that statute.

[HN6] *OCGA § § 16-9-121* and *16-9-125* [***6] are in pari materia and must, therefore, be construed together. See generally *State v. Griffin, 268 Ga. 540, 542 (491 SE2d 340) (1997).* Looking beyond the verbs contained in *OCGA § 16-9-121* and giving consideration to the additional language contained in *OCGA § 16-9-125,* the General Assembly has clearly defined the crime of identity fraud as a continuing offense which extends into the county where the victim resides or is located. *OCGA § 16-9-125* expressly states:

> [HN7] The General Assembly finds that identity fraud involves the use of identifying information which is uniquely personal to the consumer or business victim of that identity fraud and which information is considered to be in the lawful possession of the consumer or business victim wherever the consumer or business victim currently resides or is found. Accordingly, the fraudulent use of that information involves the fraudulent use of information that is, for purposes of this article, found within the county where the consumer or business victim of the identity fraud resides or is found.

[HN8] This "other relevant statutory [***7] language" clearly indicates that, regardless of where the victim's *records* may be physically located, the nature of the offense of identity fraud is the protection of the personal *information* contained therein. Moreover, that information is deemed to be in the lawful possession of the victim, so that when a defendant violates *OCGA § 16-9-121* by engaging in an unauthorized access to the records, he thereby engages in the fraudulent use of information located in the county where the victim resides or is found. [HN9] **(2)** Since the crime of identity fraud, as thus defined by *OCGA § § 16-9-121* and *16-9-125* when read in para materia, takes place in the county where the victim and his or her personal information are located, there is no constitutional bar to trying the defendant in that county.

Therefore, [HN10] the "act" which constitutes the crime of "identity fraud" does occur in the county of the victim's residence, because that act is the unauthorized use of the victim's personal information. There is a valid connection between the act of accessing records and the use of information contained therein. Regardless [***8] of where the records were accessed, the use of the information obtained therefrom is consummated in the county where the victim lives. There is not any constitutional impediment to the authority of the General Assembly to define a crime in such a manner as to provide that a defendant's [*8] conduct which takes place in one jurisdiction culminates in an unauthorized act or, as in this case, an

unauthorized use occurring in another. As another example of the breadth of the constitutional power to legislate in this context, we note that [HN11] the General Assembly could provide that the venue of a murder case is in the county where the death occurred, regardless of where the fatal act took place. *Roach v. State, 34 Ga. 78, 82 (1864)* (holding that "at common law the jurisdiction attached in the county where the death occurred; by statute, the jurisdiction attaches in the county where the mortal blow was given."). This shows that the General Assembly is not constitutionally bound by the "verb test," and can establish legislatively [**840] whether the crime of murder occurred where the defendant committed the act or where the victim died. If the "verb test" is not a limit on the General Assembly's [***9] authority to define the crime of murder so as to compel a prosecution where the accused's act occurred, it cannot constitute a limit on legislative authority to define the crime of "identity fraud" so as to provide that an unauthorized use of information can be prosecuted in the county of residence of the victim whose privacy was invaded.

The conclusion that *OCGA § 16-9-125* passes constitutional muster is further supported by a recent Alabama decision. *Art. I, Sec. VI of the Alabama Constitution* is virtually identical to the comparable provision in our Constitution, and provides that criminal prosecutions in that state are to be held in "the county or district in which the offense was committed ... ." The relevant provision of the Alabama "identity theft" statute is also comparable to our "identity fraud" law, and provides that the crime is committed if a defendant,

> without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, ... [o]btains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification [***10] documents, or obtaining benefits of the victim.

*Ala. Code § 13A-8-192 (a) (1)*. In accordance with a legislative enactment that is analogous to our *OCGA § 16-9-125*, venue of a prosecution for violating the Alabama identity theft statute is

> in any county in which any part of the crime took place, regardless of whether the defendant was ever actually present in that county, or in the county of residence of the person who is the subject of the identification documents or identifying information.

[*9] *Ala. Code § 13A-8-196*. As against the assertion that this venue provision was unconstitutional, the Court of Criminal Appeals of Alabama held that

> we believe that the Legislature ... defined the crime of identity theft as a continuing offense. [Cit.] ... "Venue in a criminal case, though a constitutional matter, requires an inquiry into what conduct the statute proscribes." [Cit.] "(A) review of relevant authorities demonstrates that there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial [***11] contacts rule that takes into account a number of factors -- the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding ... . Places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime ... ." [Cits.] *Section 13A-8-190, et seq., Ala. Code 1975*, entitled, "The *Consumer Identity Protection Act*," by its very name was enacted to protect Alabama citizens from defendants seeking to steal their identities. *Section 13A-8-196* specifically provides that venue is proper where the victim resides. [Cit.] This issue has no merit.

*Ex parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. 2004).*

This analysis by the Alabama court is compelling and, although not controlling, is persuasive authority for the construction of our own analogous constitutional [***12] and statutory provisions. A contrary holding based upon rigid adherence to the "verb test" would have the unfortunate effect of depriving the residents of Georgia of the protection which the General Assembly sought to provide them as against those who seek to steal their identities. A victim of identity fraud in this state would not have any protection against one who stole his or her identity by unauthorized access to records located outside of Georgia. Even when the records are located in this state, the victim would be put to the time and expense of traveling to the county where his or her records were maintained to testify in the prosecution. [HN12] It is undisputed that this Court has the duty to safeguard the defendant's constitutional right of prosecution in [**841] the county where the crime was committed. However, we also have the responsibility of upholding the General Assembly when it passes constitutional legislation to protect the citizens of this state by [*10] authorizing a criminal prosecution in their counties of residence as against those who would make fraudulent use of the personal information located in those counties.

Notwithstanding the dissent's protestations to the contrary, today's [***13] decision is actually an extremely narrow one. (3) The extent of our holding is that, [HN13] when exercising its constitutional power to create crimes, the General Assembly is authorized to define identity fraud in such a way that, regardless of where the defendant may have accessed the records, the offense actually constitutes an unauthorized use of the personal information contained therein, which proscribed conduct occurs in the county where the information and the individual who is the subject thereof, rather than the underlying records themselves, are located. Thus, the dissent misrepresents our holding by asserting on page 16 that we have "overlook[ed] the undisputed fact that no element of the offense of identity fraud as set forth in *OCGA § 16-9-121* actually occurred in the county where the defendant was tried in this case." The truth is that, in resolving this appeal, we have not erroneously limited our consideration to *OCGA § 16-9-121*, but we have instead properly taken into account that statute and all other provisions which are in pari materia. What is overlooked by the dissent is that [HN14] *OCGA § 16-9-125* [***14] clearly provides that an element of the offense is the unauthorized use of personal information, which element occurs in the county where the victim lives. The fact that the language denoting identity fraud as an offense involving the victim's possessory interest in his or her own personal information appears in *OCGA § 16-9-125*, rather than *OCGA § 16-9-121*, does not have any constitutional significance.

Essentially, the dissent fails to acknowledge [HN15] the fundamental distinction between the location where a defendant commits an act and the site where a crime occurs. The Constitution does not require that the General Assembly provide that venue of a prosecution shall be only in the county where the accused committed a physical act. So long as venue is set in the county where the crime occurred, as that crime is defined by the General Assembly, the constitutional mandate is satisfied. The dissent does not suggest any reason why, for purposes of protecting the citizens of this state from unauthorized use of their personal information, the General Assembly cannot constitutionally determine that the locus of the crime is where the victim [***15] resides or is found, regardless of the fortuitous location where the defendant accessed the records containing the information. [HN16] Unlike homicide or other crimes against the person, identity fraud is an offense against the victim's possessory interest in his or her personal information. Establishing the victim's residence as the venue of a prosecution for a crime committed through the invasion of that possessory interest certainly is not "based completely on fictional concepts." Dissent, p. [*11] 15. Personal information is an intangible commodity. Therefore, as evidenced by the numerous statutes from other jurisdictions which are analogous to ours, it is entirely reasonable to provide that, personal information is deemed to be located in whatever county the owner of that information resides.

The dissent apparently believes that its analysis is predicated upon a strict construction of our Constitution. However, the holding that it proposes would violate the principle of the separation of powers, invade the constitutional authority of the General Assembly to create crimes, and substitute the judiciary's determination as to proper venue for the legislative decision. [HN17] The principle of strict [***16] construction cannot be used as a tool to achieve an unconstitutional result.

(4) Accordingly, we hold that [HN18] *OCGA § 16-9-125* complies with the constitutional mandate that the venue of a criminal case be set in the county where the crime was committed. Because it is alleged that Mayze committed the crime of identity fraud in Clayton County by using personal information which

was in the lawful possession of a resident of that county, venue of the prosecution was proper. Therefore, [**842] the trial court erred in sustaining his demurrer to the indictment.

*Judgment reversed. All the Justices concur, except Sears, C. J., Hines and Melton, JJ., who dissent.*

**DISSENTBY:** Melton

**DISSENT:**

Melton, Justice, dissenting.

Today, on motion for reconsideration, the majority damages longstanding constitutional law in favor of the most palatable outcome, and, in doing so, effectively overrules Art. VI, Sec. II, Par. VI of the Georgia Constitution. As such, the majority opinion greatly exceeds the bounds of our authority, and it creates a dangerous precedent allowing this Court to rewrite the constitution both in cases regarding venue and any case involving interpretation of a constitutional [***17] provision which impinges on the power of either this Court or the General Assembly.

This case represents an instance in which the constitutionally-required holding leads to what can only be called an unfortunate result. Nonetheless, it is exactly in such unfortunate cases where we must fight hardest to safeguard our constitution and avoid the temptation to create bad law in order to reach the outcome that is most satisfying. Nevertheless, the majority muddies our constitutional waters when it is completely unnecessary to do so.

This is not a case about computers, yet the majority focuses its analysis on identity fraud committed by computer. This is not a case without a constitutional solution that does not exceed the authority of this Court or the General Assembly. The solutions to the immediate [*12] problem surely exist, but they must be discovered by the General Assembly, not created by this Court based on factual scenarios not before us and through alteration of longstanding precedent. Finally, this is not a case about the General Assembly's discretion. It is, instead, a case about constitutional limitations placed on the General Assembly, limitations which the majority of this Court [***18] now removes, opening a floodgate that cannot be logically closed in all future cases regarding venue.

Without a doubt, identity fraud is a growing crime, and many have analogized it as a plague on our computer-driven society. As the crime evolves, our manner of dealing with it must evolve as well, but, as always, this legal evolution should occur within the framework of our constitution. The majority has wholly stepped outside of this all-important framework, and while I might prefer the majority's outcome, I must strongly dissent to it because it is derived by unconstitutional means.

1. This matter requires us to determine whether the statutory venue provisions set forth for the crime of identity fraud in *OCGA § 16-9-125* satisfy the mandate of the Georgia Constitution of 1983 that a criminal case must be tried in the county where the crime was committed. *OCGA § 16-9-125* as it is currently drafted is unconstitutional to the limited extent that it provides that venue for identity fraud is proper in the county where the victim resides or is found, irrespective of whether the defendant obtains or records identifying information [***19] of the victim or accesses or attempts to access the resources of the victim in the county of the victim's residence.

Art. VI, Sec. II, Par. VI of the Georgia Constitution provides: "[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county." n1 In criminal cases, venue requirements generally are for the benefit of the defendant, and "[v]enue is a jurisdictional fact that must be proved by the prosecution beyond a reasonable doubt." *Graves v. State, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998)*. Addressing venue for the crime of identity fraud, *OCGA § 16-9-125* states, in turn:

> The General Assembly finds that identity fraud involves the use of identifying information which is uniquely personal to the consumer or business victim of that identity fraud and which information is considered to be in the lawful possession of the consumer or business victim wherever the consumer or business victim currently resides [**843] or is found. [*13] Accordingly, the fraudulent use of that information involves the fraudulent [***20]

9/13

use of information that is, for the purposes of this article, found within the county where the consumer or business victim of the identity fraud resides or is found. Accordingly, in a proceeding under this article, the crime will be considered to have been committed in any county where the person whose means of identification or financial information was appropriated resides or is found, or in any county in which any other part of the offense took place, regardless of whether the defendant was ever actually in such county.

Given this definition, it must then be determined whether *OCGA § 16-9-125* satisfies the mandate of Art. VI, Sec. II, Par. VI of the Georgia Constitution and accurately describes the places where identity fraud is committed.

n1 This constitutional mandate is codified at *OCGA § 17-2-2 (a)*.

The crime of identity fraud occurs when:

without the authorization or permission of a person with the intent unlawfully to appropriate resources [***21] of or cause physical harm to that person, or of any other person, to his or her own use or to the use of a third party he or she: (1) Obtains or records identifying information of a person which would assist in accessing the resources of that person or any other person; or (2) Accesses or attempts to access the resources of a person through the use of identifying information.

*OCGA § 16-9-121.*

Each element of identity fraud will have some specific situs. With this in mind, *OCGA § 16-9-125* properly places venue "in any county in which any other part of the offense took place." In other words, this portion of the statute may appropriately be read to indicate that, due to identity fraud's nature as an ongoing crime, venue would be appropriate in any county in which an act in furtherance of the crime is committed. See, e.g., *State v. Kell, 276 Ga. 423 (577 SE2d 551) (2003)* (regarding venue for ongoing crime of medicaid fraud); *Callaway v. State, 247 Ga. App. 310, 315 (2) (542 SE2d 596) (2000)* (regarding venue for insurance fraud). In this way, venue is placed in any county where any portion of the crime has been committed.

To the extent, [***22] however, that *OCGA § 16-9-125* places venue in the county where the victim resides or is found, irrespective of whether the defendant obtains or records identifying information of the victim or accesses or attempts to access the resources of the victim in the county of residence, the statute violates the constitutional mandate that a crime must be tried in the county where it is [*14] committed. As the specific facts of this case show, the crime of identity fraud will not always occur in the county of the victim's residence, as contemplated by the current language of *OCGA § 16-9-125*.

In considering these issues, one must not confuse the situs where an act of identity fraud is committed with the place that the results of the crime are most strongly manifested. Identity fraud can be committed in any county; its manifestations, however, will be strongest at the home county of the victim. Unless the manifestations precipitated by an act constitute a part of the crime itself, n2 venue nonetheless must be placed where a crime occurs, not where its consequences are felt. Furthermore, although identity fraud may constitute a continuing crime, [***23] this classification does not automatically allow it to be tried in the county of the victim's residence. For a continuing offense, venue generally may be appropriate in any county where the crime was begun, continued, or completed. n3 The beginning, middle, or end of the crime of identity fraud, as currently defined by the General Assembly, does not always occur in the county of the victim's residence, as in this case.

n2 For example, some acts which criminally interfere with interstate commerce may be tried in

the place where interstate commerce has actually been affected, as well as the place that the act causing the effect occurred. See, e.g., *United States v. Craig, 573 F2d 513 (7th Cir. 1978)* (violation of federal *Hobbs Act* properly tried in place where act of extortion impacted interstate commerce).

n3 See, e.g., *United States v. Muench, 153 F3d 1298 (11th Cir. 1998)* (violation of federal *Child Support Recovery Act* by failure to pay child support may be tried in county and state where child resides, as that is the place where the act is completed).

[***24]

Applying all of these rules and considerations to the case at hand, venue for Mayze's [**844] crimes of identity fraud does not lie in Clayton County, as Mayze did not obtain or record identifying information of the victim or access or attempt to access the resources of the victim there. Accordingly, the trial court's ruling on this issue should be affirmed.

2. Both the State and the majority argue that, unless *OCGA § 16-9-125* is upheld, Georgia citizens will be vulnerable to identity fraud committed by individuals who may never come to this state. I certainly share this concern that, due to the complexities of modern technology, identity fraud has largely become a computer-based crime in which perpetrators from other states access computer databases containing the identifying information of victims in Georgia. In this case, which does not involve the use of a computer, there is no assertion that any element of the underlying offense occurred in the county of the victim's residence, where the case was ultimately tried. Therefore, as discussed above, this Court, under the proper constitutional analysis, has no discretion in its determination that, to the [*15] extent [***25] that it places venue in the county of the victim's residence irrespective of whether any element of the crime is committed there, *OCGA § 16-9-125* is unconstitutional.

The solutions to this temporary problem must be crafted by the General Assembly, not created by this Court through a strained analysis which circumvents our constitution. In addressing instances of identity fraud perpetrated by individuals located outside of this State, the General Assembly may wish to look to statutory provisions such as *OCGA § 16-9-94 (4)* to address this situation. n4 The General Assembly might also choose to broaden the means by which identity fraud is committed in *OCGA § 16-9-121* to include causing certain economic impact to the victim. Although the General Assembly could not dictate where the impact occurs by edict, economic harm to the victim will likely occur most profoundly in the county where he or she resides. Venue, therefore, might be proper in that county because an element of the crime occurred there, not because the General Assembly unconstitutionally assigned venue there irrespective of the facts involved. [***26]

n4 Under this provision, venue for a computer crime under *OCGA § 16-9-93* lies in "any county from which, to which, or through which any use of a computer or computer network was made, whether by wires, electromagnetic waves, microwaves, or any other means of communication."

3. In reaching its conclusion, the majority recognizes that the General Assembly holds the power to create crimes and to prescribe punishment for these crimes. The majority then states: "Thus, if the offense of 'identity fraud,' as defined by the General Assembly, is one which occurred in the county where the victim resides or is found, then there is no constitutional impediment to trying the defendant there."

This logic, though superficially appealing, omits at least two constitutionally important considerations. First and foremost, the majority's interpretation of the law renders the constitutional mandate regarding venue wholly meaningless. The majority fails to recognize that, although the General Assembly has [***27] the power to create crimes and prescribe punishment, it does not have the power to create venue by dictating the county in which the crime was committed, without regard to whether any part of the crime took place in that county.

The majority's opinion rests its analysis on the circular conclusion that venue exists anywhere the General Assembly indicates, irrespective of whether its choice of situs is based completely on fictional concepts. If adopted, this precept wholly negates the constitutional mandate that venue shall be in the

county where the crime is committed, because the crime will be committed anywhere the [*16] General Assembly says it is. For example, under the majority's analysis, the General Assembly could legislate that murder is the taking of a victim's life, that this life (or identity) exists in the county of the victim's residence, and, therefore, venue always exists in the county of the victim's residence, even if it were undisputed that no act in furtherance of the murder occurred there. Despite the heinous nature of murder, our General Assembly recognized that it had to [**845] place venue in a place where there was at least some physical evidence that the crime occurred. [***28] See *OCGA § 17-2-2 (c)*. We cannot apply any different set of rules to this case.

Second, the majority overlooks the undisputed fact that no element of the offense of identity fraud as set forth in *OCGA § 16-9-121* actually occurred in the county where the defendant was tried in this case. As it is currently defined, impact upon the victim is not an element of the offense of identity fraud as set forth in *OCGA § 16-9-121*, fully considering *any* language therein. This analysis is not dependent on the "verb test," a doctrine wholly irrelevant to the required constitutional outcome in this case. What is relevant here is the fact that no element of the crime of identity fraud occurred in the county of the victim's residence. Moreover, where our Constitution mandates a determination of venue based specifically on where the offense in question was "committed," looking to the location where the acts making up the offense took place is not only reasonable, but required. This remains true even though it requires this Court to consider the meaning of verbs. Wholly fictional concepts of the situs of "identifying [***29] information" in *OCGA § 16-9-125* cannot heal this statute's constitutional breach; and the majority's characterizations of the matter before us in terms of the "verb test" simply do not speak to this fundamental problem. As such, in this case, venue cannot be proper in the county of the victim's residence without violating the constitution.

In its opinion, the majority relies on an Alabama Court's recent decision in *Ex parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. 2004)* n5 [*17] and notes that a number of other states have passed comparable venue provisions for identity fraud. Such a recitation is meaningless. We do not judge the constitutionality of our own laws by surveying other states' statutes.

> n5 In its compiled quotation from two wholly separate parts of *Egbuonu*, the majority omits the fact that the Alabama Court largely based its analysis regarding venue for continuing crimes on the following statement from *United States v. Johnson, 323 U. S. 273, 275 (65 S. Ct. 249, 89 LE2d 236) (1944)* (analyzing venue under the *Federal Denture Act*): "By utilizing the doctrine of continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates." Neither the Alabama Court nor the majority provide the full quote, which states:
>
> > By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.
>
> Id. At the very least, *Johnson* is distinguishable from the concept of identity fraud, and, as such, it supports neither the majority nor *Egbuonu*.

[***30]

To the contrary, in examining the venue provision for identity fraud, it is this Court's solemn duty to safeguard this state's constitutional mandate that all crimes shall be tried in the county where the crime is

committed. It is evident from the General Assembly's language in *OCGA § 16-9-125* that it desired to place venue in the county of the victim's residence because that is the place where the major impact of the crime will occur. The General Assembly, however, failed to define the crime of identity fraud in *OCGA § 16-9-121* in such a way that this impact, itself, is a part of the crime committed. In the present case, no part of the underlying crime, as defined, actually occurred in the county of the victim's residence. Under these circumstances, *OCGA § 16-9-125* is unconstitutional in the limited instances where it places venue in the county of the victim's residence irrespective of the fact that no part of the underlying crime actually occurs there. Based on the current drafting of the statutes regarding identity fraud, the desires expressed by the General Assembly regarding venue must give way [***31]  to the overriding requirements of our constitution.

[**846]  There is no dispute that identity fraud is a crime of a continuing nature, and its beginning, middle, and end may stretch across more than one county. It must be remembered, however, that identity fraud is a continuing crime because *acts taken in furtherance of the crime* may occur in different counties. It is not, as the majority argues, a continuing offense simply because it creates some impact to the victim in the county of his or her residence which lingers after the last element of the crime is complete. If this were true, then every crime which has some effect on an individual would be a continuing crime, be it theft, murder, identity fraud, or anything else. Likewise, any and every such crime could be brought in the county of the victim's residence, wherever that residence might be at the time of prosecution. As a result of such a construction, venue no longer has any real nexus to the situs of the criminal activity in question. Undoubtedly, this is not the result that the framers of our constitution intended. To the contrary, it is exactly this result they were trying to avoid.

[*18]  I am authorized to state that Chief Justice [***32]  Sears and Justice Hines join in this dissent.

12/13

13/13

EXHIBIT NO. 4

STATE OF ALABAMA

IN THE CIRCUIT COURT

FOR THE COUNTY OF JEFFERSON

TENTH JUDICIAL CIRCUIT

CRIMINAL


STATE OF ALABAMA,

      Plaintiff,

      v.

ZEPHYRIUNS C. EGBUONU,         CC-2004-1422,

      Defendant.

FILED IN OFFICE
CIRCUIT CRIMINAL

NOV 2 9 2005

ANNE-MARIE ADAMS
Clerk


REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL


      The ABOVE-STYLED CAUSE came on to be heard before the Honorable Circuit Judge Alfred Bahakel and jury at the Criminal Justice Center, 801 Richard Arrington Boulevard North, Birmingham, Alabama, on the 23rd day of May, 2005, before Suzanne B. Frazier, CSR, RPR, Court Reporter and Commissioner.

<u>APPEARANCES</u>

<u>FOR THE STATE</u>:

       Alan Baty, Esq.

       Joe Hicks, Esq.  (Motion Hearing)

       Deputies District Attorney

       Jefferson County

       801 North Richard Arrington Boulevard

       Room L-01

       Birmingham, AL  35203

<u>FOR THE DEFENDANT</u>:

       Sidney J. Hughes, Esq.

       Jeffrey H. Dial, Esq. (Trial Proceedings)

       Attorneys at Law

       2908 Crescent Avenue

       Homewood, AL 35209

       G.R. Mahmood, Esq.  (Sentencing

          Proceedings)

       Foley & Mahmood, P.C.

       1630-4th Avenue North, Suite 602

       Birmingham, AL  35203

INDEX


MOTIONS -- 9, 33, 193, 357, 408, 440


IDENTIFICATION OF VENIRE -- 42

VOIR DIRE OF VENIRE BY MR. BATY -- 49

VOIR DIRE OF VENIRE BY MR. HUGHES -- 92

JURY SELECTION -- 104


OPENING STATEMENT OBJECTIONS:

State of Alabama, Mr. Baty -- 112, 113

Defense, Mr. Hughes -- 0


STATE'S EVIDENCE

STATE'S WITNESSES:

SCOTT ROEMHILDT

Direct Examination by Mr. Baty -- 114, 149

Cross-Examination by Mr. Hughes -- 139, 149

JIM ROBERSON

Direct Examination by Mr. Baty -- 150

Cross-Examination by Mr. Hughes -- 157

DARRYL BROWN

Direct Examination by Mr. Baty -- 163, 187

Cross-Examination by Mr. Hughes -- 178, 189

## INDEX (continued)

STATE'S WITNESSES (continued):

DETECTIVE BRYAN WONG

Direct Examination by Mr. Baty -- 194, 206

Cross-Examination by Mr. Hughes -- 203

DETECTIVE MAX DOKE

Direct Examination by Mr. Baty -- 207, 247

Cross-Examination by Mr. Hughes -- 234, 249

JOE ROBERTS

Direct Examination by Mr. Baty -- 252

Cross-Examination by Mr. Hughes -- 261

CHARLES BRASHEAR

Direct Examination by Mr. Baty -- 275, 292, 296

Cross-Examination by Mr. Hughes -- 285, 293

STEPHEN DREXLER

Direct Examination by Mr. Baty -- 298, 352, 355

Cross-Examination by Mr. Hughes -- 338, 353


STATE'S EXHIBITS:

| NO. | MARKED | ADMITTED |
| --- | --- | --- |
| 1 | 112 | 218 |
| 2 | 112 | 441 |
| 3 | 112 | 441 |
| 4 | 112 | 201 |

his mind later.

Has the State made an offer?

MR. BATY: Your Honor, we had discussed last week the possibility of a misdemeanor plea. It is my understanding that defense counsel talked to his client and the defendant declined.

THE COURT: I am not saying what the offer ought to be or not ought not to be. I am saying, as in any case -- this case or any case -- you need to make one and you need to seriously think about it.

I am telling you from the heart, with all of this floating around -- and I haven't seen the whole case -- that you need to weigh the risks involved in this case before you make a hasty decision. Don't make a decision out of pride; make it out of logic. You need to use your mind on this one. Okay?

DEFENDANT: (Nods.)

THE COURT: We will have the jury list completed in just a second. And let me know what your decision is, but please make a careful decision.

(Proceedings in recess at 2:42 p.m.)

Just say:  Alan, I am not sure what you said right there.  I didn't quite hear it.  I am not quite understanding what you are asking about.  Can you clarify that?

I will ask it again.  I will be happy to do that, just let me know.  Is everybody okay with that?  Okay.

This is Mr. Sid Hughes.  The judge introduced him before.  Does anyone know Mr. Hughes?  He is an attorney in private practice here in town.  Has anyone ever sought his advice on a matter?  I won't ask you about what.

(No response.)

MR. BATY:  How about Mr. Jeff Dial?  This is Jeff Dial.  Does anyone know Mr. Dial?

(No response.)

MR. BATY:  I will ask you about Mr. Egbuonu.  He was a California resident.  I assume nobody knows him, but I want to ask just to be safe.  Does anybody know him?

(No response.)

MR. BATY:  We have several witnesses who may testify in this case.  All but one or two are from out of town.  I will ask you if

anybody knows them.  Scott Romehildt from

Minnesota?

        (No response.)

    MR. BATY:  Bryan Wong from Los Angeles?

        (No response.)

    MR. BATY:  Max Doke from Los Angeles?

This is Max Doke, back here.  He is with the

sheriff's department of Los Angeles.

        (No response.)

    MR. BATY:  James Roberson is with us.

Mr. Roberson, would you stand up.

    VICTIM JAMES ROBERSON:  (Complied with

the request.)

    MR. BATY:  Does anyone know Mr. Roberson?

He works with the sheriff's department here.

He is the victim in this case.  Does anybody

know him?

        (No response.)

    MR. BATY:  Darryl Brown, who is from Los

Angeles?

        (No response.)

    MR. BATY:  Charles Brashear, also from

Los Angeles?

        (No response.)

    MR. BATY:  Steve Drexler, who works with

the Alabama Department of Forensic Sciences
here in town?

        (No response.)

    MR. BATY:  Joe Roberts, who works with
the district attorney's office, does anyone
know him?

        (No response.)

    MR. BATY:  Who watches the TV shows --
you know, the law shows on TV?

    PROSPECTIVE JUROR COPELAND:  Court TV
sometimes.

    MR. BATY:  Court TV sometimes?  Yeah.
Anybody else?  Come on.  Raise your hand.  I
know you do.  I do when she has got the remote
control.  I do eight or nine hours of this
every day, and then I go home and have to
watch "Law and Order" on all of those cable
channels.  I keep telling her:  You should
have gone to law school.  You wouldn't have to
watch it on TV.

        There are a lot of TV shows out
there:  drama shows; some of them are
real-life stuff like Court TV; some of them
are talk shows about legal cases going on.
There are a lot of things being said on TV.

You will see a lot of different scenarios and cases on TV.

Can everybody put aside everything you saw and heard on TV about the law, about crime, and all of those sorts of things? Can you set that aside and judge this case for both sides, judge it fairly based on the evidence that you get off the witness stand? Can everybody agree to do that?

Set aside what you heard that Greta VanSustern said about this and Set aside what they say on Court TV about cases out in California or New York or something like that. Can y'all set that aside?

You will be given some law in this case if you are on the jury. You will get that from the judge. It is the law that stands in our state. Does everybody agree to use only that law -- not what you think the law should be or what it ought to be, but just what the law is? That is what we are all charged with obeying; right? Does everybody agree to use just what the judge gives you?

I want to talk about some of

the evidence in this case.  You will have to
pardon me.  My allergies for some reason are
very bad this spring, and my voice may get
somewhat hoarse.  Just bear with me.

Some of the evidence in this
case and some of the issues that may come up,
I want you to be aware of and I want your
opinion on those.  In this case James Roberson
did not lose any money.  Okay?  We have
charged this man with stealing his identity
and running up a credit account in California.

Mr. Roberson was out a lot of
headache, a lot of time, a lot of phone calls,
a lot of personal time just resolving all of
this matter, but he is not out any money out
of his pocket other than money for phone calls
and that sort of thing.  Does anybody have a
problem with us prosecuting a case where the
victim actually didn't lose any money, but it
was actually the credit card company that lost
the money?  Does anybody have a problem with
that?

Would anybody not be able to
return a verdict of guilty if we prove our
case simply based on that?  There is a

monetary amount that we expect the evidence to
show -- that is required that we show -- in
order to reach a conviction.  That amount is a
loss that was incurred by a company.

          Mr. Roberson didn't go out
there to California and charge those things
up, so he is not responsible for it.  He is
not out that amount of money out of his
pocket.  Does anyone think we shouldn't be
prosecuting that case because of that?

          (No response.)

     MR. BATY:  How about another issue, the
theft of the identification or the use of the
identification, Mr. Roberson's Social Security
number?

          And the purchase of those goods
on credit under that Social Security number
didn't happen here in Alabama.  It happened in
California.  Now, he lives here, of course --
here in Jefferson County.  He has for many,
many years.

          We don't expect there to be any
evidence that this defendant ever came to
Alabama except for the trial.  Okay?

          Is there anyone, assuming we

have proved our case, who would not be able to
convict because it did not happen here?  It is
our contention that the effect was felt here.
The damage to Mr. Roberson's credit, the
trouble he incurred, all of that happened
here.  The actual act itself happened in
California.

Does anyone have a problem with
us prosecuting this case because of that,
knowing those facts?

(No response.)

MR. BATY:  There is also another issue
that the defense may talk about and I want
your opinion on.  I don't expect we will be
able to show how that man came into possession
of Mr. Roberson's Social Security card or
Social Security number.  We can't show that.
As with many identity theft cases, you never
know.  But we do expect the evidence to show
that he did have it and he did use it.  And
that is what we expect.

Would anyone require us -- in
order to convict, would anyone require us to
show how he got hold of it?

PROSPECTIVE JUROR HALLIDAY:  (Nods.)

Q. Is that your handwriting at all?

A. No.

Q. Did you authorize anybody to use your Social Security number in filling this out?

A. No, sir, I did not.

Q. Did you have to pay any money out of your pocket to anybody that said you owed them money because of this?

A. No, I did not. Initially they told me I was responsible and they gave me directions if I wanted to dispute those things that I had to do.

Q. Did you incur any expenses in clearing all of this up, such as telephone expenses or postage?

A. Phone calls, over the next year some had to be made from my personal residence; and I did incur those expenses.

Q. What about postage?

A. Postage on the different letters back and forth to the credit reporting bureaus and also to the different companies who alleged I had accounts with them.

Q. Did you authorize anybody to open a Mervyn's account under your name?

Mr. Brashear, what did you do with them?

A. I entered them into evidence, made copies, and checked the names and numbers on those items.

Q. Did you subsequently check those items out of evidence?

A. Yes.

Q. And who did you deliver them to?

A. I delivered them to Mr. Joe Roberts, Birmingham, Alabama, district attorney's office.

MR. BATY: That is all I have, Detective. Thank you.

THE COURT: Cross?

CROSS-EXAMINATION

BY MR. HUGHES:

Q. Detective Doke, during your investigation, did you ever check to see if Zephyriuns lived or had any connection with the state of Alabama?

A. No.

Q. Did you ever check to see if Jerome Bivens had any contact with the state of Alabama?

A. Are you asking if I checked specifically for Alabama?

Q. Yes. You said you received a phone call from Alabama.

A.  Yes.

Q.  And did you check to see if there was any connection?

A.  I actually did database checks of both Mr. Egbuonu, when I found out his identity, and Jerome Bivens.

Q.  And what were the results of your database checks?

A.  I had no connections with Alabama on either one of those individuals.

Q.  When you looked at Jerome Bivens, did you see any -- let me ask it this way.  How many Jerome Bivenses did you find in the state of California?

A.  I found the one Jerome Bivens driver's license which came back to the post office box in Grenada Hills.

Q.  Did you check to see if there were any other Jerome Bivenses?

A.  I did.

Q.  And what were the results of that?

A.  I did not find any other Jerome Bivens in my database.

Q.  Did you check to see if there was a Jerome Bivens in another state?

the use of the victim's identifying
information.  Under the law of complicity that
I have given to you, the State is not required
to prove that the defendant is the one who
actually received the goods or services.

To establish that element of
the crime, you need only be convinced that the
defendant intended for someone to receive the
goods or services through the use of the
victim's identifying information and that
someone did receive those goods or services.

I also charge you that one of
the elements of both Count One and Count Two
is that there must be a financial loss of
greater than two hundred fifty dollars.  It is
not necessary that Jim Roberson be the person
who incurred that loss.  The State need only
prove that some person or entity incurred that
loss.

I also charge you, ladies and
gentlemen, that during the course of the
trial, you heard evidence of acts of the
defendant which may be similar to those
charged in the indictment, but which were
committed on some other occasion.

four dollars and sixty-one cents in witness

expenses to bring witnesses from California,

one thousand eighty-one dollars in extradition

costs.

THE COURT:  To the district attorney's

office; is that right?

MR. BATY:  No.  I think the extradition

cost goes to the State comptroller and witness

expenses would go to the DA's office and six

hundred seventy-eight dollars and fifty-five

cents to Target.

THE COURT:  And how about Chief Roberson?

I suppose the credit card companies made up

the loss.

VICTIM DEPUTY CHIEF ROBERSON:  They did.

THE COURT:  And you may get some

information from them later on?

MR. BATY:  I have the six hundred

seventy-eight dollars and fifty-five cents for

Target.

MR. HUGHES:  Your Honor, if it would be

appropriate, we would object to the

restitution being involved because the victim

himself stated he had no out-of-pocket

expenses in this and that the remedies of the