IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ZEPHYRINUS EGBUONU,
AL AIS # 242109,
(LA Fed, Det, Center
#27041-265-
Oakdale, Louisiana 71463)
        Plaintiff,

v.                                                    CIVIL ACTION: 2:07-CV-998-WKW

CAPTAIN BARRETT, *et al.,*
        Defendants.

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Terrance McDonnell, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Terrance McDonnell, and I am presently employed as Associate Commissioner of Programs with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

I, Terrance McDonnell, was the Correctional Warden III at Kilby Correctional Facility until March 2006. In March, 2006 I was promoted to ADOC Associate Commissioner over Programs and assigned to the Central Office in Montgomery, AL.

I responded to a complaint filed by Inmate Egbuonu in September, 2007, CIVIL ACTION: 2:07 CV 685 ID, regarding him allegedly being denied access to the Inmate Law Library. He addressed this issue again in this complaint. I responded previously that "All inmates have ample access to the Kilby Inmate Law Library Monday through Friday from 8:00 AM to 4:00 PM and on Saturdays from 3:00 PM to 6:00 PM regardless of job assignments and working hours. Inmate Egbuonu visited the Law Library 172 days from October, 2005 to July 31, 2006, according to the law library sign in roster."

DEFENDANT'S
EXHIBIT

2

Blumberg No. 5114

The above response is the extent of my knowledge involving Inmate Egbuonu's Allegations in this complaint.

_Terrance G. McDonnell,_ ___ _12-30 7_

Terrance G. McDonnell,          Date
ADOC Associate Commissioner of Programs

State of Alabama
Montgomery, Alabama

Sworn to and subscribed before me and under my hand and official seal this the ___3___ day of December, 2007.

_Jacqueline L. Barcomb_

Notary Public
My Commission expires: ___4/27/2010___ .

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**ZEPHYRINUS EGBUONU,**
AIS # 242109, #27041-265
    Plaintiff,

v.                                    **CIVIL ACTION: 2:07-CV-998-WKW**

**CAPTAIN BARRETT,** *et al.,*
    Defendants.

---

### A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared W. G. Rowell, Warden II, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is W. G. Rowell, and I am presently employed as Warden II with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

I, W. G. Rowell, am the Correctional Warden II at Kilby Correctional Facility. I am responsible for the administrative operations of the prison. The Kilby Law Library is under the direct supervision of one of the captains of the facility.

Inmate Egbuonu alleges that he was arbitrarily denied access to legal materials for the preparation of his legal documents, and that the Kilby Law Library was inadequate. Kilby's Law Library contains the following digital legal materials in the LEXIS/NEXIS system: Michie's Alabama Code, all Alabama judicial decisions to the present, the United States Code Service, Sentencing Guidelines for USCS, Federal Court Rules, U.S. District Court decisions from the 5th and 11th Circuits to the present, U. S. Court of Appeals decisions from the 5th and 11th Circuits to the present, the United States Supreme Court Reports to the present, plus case

1

DEFENDANT'S
EXHIBIT
3

Blumberg No. 5114

updates on each category of court decisions.  There is no more than a three month lag time on current decisions because the system is updated quarterly.   Additionally, the system has Shepard's Citations for Alabama Courts, Federal Courts, and the United States Supreme Court, plus a copy of the U. S. Constitution, United States Supreme Court Bench Opinions, Annotations from the Lawyer's Edition  Second Series of the U.S. Supreme Court Reports, Citator Service to the Second Series of the U.S. Supreme Court Reports, and a Quick Case Table for the Second Series of the U.S. Supreme Court Reports.  Our law library also has the following hard copy periodicals, Michie's Alabama Code, the Alabama Reporter (So.2d) volumes 331 through 890; Alabama Reports, volumes 270-295; Alabama Appellate Reports, volumes 45 through 57; Federal Supplement, volumes 300 through 999; Federal Supplement 2d, volumes 1 through 68; Federal Reporter 2d, volumes 421 through 999; Federal Reporter 3d, volumes 1 through 399, U. S. Supreme Court Reports (L.Ed.2d) volumes 1 through 155, the United States Code Service up to installation of  LEXIS/NEXIS; West's Alabama Digest, and West's Federal Practice Digest.

All of the materials in Kilby's institutional law library are selected, approved, and provided through the Alabama Department of Corrections and specifically overseen by the ADOC Legal Division.

All of Kilby's inmate law clerks are well-trained in accessing available legal materials in both hard copy and on the LEXIS/NEXIS system.  Two of the inmate law clerks have completed paralegal training.  None of the requested cases contained in Egbuonu's attachments are available in our institutional law library, nor, as far as I am aware, available at any other Alabama Department of Corrections institutional law library.

In a previous 42 U. S. C. § 1983 complaint (Civil Action:  2:07 CV 685-ID) against this facility, inmate Egbuonu complained that he was denied access to the law library.  It is my understanding that this complaint was abandoned after it was shown that inmate Egbuonu had visited the Kilby Law Library on 172 days from October, 2005, to July 31, 2006.

I do not personally recall any complaint or inmate request from inmate Egbuonu regarding the issues complained of in this action.  I do recall an inmate request slip from this inmate dealing with the calculation of his good time credit which I referred to Kilby's Director of

2

Classification.  If I had received a complaint about the availability of legal materials from inmate Egbuonu, I would have referred the complaint to the Captain in charge of the law library operations.

Inmate Egbuonu complains that he was not allowed to receive internet material which violated his constitutional rights.  ADOC inmates are not allowed access to internet materials for security reasons.  Kilby's Standard Operating Procedure (S.O.P.) #VII-6, of January 27, 2003, "Inmate Mail Privileges," states in II.A.3.a. "Any type of internet material is prohibited."  Thus, to have allowed inmate Egbuonu to receive internet material would have violated this procedure.  Inmate Egbuonu refers to a "Captain Bohr" in his complaint.  There is no Captain Bohr employed at this facility.  To my knowledge, no ADOC institutional law library has internet access.

There was no conspiracy to violate inmate Egbuonu's constitutional rights by denying him access to case law unavailable at this institution.  Correct procedures were followed at this institution, and inmate Egbuonu's complaints were referred to the ADOC Legal Division. Inmate Egbuonu had adequate access to the courts while he was stationed at Kilby Correctional Facility, and I have not violated his constitutional rights in any manner.

W. G. Rowell, Warden II

Kilby Correctional Facility

State of Alabama

Montgomery, Alabama

Sworn to and subscribed before me and under my hand and official seal this the _11_ day of ~~November~~ December, 2007.

Notary Public

My Commission expires: _12-19-09_ .

3

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

ZEPHYRINUS EGBUONU

AIS# 242109, #27041-265

      PLAINTIFF

VS                          CIVIL ACTION: 2:07-CV-998-WKW

CAPTAIN BARRETT, et al.,

      DEFENDANTS

---

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared, Bobby Barrett, Warden II, who being known to me and being by me first duly sworn, deposes and say on oath as follows,

My name is Bobby Barrett, and I am presently employed as Warden II with the Alabama Department of Corrections, Staton Correctional Facility, Elmore, Alabama. I am over nineteen (19) years of age.

I, Bobby Barrett, was Correctional Captain at Kilby Correctional Facility. I was responsible for the security operations of the prison. The Kilby Law Library was one of my responsibilities while assigned to Kilby.

Inmate Egbuonu alleges that he was arbitrarily denied access to legal materials for the preparation of his legal documents, and that the Kilby Law Library was inadequate. Kilby's Law Library contains the following digital legal materials in the LEXIS/NEXIS system: Michie's Alabama Code, all Alabama judicial decisions to the present, the United States Code Service, Sentencing Guidelines for USCS, Federal Court Rules, U.S. District Court decisions from the 5th and 11th Circuits to the present, U.S. Court of Appeals decisions for the 5th and 11the Circuits to the present, the United States Supreme Court Reports to the present, plus case updates on each category of court decisions.



DEFENDANT'S EXHIBIT 4

There is no more than a three-month lag time on current decisions because the system is updated quarterly. Additionally the system has Shepard's Citations for Alabama Courts, Federal Courts, and the United States Supreme Court, plus a copy of the U.S. Constitution, United States Supreme Court Bench Opinions, Annotations from the Lawyer's Edition Second Series of the U.S. Supreme Court Reports, Citator Service to the Second Series of the U.S. Supreme Court Reports and a Quick Case table for the Second Series of the U.S. Supreme Court Reports. Kilby's law library also has the following hard copy periodicals, Michie's Alabama Code, the Alabama Reporter (So.2d) volumes 331 through 890; Alabama Reports, volume 270-295; Alabama Appellate Reports, volumes 45-57; Federal Supplement, volumes 300 through 999; Federal Supplement 2d, volumes 1 through 68; Federal Reporter 2d, volumes 421 through 999; Federal Reporter 3d, volumes 1through 399, U.S. Supreme Court Reports (L.Ed.2d) volumes 1 through 155, the United States Code Service up to installation of LEXIS/NEXIS; West's Alabama Digest, and West's Federal Practice Digest.

All of the materials in Kilby's institutional law library as selected, approved, and provided through the Alabama Department of Corrections and specifically overseen by the ADOC Legal Division.

Kilby's inmate law clerks are interviewed and selected through the inmate Job Board in which I was a member. The inmate law clerks communicated with myself almost on a daily basis to update me or make me aware of any issues or problems. I regularly entered the law library to observe the operation as a whole and to ensure the inmates needs were being met. The inmate law clerks are well trained in both hard copy and on the LEXIS/NEXIS system. All clerks are very familiar with the procedures in accessing available legal materials. Two of the inmate law clerks have completed paralegal training. None of the requested cases contained in Egbuonu's attachments are available in our institutional law library.

In a previous 42 U.S.C. § 1983 complaint (Civil Action: 2:07 CV 685-ID) against this facility, inmate Egbuonu complained that he was denied access to the law library. It was shown that inmate Egbuonu had visited the Kilby Law Library on 172 days from October 2005, to July 31, 2006. Thus, the case was abandoned.

Inmates who refer questions to me in respect to the operations of the law library, i.e., hours, problems with clerks, general questions about procedures, they were investigated by me or another captain and handled accordingly.

If an inmate refers a question in reference to legal material or lack of, it is discussed with the inmate clerks and then perhaps discussed with ADOC legal.

2

I do recall times, (a couple), where I discussed Egbuonu requests with the senior inmate law clerk. Each time the information requested was not available nor could it be attained. I recall discussing this with the ADOC Legal Division. If my memory serves me correct, the head of ADOC legal asked me to send him what Egbuonu requested. That was done. This information was passed on to Egbuonu.

Inmate Egbuonu complains that he was not allowed to receive internet material, which violated his constitutional rights. ADOC inmates are not allowed access to internet materials for security reasons. Kilby's Standard Operating Procedure (S.O.P.) #VII-6, of January 27, 2003, "Inmate Mail Privileges," states in II.A.3.a "Any type of internet material is prohibited. Inmate Egbuonu was advised about the policy containing internet material. Inmate Egbuonu refers to a "Captain Bohr" in his complaint. There is no Captain Bohr employed at this facility. To my knowledge, no ADOC institutional law library has internet access.

There was no conspiracy to violate inmate Egbuonu's constitutional rights by denying him access to case law unavailable at this institution. Correct procedures were followed at this institution, and inmate Egbuonu's complaints were referred to the ADOC Legal Division. Inmate Egbuonu had adequate access to the courts while he was stationed at Kilby Correctional Facility, and I have not violated his constitutional rights in any manner.

Bobby Barrett, Warden II
Staton Correctional Facility

State of Alabama
Elmore, Alabama

Sworn to ad subscribed before me and under my hand and official seal this the 10th day of December 2007.

Notary Public
My Commission expires: 2/8/2011

3

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


ZEPHYRINUS EGBUONU, # 242109    )
    )
      Plaintiff,    )
    )
v.    ) CIVIL ACTION NO. 2:07-CV-998
    )
CAPTAIN BARRETT, et al.,    )
    )
      Defendants.    )


### AFFIDAVIT OF KIM T. THOMAS

Before me, the undersigned authority, personally appeared Kim T. Thomas, who is known to me, and who, after being by me first duly sworn according to the law deposes and says that he is informed of and has personal knowledge of the matters set forth in this Affidavit.

My name is Kim Thomas and I currently serve as the General Counsel for the Alabama Department of Corrections.

As part of my responsibilities, I provide legal advice to staff members regarding the inmate law library and assist them, if necessary, in ordering the required materials.  I do not have the authority to make decisions regarding the contents of the inmate law library.  I do not have any authority or control over inmate living conditions, hiring of correctional staff or the daily operations of any correctional facility.

Beginning in November 2004, while Donal Campbell was the Commissioner of the Alabama Department of Corrections, the Department entered into a contract with



DEFENDANT'S
EXHIBIT
5

Lexis Nexis to provide legal materials in DVD format and the desk top computers. The Kilby Correctional Facility received two computers for use with the DVD library. These DVDs are updated on a quarterly basis and contain the following:

1. All Alabama State Case law and Alabama Shephards, but not limited

    a.) Alabama Supreme Court decisions from 1820 to present.

    b.) Alabama Court of Appeals decisions from 1911 to present.

    c.) Alabama Court of Civil Appeals decisions from 1969 to present.

    d.) Alabama Court of Criminal Appeals decisions from 1969 to present.

2. United States Code Service General Index.

3. Federal Court Rules (Criminal and Civil Procedure).

4. United States Constitution.

5. United States Code Service Annotated.

6. United States Supreme Court opinions from 1790 to present.

7. United States Court of Appeals opinions from 1789 to present.

8. United States District Court opinions from 1789 to present.

9. Decisions of the United States Court of Appeals for the Fifth and Eleventh Circuits.

10. Decisions of the United States District Courts within the judicial circuit of the Eleventh Circuit Court of Appeals.

11. Code of Alabama

In addition to these materials, several printed publications are available to include Federal Civil Judicial Procedure and Rules, Alabama Rules of Court (State and Federal) and a treaties on prisoner rights. Prior to the awarding of the contract to Lexis Nexis, the law libraries contained the above materials in printed form.

It is undisputed that inmates damage law books. However, if any of these printed materials are damaged or missing pages, there is a procedure in place for this material to

- 3 -

be obtained.  All the inmate has to do is contact the Law Library Supervisor and an "Access to Legal Material" form is completed and sent to the Legal Division.  I have received these forms from Kilby Correctional Facility on a frequent basis over the past twelve (12) years.  The pages or materials are copied and forwarded to the facility for the inmate's review.  This procedure ensures that if materials have been damaged, that inmates still have access to required materials.

Commissioner Donal Campbell, who resigned effective February 28, 2006, was not involved in the operations of the inmate law library at Kilby Correctional Facility. His successor, Commissioner Richard Allen, is likewise not involved in the operation of the law library at Kilby.

Kim T. Thomas

Sworn to and subscribed before me this 21st day of December 2007.

Notary Public

My Commission Expires  3/27/2011



*State of Alabama*
*Alabama Department of Corrections*

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130



**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

February 7, 2005

ADMINISTRATIVE REGULATION                    OPR:  LEGAL
NUMBER                    412

## INSTITUTIONAL LAW LIBRARIES

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for institutional law libraries.

**II.    POLICY**

It is the policy of the ADOC to provide legal resource libraries and to permit all inmates access to the materials available.

**III.    DEFINITION(S) AND ACRONYM(S)**

CD:  Compact Disk

**IV.    RESPONSIBILITIES**

Wardens/designees are responsible for the operation and maintenance of institutional law libraries.

**V.    PROCEDURES**

A.    Destruction of or damage to law library books, CDs or materials.

1.    Any general population inmate who has been found guilty of violating Administrative Regulation 403, Disciplinary Hearing Procedures for Major Rule Violations, Rule #69 (destruction or damaging state Property) that involves the destruction or damaging of law library books, CDs or other materials, may be denied physical access to the law library for up to 30 days. During the time that physical access to the law library is denied, the inmate will be permitted to request and receive the same law library privileges as are afforded inmates confined to segregation.



DEFENDANT'S
EXHIBIT
7

2.      If an inmate confined to segregation fails or refuses to return checked-out Law library books or materials upon demand, correctional staff may enter that inmate's cell in order to retrieve the law library books or material.

3.      The institutional law library supervisor will document each incident of theft, damage, destruction or refusals to return law library books or materials.

B.      Missing books, pages, materials.

In the event that an inmate discovers that a book(s), or page(s) of a book, or other materials, are missing from the law library that are necessary to the inmate's legal research, the inmate should report this to the institutional law library supervisor by submitting Form N944L i, "Access to Legal Material".

## VI.    DISPOSITION

Any documents will be retained or disposed of according to the Departmental Records Disposition Authority (RDA).

## VII.    FORMS

Form N944L i – Access to Legal Material (Refer to AR 214)

## VIII.    SUPERCEDES

This Administrative Regulation supercedes AR 412 dated August 18, 1992.

## IX.    PERFORMANCE

A.      Administrative Regulation 214. "Law Library Supervisors"

B.      Administrative Regulation 403, "Disciplinary Hearing Procedures for Major Rule Violations."

Donal Campbell, Commissioner

AR 412– February 7, 2005



# State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**Bob Riley**
GOVERNOR



**Donal Campbell**
COMMISSIONER

December 19, 2005

ADMINISTRATIVE REGULATION                 OPR:  OPERATIONS
NUMBER                        448

## INMATE MAIL

### I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for inmate mail.

### II.    POLICY

It is the policy of the ADOC to allow inmate mail in accordance with the U.S. Postal Service regulations and the guidelines set forth in this regulation.

### III.    DEFINITIONS

A.    Contraband:  Any item that is not permitted by law or is either prohibited or not specifically authorized by ADOC or institutional policy. Items not issued by the ADOC, not sold on the institutional canteen, or not specifically authorized by the Warden.

B.    Correspondence:  Written communication to or from inmates (e.g., letters, post cards, greeting cards) delivered by a postal service.

C.    Inmate Personal Property:  The items and amounts of clothing, equipment, mail, or supplies, which an inmate is allowed to have in his/her immediate possession.

D.    Mail:  For the purpose of this regulation, the term "mail" includes but is not limited to: items delivered by the U.S. Postal Service, inter-institutional mail, and any private carrier servicing the ADOC.

E.    Mail Clerk:  Staff member(s) assigned to the institutional mailroom.

F.    Printed Materials:  Books, publications, magazines, newspapers, periodicals, circulars, and catalogues delivered by the postal services.

G.    Legal Mail:  Letters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies.



DEFENDANT'S
EXHIBIT
8

H.   Reasonable Suspicion:  Rational inference that a reasonably prudent person could make from specific objective facts.

I.   Internet Materials:  Downloaded copy from a web site.

J.   Religious Materials:   Books, pamphlets, brochures, and religious study courses.

K.   Nudity:  A pictorial depiction where genitalia or female breasts are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

L.   Sexually Explicit:  A picture/illustration of actual or simulated sexual intercourse, and/or oral sex, masturbation, or materials depicting sex.

## IV.   RESPONSIBILITIES

A.   The Warden shall be responsible for developing their institution/division Standard Operating Procedure (SOP) in accordance with AR 448, *Inmate Mail.*

B.   The Mail Clerk is responsible for the collection, inspection, and distribution of incoming/outgoing mail and for the maintenance of the mailroom records.

C.   The Chaplain or the Warden's designee is responsible for reviewing all mail entering the institution for an inmate that has been marked in care of the chaplain as it refers to religious materials.

## V.   PROCEDURES

A.   General Guidelines

1.   The inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and institution.

2.   There is no limit on the volume of letters the inmate can send or receive, or on the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order.

3.   The Warden shall designate a secure mail area and drop boxes for outgoing mail accessible to all inmates.

4.   Mail between inmates, whether state, county, city, out-of-state or federal may be allowed with the permission of the Wardens involved. It must be shown that there is a close personal relationship (immediate family) between such inmates.

AR 448 – December 19, 2005

5.  Mail and packages addressed to an inmate, who has been transferred or released to another known address, should be mailed to the inmate within 48 hours, excluding weekends and holidays.

    a.  If a forwarding address is not available, such mail and packages shall be returned to the sender.

    b.  If neither a forwarding or return address is available, the mail shall be returned to the post office.

6.  All inmate mail shall remain under the supervision of staff until it is distributed. Inmates are not allowed in the mail area without supervision.

7.  At no time shall mail be distributed or handled by an inmate or be accessible to any inmate other than the addressee.

8.  A staff person shall deliver incoming mail to the inmate(s) to whom it is addressed.

B.  Incoming Mail

1.  All incoming mail must be addressed so as to specify the inmate's name, inmate AIS number, and location within the institution.

2.  An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes*)

3.  Promotional checks will not be accepted through the mail for deposit to inmate accounts.

4.  Correspondence, printed material, inmate personal property, or money will not be hand delivered to inmates by visitors.  The Warden/designee may allow attorneys to hand deliver "Legal Mail" directly to the inmate, subject to being searched for contraband.

5.  Inmate will not receive mail stamped "Collect on Delivery (COD)."

C.  Outgoing Mail

1.  All mail being sent from the institution must have a return address which will include: inmate's full name, inmate AIS number, name of institution, dorm/cell number, street address or P. O. Box number as appropriate, city, state, and zip code. Additionally, the following stamped disclaimer will be included on every piece of outgoing mail sent by inmates.

AR 448 – December 19, 2005

"This correspondence if forwarded from Alabama State Prison. The contents have not been evaluated, and the ADOC is not responsible for the substance or content of the enclosed communication."

2.   An inmate who has legally changed their name and chooses to use the legal name, then dual names are required in the following format: Commitment Name, AIS # XXXXXX, Legal Name.  (See AR 450, *Legal Name Changes)*

3.   Designated staff should collect outgoing mail once each business day.

D.   Legal Mail

   1.   Outgoing

      a.   Inmates will be provided two (2) free stamps per week for **legal mail** only.

      b.   Each Warden shall designate a box for "Legal Mail."

   2.   Incoming

      a.   A bound ledger shall be maintained by mailroom staff that lists each piece of legal mail received, the date inspected, delivered, and recipient's signature.

      b.   The inmate will sign for all "Legal Mail" prior to receipt.

      c.   All "Legal Mail" will be opened and inspected in the presence of the inmate.

E.   Limitations

   1.   When abuses are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was directed.

   2.   When the Warden receives a request to terminate correspondence with an inmate, the Warden shall notify the inmate of the request and inform the inmate that further correspondence with the individual shall cease.

   3.   The Warden/designee will provide documentation that will be placed in the mail area and in the inmate's institutional file of persons with whom the inmate may no longer correspond.

AR 448 – December 19, 2005

F.    Inspection

1.    Incoming mail, including "Legal Mail", shall be inspected for contraband
and/or for abuse of the mail privilege. Outgoing mail may be inspected for
contraband.

2.    All contraband will be disposed of in accordance with AR 306,
*Contraband and Evidence Management*.

3.    Every effort should be made to ensure that all incoming letters and
packages are delivered within 72 hours after receipt at the institution, other
than weekends and holidays. Inmates will be notified of rejected mail in
accordance with procedures contained in V.G.

G.    Rejection

1.    In the event any incoming mail is rejected, the mail clerk will cite the
policy violation and complete an ADOC Form 448, *Notification of
Rejected Mail,* then forward to the inmate in a timely manner.

2.    An inmate may appeal the rejection to the Warden/designee for review
and final determination. (Refer to ADOC Form 448, *Notification of
Rejected Mail*).

3.    If the appeal is denied, the inmate will have the option of returning the
mail to the sender at his/her own expense within 30 days, or the property
will be destroyed at the end of the 30-day period.

4.    Incoming mail may be determined to be a threat to the security of the
institution and returned to the sender if, in the opinion of the Warden, it
could reasonably be considered to:

a.    Be an attempt to incite violence based on race, religion, sex, creed,
or nationality.

b.    Advocate, facilitate, or otherwise present a risk of lawlessness,
violence, anarchy, and rebellion against government authority.

c.    Be an attempt to incite disobedience toward law enforcement
officials or correctional staff.

d.    Be an attempt to give instructions for the manufacturing or use of
intoxicants, weapons, explosives, drugs, drug paraphernalia, or
other unlawful items or substance.

e.    Contain obscene photographs, pictures, or drawings, including
publications and advertisements from distributors.

AR 448 – December 19, 2005

f.     Contain plans to escape, unauthorized entry into the institution, or information or maps, which might aid an escape attempt.

g.     Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

h.     Contain materials specifically found to be detrimental to inmate rehabilitation because it could encourage deviate criminal sexual behaviors.

i.     Publications that contain, nudity, graphic depictions of homosexuality, sadomasochism, bestiality, incest, or sex with children will be denied.

j.     Publications that primarily cover the activities of any sexual or political rights groups or organizations will normally be admitted.

k.     Before delivery of a publication may be denied, the Warden/designee must review the particular publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. It is not necessary to find that the particular recipient is likely to personally engage in such behavior before delivery can be denied.

5.     Abuse of mail privileges by inmates may result in rejection and possible disciplinary action. Abuses included but are not limited to the following:

a.     The writing of letters containing obscene, profane, or indecent language.

b.     Writings that contain threats, derogatory or personal attack against any person.

c.     Writings that contain an escape plot or any other clear threats to the institution.

d.     Receipt of mail, identified as legal mail, from any individual or agency not meeting the legal mail definition.

e.     Writing which contain language purporting to solicit, claim, or demand money, goods, or services by false statements, threats, intimidation or extortion from another person or firm is prohibited.

f.     Any written material in outgoing or incoming mail not specifically intended for the addressee identified on the exterior of the

AR 448 – December 19, 2005

envelope, i.e. sending mail with contents addressed to another
party for forwarding which constitutes mail kiting.

H.  Publications/Books

1.  Inmates may receive no more than two books per month and four
    magazines or newspapers or a combination thereof. (Refer to AR 338,
    *Inmate Property*, for the number of items an inmate may have in his/her
    possession at one time.)

2.  The publications should be received directly from the publisher or a
    recognized commercial distributor and be pre-paid from a family member
    or friend or from the inmate's Prisoners Money on Deposit Account
    (PMOD).

3.  Receipt of publications by inmates in segregation will be determined by
    provision indicated in AR 433, *Administrative Segregation and Housing
    for Close or Maximum Custody*, and AR 434, *Disciplinary Segregation*.

4.  Each Warden/designee shall personally inspect each issue of a publication
    when a reasonable expectation that the particular issue violates the
    standards of this regulation. If they determine that the issue of the
    publication violates these standards then they will temporarily exclude the
    publication.

5.  The Warden/designee shall notify the inmate to whom the publication was
    addressed of the temporary ban.

6.  If the inmate appeals the temporary ban, it will remain in effect pending a
    final resolution. Upon notice of the appeal, the Warden will furnish a copy
    of the documentation on the matter to the Commissioner/designee. This
    documentation will include copies of pages of the excluded issue that
    contain material that has been identified as violating the restrictions.

7.  The Commissioner/designee will review the action taken by the institution
    to exclude that issue and either confirm or deny them. If the temporary
    ban is confirmed, the inmate, the Warden, and all other institutions will be
    notified, the issue is permanently banned, and the matter closed. The
    documentation supporting the ban will be retained by the Legal Division
    and at the institution.

8.  If the temporary ban is denied, the publication will be given to the inmate
    and the entire matter dropped and all documentation destroyed.

9.  The permanent ban of an issue of a publication may not be relied upon to
    support an exclusion of a subsequent issue. For example, if the January
    issue of XYZ magazine is permanently banned, this ban may not be used

AR 448 – December 19, 2005

to justify an exclusion of the February issue of XYZ magazine. Each separate issue must be evaluated independently in accordance with this regulation.

10.    Inmates will not be allowed to be members of, enter into contractual agreements with, or participate in book clubs.

I.    Packages

1.    All religious materials such as books, pamphlets, brochures, and religious study courses shall be sent to the inmate in care of the Chaplain, and will be distributed by the Chaplain after approval and limits have been obtained from the Warden.

2.    Authorized inmates will be allowed to purchase, from their PMOD accounts, arts and craft items through approved reputable suppliers.

3.    Prior to Christmas, the Commissioner will publish instructions concerning the receipt of Christmas packages for inmates.

4.    Criteria for an inmate to receive Christmas packages are as follows:

    a.    Inmates must have a four (4) month clear record prior to November 1st – no disciplinaries or behavior citations.

    b.    Inmates who receives one (1) formal or informal disciplinary in the months of November and December will not be eligible to receive a package.

    c.    Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence of a serious nature will be restricted from receiving packages one year from the incident.

5.    Incentive Packages will be accepted beginning May and September for one package per inmate from a person on the inmate's visitation/funds list. Packages postmarked after May 31 and September 30 will be returned to the sender C.O.D. Inmates must submit a request for an incentive package to the Warden/designee.

6.    Criteria for an inmate to receive an incentive package are as follows:

    a.    Inmate must have six-month clear record-no disciplinaries or behavior citations.

    b.    Inmates found guilty of rules violations for indecent exposure/exhibitionism, assaults on staff, or other acts of violence

AR 448 – December 19, 2005

of a serious nature will be restricted from receiving packages one year from the incident.

c.    Inmate should have two positive counselors/work reports within the six-month period preceding the package.

7.    An inmate may mail outgoing packages. However, these packages will be inspected for unauthorized items prior to dispatch. The sender-inmate must provide postage and wrapping materials.

8.    The Commissioner/designee may allow other packages as deemed appropriate.

## VI.   **DISPOSITION**

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   **FORMS**

ADOC Form 448 – Notification of Rejected Mail

## VIII.   **SUPERCEDES**

This regulation formally included in Administrative Regulation 303, dated May 30, 2000.

## IX.   **PERFORMANCE**

ACA standards for Adult Correctional Institutions, fourth edition: 4-4487; 4-4490; 4-4491; 4-4492; 4-4494; 4-4496

Donal Campbell, Commissioner

AR 448 – December 19, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Notification of Rejected Mail**

From: _____   Date: _____
Institutional Mail Room

To: Inmate _____   AIS#: _____

  Cell/Dorm: _____   Bed #: _____

Correspondence From: _____

Date received at this Institution: _____

Is being returned to sender due to the following reason(s): _____
_____
_____
_____

The inmate has the option to return mail to sender at his/her own expense within thirty (30) days
or the property will be destroyed.

The inmate has seventy-two (72) hours from the above date to appeal this return. State your
reason(s) for appealing in writing below and return this form to the Warden/designee:

_____
_____
_____
_____
_____
_____
_____

_____ / _____
Inmate Signature                                              AIS#

_____
Date

**Appeal/Denied**                                    **Appeal/Upheld**

_____          _____
Printed Name                                              Printed Name

_____          _____
Authorized Signature                                   Authorized Signature

_____          _____
Date returned to sender                               Date returned to inmate

ADOC Form 448 – December 19, 2005

AR 448 – December 19, 2005

# ALABAMA

# DEPARTMENT OF CORRECTIONS



# INMATE HANDBOOK

*Published by Research and Planning*
*June 9, 2003*



DEFENDANT'S
EXHIBIT

9

# INMATE HANDBOOK INDEX

| NUMBER | TITLE | Page |
|---|---|---|
| **GENERAL INFORMATION** | | |
| 001 | Introduction | 1 |
| 002 | Reception Process | 2 |
| 003 | Institutional Classification Unit | 3 |
| 004 | Institutional Corrections & Social Service Staff | 5 |
| 005 | Custody Classifications | 7 |
| **INSTITUTIONAL LIVING** | | |
| 100 | Institutional Living | 10 |
| 101 | Living Assignment | 11 |
| 102 | Personal Appearance | 12 |
| 103 | Clothing | 13 |
| 104 | Dining Hall | 14 |
| 105 | Visitation | 15 |
| 106 | Correspondence | 16 |
| 107 | Packages and Money | 17 |
| 108 | Checking of Mail and Packages | 18 |
| 109 | Canteen | 19 |
| 110 | Trading, Gambling, and Bartering | 20 |
| 111 | Recreation | 21 |
| 112 | Law Library | 22 |
| 113 | Religion | 23 |
| 114 | Medical Treatment | 24 |
| 115 | Educational and Vocational Training | 25 |
| **LEAVES AND PASSES** | | |
| 200 | Leave and Pass Program | 26 |
| **COMMUNITY PROGRAMS** | | |
| 300 | Work Release Community Based Facilities | 28 |
| 301 | Supervised Intensive Restitution (SIR) | 29 |
| **REDUCTION OF SENTENCE** | | |
| 400 | Good Time Deductions From Sentences | 30 |
| 401 | Parole | 31 |
| **INSTITUTIONAL RULES AND INMATE BEHAVIOR** | | |
| 500 | Conduct Reports | 33 |
| 501 | Schedule of Rules and Violations | 35 |
| 502 | Authorized Punishments for Minor Violations | 46 |
| 503 | Authorized Punishments for Major Violations | 47 |
| 504 | Institutional Disciplinary Procedure | 28 |
| 505 | Segregation Review Board | 49 |
| **RELEASE** | | |
| 600 | Dischage | 50 |
| **INMATE SUPPORT GROUPS** | | |
| 700 | Alabama Volunteers in Corrections (AVIC) | 51 |

| Number 108 | **CHECKING OF MAIL AND PACKAGES** |
|------------|-----------------------------------|

The Department's policy of examining mail and packages is in compliance with pertinent court orders affecting the Department while giving you as much privacy as can be given to you as an individual. The Warden of the prison you are assigned to has the authority to order examination of your mail or packages to the extent that is necessary to protect institutional security. Official mail is subject to verification. Mail to and from public officials or an attorney at law licensed to practice in the State of Alabama will not be opened except in the presence of the inmate addressed.

# AFFIDAVIT

**ZEPHYRINUS EGBUONU**

AIS # 242109, #27041-265

#### PLAINTIFF

**VS**                                              CIVIL ACTION:  2:07-CV-998-WKW

**CAPTAIN BARRETT,  et. al.,**

#### DEFENDANTS

### STATE OF ALABAMA

### MONTGOMERY COUNTY

 I, W. G. Rowell, hereby certify and affirm that I am Warden II at Kilby Correctional Facility; that I am one of the custodians of the institutional records at this institution; that the attached documents are true, exact, and correct photo-copies of certain original documents maintained here in the institution; and that I am over the age of nineteen (19) years.

 I further certify and affirm that said documents are maintained in the usual and ordinary course of business at the Kilby Correctional Facility.

 This, I do hereby certify and affirm to on the 10th day of December 2007.

          _____

         **W. G. Rowell, Warden II**
         **Kilby Correctional Facility**

State of Alabama
Montgomery County
Sworn to and subscribed before me and under my hand and official seal this the
10th day of December, 2007.

         _____

        **Betty S. Carr, Notary Public**
        **My comm. expires 12-17-09**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
KILBY CORRECTIONAL FACILITY

January 27, 2003

STANDARD OPERATING PROCEDURE          OPR:  Assistant Warden
NUMBER:  VII-6

## INMATE MAIL PRIVILEGES

I.  GENERAL

A.  PURPOSE:  To establish and define procedures and responsibilities governing inmate mail privileges at Kilby Correctional Facility.

B.  DEFINITIONS:  For purposes of this SOP, the following definitions apply:

1.  EMPLOYEE:  A person assigned to work at Kilby for the Department of Corrections.

2.  CONTRABAND:  Any item NOT issued to the inmate by the Department of Corrections, sold in the Canteen/Store, or authorized by the Warden in its present form, location, or use.

3.  PUBLICATION:  Unless otherwise specified, any book, magazine, pamphlet, brochure, etc.

4.  LETTER:  Unless otherwise specified, any form or correspondence which as a whole can be contained within one (1) standard letter or legal size mailing envelop.

5.  PACKAGE:  Unless otherwise specified, any form or correspondence which as a whole CANNOT be contained within one (1) standard letter or legal size mailing envelope.



DEFENDANT'S
EXHIBIT
10

6.  MAIL (OR CORRESPONDENCE):  Unless otherwise
    specified, any one or combination of letter,
    package, and/or publication incoming or outgoing
    via the U.S. and/or DOC postal system.

7.  MONEY:  Unless otherwise specified, any one or
    combination of cash, check, and/or money order.

8.  INSPECTION:  Unless otherwise specified, a process by
    which mail is thoroughly checked, internally and externally,
    with or without the inmate being present as specified, not
    for general reading or censorship purposes but only upon
    reasonable belief that the mail contains money, contraband,
    and/or information which (a) constitutes a threat to the
    public safety or institutional order and security, or (b)
    constitutes abuse of the mail privileges to include but not be
    limited to specifications outlined in this SOP.

C.  POLICY:  It is the policy of the Department of
    Corrections (and/or Kilby Correctional Facility) that:

1.  Within the parameters of security, control, and
    procedures established by this SOP and applicable
    related SOPs, governmental/postal regulations, and
    Federal/State law:

    a.  Each inmate has the right to refuse to
        participate in authorized mail privileges;
        however, all inmates at Kilby are encouraged
        to participate as authorized, in order to
        maintain constructive family and community
        ties.

    b.  All incoming and outgoing private and legal
        mail may be sealed, but is subject to
        inspection as described herein.

    c.  No inmate will be utilized to carry, process, distribute,
        or otherwise directly handle official mail.

    d.  Contraband found during mail inspections will  be handled,

secured and disposed of in accordance with Department of Corrections Administrative Regulation 306.

    e.   Violation of prescribed procedures and/or law   governing mail and/or mail privileges will subject the violator to detention, arrest, disciplinary action, and/or other measures (to include prosecution), as applicable and appropriate.

2.  Each employee and inmate is responsible for insuring that the provisions of this SOP are strictly adhered to.

## II. RESPONSIBILITIES

### A. LETTERS

1.  An inmate may correspond with any person, provided (as applicable):

    a.   The inmate's private mail privilege has not been withdrawn as a result of approved disciplinary action or abuse of mail privileges.

    b.  The person has not requested termination of correspondence from the inmate.

    c.  The Warden has granted prior approval for an inmate to correspond with another inmate confined in a Federal, out-of-state, state, county, or city institution based on proven close personal relationship between the inmates.

2.  All incoming and outgoing letters must have the sender's name and address (plus AIS#, if an  inmate) on the outside of the envelope, to insure proper processing and delivery/dispatch.

3.  All incoming letters will be inspected for contraband, money and/or abuse of mail privileges before delivery to the inmate.

    a.  Any type of internet material is prohibited.

4.  All outgoing letters are subject to inspection if  is reasonably believed that the letter contains  contraband, money, or

information which constitutes a threat to public safety or institutional order and security, or which constitutes abuse of mail privileges.

5.  All acceptable letters will be processed and delivered/dispatched promptly. Inspection or other holding of authorized letters will be limited to 24 hours (excluding weekends and holidays). Unauthorized letters and the contents thereof will be held pending the outcome of subsequent related investigation, charge, prosecution, disciplinary action, etc., and disposed of as prescribed in Administrative Regulation 303 Visitation and Correspondence Procedures and Administrative Regulation 306 Disposal of Contraband.

B.  PUBLICATIONS

1.  Inmates may receive a limited number of publications, books, magazines, newspapers, book catalogues, etc. (publications) so long as the publications are received directly from the publisher. Inmates may receive free and gift publications so long as they are mailed directly from the publisher and meet all other security and space limitation requirements. If an inmate purchases a publication, it must be pre-paid from the inmate's prisoners Money on deposit Account (PMOD). Only a current and two back issues may be retained at any one time.

2.  Inmates may not receive publications that could reasonably be expected to threaten, undermine, or damage prison security, prison order, or prison rehabilitation goals, i.e., explosives, ammunition, drugs, sale, distribution, manufacture, handling, or use of weapons, explicit or deviant sexual literature, or racially inflammatory literature.

3.  The Warden or his/her designee will personally inspect EACH ISSUE of a publication when they have a reasonable expectation that that particular issue violates the standards established by paragraph 2 above. If they determine that that issue of the publication violates these standards the Warden, or his designee, may temporarily exclude the publication in accordance with Administrative Regulation 303. Administrative Regulation 303 should be consulted and adhered to prior to any exclusion of publications.

4.  All incoming publications must have the sender's name and address  and the inmate's name, address and AIS #, on the outside of the wrapper, to insure proper processing and delivery.

5.  All incoming publications will be inspected for contraband, money, and/or abuse of mail privileges before delivery to the inmate.

6.  All acceptable publications will be processed and delivered promptly.  Inspection or other holding of authorized publications will be limited  to 48 hours (excluding weekends and holidays). Unauthorized  publications and the contents thereof will be held pending the outcome of subsequent related exclusion, investigation, charge, disciplinary action, prosecution, etc., then disposed of as prescribed.

C.  PACKAGES

1.  An inmate will be allowed to receive packages only as specified below:

   a.  Packages containing legal publications and documents from courts or reputable suppliers will be opened and inspected in the presence of the inmate.

   b.  Packages containing religious publications (to include Bible study courses) will be sent to the inmate IN CARE OF THE CHAPLAIN, and inspected and distributed by the Chaplain.

   c.  Packages containing arts/crafts items must be received directly from a reputable supplier approved by the Warden, inspected by the Mail Clerk, or the Recreation Director in the presence of the inmate before being issued to the inmate.

   d.  Christmas and Incentive packages will be authorized in accordance with the Christmas/Incentive packages SOP.

   e.  Any other package must be approved in advance in writing by a Captain or higher authority.

2.  An inmate may mail outgoing packages, but is responsible

for providing necessary postage and wrapping materials. These packages will be inspected before wrapping, and wrapped in the presence of an officer. Once wrapped in the present of an Officer, the officer will deliver the package to the mailroom to be mailed.

3. All incoming and outgoing packages must have the sender's name and address (plus AIS #, if an inmate) and addressee's name and address (plus AIS # if an inmate) on the outside of the wrapping, to insure proper processing and delivery/dispatch.

4. All acceptable packages will be processed and diverted/dispatched promptly. Inspection or other holding of authorized packages will be limited to 48 hours (excluding weekends and holidays). Unauthorized packages and the contents thereof will be held pending the outcome of subsequent related investigation, charge, disciplinary action, prosecution, etc., then disposed of as prescribed.

D. MONEY

1. An inmate may receive money through the mail from individuals on the inmate's approved visitor list (also known as the authorized funds list), with the Warden having discretion concerning additions or deletions on the list.

   a. Each permanent party inmate is to submit to the Visiting Officer a Correspondence List (a Visitation List with "Visitation" marked out and "Correspondence" written in). The completed list should be placed in the "Completed Visitation List" box on the Main Hallway.

   b. The Correspondence List;

      1. Can show up to eight (8) individuals from whom the inmate expects to receive money orders.

      2. Must include the individual's complete name, address, social security number, and relationship.

      3. May include individuals NOT on the inmate's

Visiting List, but cannot include other inmates or family members of other inmates.

    4.   Does NOT have to include government agencies, banks, etc, from which the inmate might receive authorized payments.

  c.  The inmate may be subject to disciplinary action only if an unauthorized person repeatedly sends money to the institution.

2.   Funds received from those on the inmate's authorized list must be in the form of United States Postal money order, cashier's check, or money order issued by a company licensed to sell money orders by the Securities Commission of the State of Alabama. (A list of such licensed companies is maintained by/in the institution's Business Office).

3.   The cashier's check or money order must include the inmate's name and AIS # to be acceptable.

4.   Acceptable checks or money orders will be removed from the incoming mail and turned in to the Business Office for posting to the inmate's account.

5.   Any cash or unacceptable check or money order will be returned to the sender, along with the mail in which it was received.

6.   Any inmate wishing to send money home or to another party must submit written request fully explaining the need for the distribution of the money, along with a self-addressed envelope addressed to the person the money is to be sent to. This is to be forwarded to the Assistant Warden's Office no later than the 15th of the month.

7.   Request for large sums of money, $100.00 or more, to pay bills, and etc., must be accompanied by copies of the bill or other evidence of indebtedness. The Assistant Warden will approve or disapprove the distribution of the money.

8.   The Warden will then return to request slip with is approval

or disapproval to the Business Office.

9. If the money is approved for distribution, the original request slip will be maintained by the Business Office. A copy will be sent to the inmate indicating the date of the check and the check number.

10. If the request is denied, a copy of the denial will be maintained in the Business Office, the original being returned to the inmate.

E.  ABUSE OF MAIL PRIVILEGES

1. Abuse of mail privileges include, but are not limited to, the following:

   a. Writing of letters containing obscene, profane, or indecent language.

   b. Writing of letters which contain threats against an individual, or escape plots.

   c. Writing of letters which use or attempt to use mail privileges for any purpose which constitutes a threat to institutional order and security, or violation of postal regulations.

   d. Writing of letters which contain derogatory or personal attacks by any person addressed under the privileged mail authorization.

   e. Receipt of sealed mail in authentic or purported authentic envelopes, but from an unauthentic source.

   f. Receipt of mail or attempted mailing of letters or packages not in the manner established by the Warden.

F.  LIMITATIONS

1. When abuses of mail privileges as specified above are found, the Warden may prohibit further correspondence by the inmate with the person to whom the offending material was

directed.

2. When the Warden receives a complaint from a person with whom the inmate has been corresponding, and when termination of the correspondence is requested by the person, the Warden will notify the inmate of the person's request and inform the inmate that further correspondence with the person will cease.

3. The Warden will maintain a list of persons with whom the inmate may no longer correspond as a result of action taken under the mail limitations.

4. An inmate prohibited from corresponding with a person (due to prescribed mail limitations may, every sixty (60) days, submit to the Warden a written request for reinstatement of the privilege to correspond with the person. In cases involving complaints and limiting correspondence, the Warden must communicate with the complainant to determine if resumption or correspondence is desired by the person, and notify the inmate in writing to advise him of the approval or denial for resumed correspondence.

5. When any mail is rejected or not forwarded to the addressee, the inmate will be notified via a form letter that includes the date received, sender's name and addressee's name, and the reasons for rejection or non-forwarding.

6. If an inmate has been transferred or released, first Class mail will be forwarded if a forwarding address is known, or returned to sender if no forwarding address is known.

G. This SOP supersedes all SOPs, etc., previously issued on the subject.

_2-19-03_

TERRANCE McDONNELL, Warden

VII-6    Page                                    9

*Exhu b.b*

*Recerd in LL*
*3-6-06*

## ALABAMA DEPARTMENT OF CORRECTIONS
### ACCESS TO LEGAL MATERIALS AND LAW LIBRARY

Zephyrinus Egbuonu     242109     from   KCF - KCB 212
Inmate's Name      AIS #            Facility

requests copies of the following legal materials:   See back please.

See backside

Egbuonu Zephyr      2/23/06       3:45 PM
Inmate's Signature        Date          Time

---

### FOR USE BY THE LAW LIBRARY SUPERVISOR

Comments: (set forth any adjustments to the request): _____

Not in Kilby's Law Library.

Capt. Bobby Barrett      2-14-06   8:44 AM
Signature of Law Library Supervisor/Designee    Date    Time

### FOR USE BY LAW LIBRARY SUPERVISOR AND/
### OR ACCESS TO COURTS DESIGNEE

The above named inmate has been:

☐ Mailed a copy of the requested material on _____.
                                          Date

☐ Mailed a copy of part of the requested material on

_____.
    Date

☐ Requested material cannot be mailed because _____

_____

☐ Missing books or pages have been found.

☐ Missing books or pages have been ordered.

Capt. Bobby Barrett          Kilby
Signature of Access to Courts Designee      Unit Location

DEFENDANT'S
EXHIBIT
11

# Cases-Opinion of the Court Needed

1. Clark V. United States No. 05-5491 (US Supreme Court 2005)

2. Beard V. Banks No. 04-1739 (U.S. Supreme Court 2005)

3. United States V. Havens No. 04-2956 (Federal Circuit Case 2005)

4. United States V. William No. 05-11594 (Federal Circuit Case 2006)

5. United States V. Clark No. 05-4274 (Federal Circuit Case 2006)  ~need better citation/circuit

6. Mary Cle, LLC V. First Choice Internet Inc. 20004 WL 2895955  ~not available

7. State V. Krejci N.W. 407, 411

Egbuonu Zephyr
02/23/06

*Exhibit 3*

February 13, 2006

TO:    Egbuonu, Zephyriuns, AIS: 242109

FROM: Law Library

    This is a list of the cases you requested:

CLARK V UNITED STATES, US Supreme Statutory Case law Number 05-5491 (2005)
BEARD V BANKS, US Supreme Court Case Number 043-1739 (2005)
UNITED STATES V HAVENS, Case Number 04-2956 (2005) Federal Circuit Case
UNITED STATES V. WILLIAM, No. 05-11594 (2006) Federal Circuit Case
UNITED STATES V CLARK No 05-4274 2006 (Federal Circuit Case)
MARY CLE, LLC V FIRST CHOICE INTERNET, INC. WL 2895955 (2004)
STATE V KREJCI, 458 NW 2d 407, 411

    We were not successful in finding any of the cases you requested.  Our system is not geared to find cases by case number alone which is all you are providing.  These are the citation formats we need to search for US Supreme Court cases:  141 led 2d 111  or  517 us 843.
    On the cases you requested from the federal circuits, we only have access to cases in the 11th Circuit which includes Alabama, Georgia, and Florida, or the 5th Circuit which includes Texas, Louisiana, and Mississippi.
There are no circuits listed on any of the federal circuit cases unless you were requesting cases from the Federal Circuit itself to which we do not have access. We have no access to federal district or circuit cases from the 1st, 2nd, 3rd, 4th, 6th, 7th, 8th, 9th, 10th, D.C. or Federal Circuits other than the hardback volumes currently in the back room of the law library which ended with cases whose opinions were issued in approximately March of 2005.

    This is a copy of the results of our search.

<u>U.S. SUPREME COURT CASES</u>
CLARK V U.S. No 04-8819, March 18, 2005
CLARK V U.S. No 04-9037, April 18, 2005
CLARK V U.S. No. 04-5169, January 24, 2005
CLARK V. U.S. No. 04-6340, January 24, 2005
CLARK V. U.S. No. 04, 9864, June 6, 2005
CLARK V. U.S. No. 04-7815, January 24, 2005

BEARD V. BANKS, No 02-1603, January 26, 2004

<u>FEDERAL CIRCUIT CASES</u>
UNITED STATES V. WILLIAM, No. 05-11594 (2006) Federal Circuit Case
    This was the only hit  for the 5th or 11th Circuit.  US. V. WILLIAMS, No 02-12738, December 27, 2002.
 UNITED STATES V CLARK No 05-4274 2006 (Federal Circuit Case)
    This was the only hit for the 5th or 11th Circuit.   U.S. V. CLARK, No 02-10427, December 30, 2002.
U.S. V. HAVENS, 04-2956, 2005, no hits for the 5th or 11th Circuit
MARY CLE, LLC. V. FIRST CHOICE INTERNET, WL 2895955, 2004, no hits for the 5th or 11th Circuit

<u>CASES FROM OTHER STATES</u>
STATE V KREJCI, 458 NW 2d 407, 411.
    This case is not a state case from the State of Alabama. It is from the Northwestern Reporter which we do not have.


DEFENDANT'S
EXHIBIT
12

*Exhibit 2 con't*

I am attaching a copy of a form to be sent to the Alabama Department of Corrections Legal Division which you may fill out requesting these materials and send to DOC Legal Division, 301 S. Ripley Street. Montgomery, AL 36104.

CC: Captain's Office

*Exhibit 2.*

# MEMORANDUM

**DATE:**      9-24-07

**TO:**        **Warden Rowell**

**FROM:**      **Law Library**

**IN RE:**     **Inmate Zephyrinus Egbuonu, AIS: 42109**

I searched the law library sign-in sheets from October of 2005 until August 2006. I found that inmate Egbuonu signed-in to the law library on the following dates:

October 2005:  3, 4, 5, 7, 11, 13, 14, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29.

November 2005:  1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 14, 15, 18, 19, 21, 23, 28, 29, 30.

December 2005:  2, 3, 6, 7, 8, 9, 13, 17, 20, 23, 27.

January 2006:  3, 7, 14, 17, 20, 21, 24, 27, 28, 30, 31.

February 2006:  1, 2, 3, 4, 6, 7, 13, 15, 17, 18, 21, 22, 23, 25, 28.

March 2006:  4, 6, 7, 17, 18, 20, 23, 24, 25, 27, 29, 30, 31.

April 2006:  1, 3, 4, 5, 8, 10, 11, 12, 15, 18, 19, 22, 25, 29.

May 2006:  2, 4, 6, 8, 9, 10, 11, 12, 13, 15, 17, 19, 22, 23, 24, 25, 27, 30, 31.

June 2006:  1, 2, 3, 6, 7, 8, 9, 10, 12, 13,14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30.

July 2006:  1, 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 31.

August 2006:  none

Photocopies of the sign-in sheets are being made.

I know that inmate Egbuonu was represented by counsel because he was often asking for cases from briefs filed by his attorney. Although it is not really relevant given the excessive amount of access inmate Egbuonu had to the law library, I am attaching some case law regarding access if an inmate is represented by counsel.



DEFENDANT'S
EXHIBIT

13

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| ZEPHYRINUS EGBUONU, #27041-265, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   2:07-CV-998-WKW |
| | ) |
| CAPTAIN BARRETT, et al., | ) |
| Defendants. | ) |

## A F F I D A V I T

| | |
|---|---|
| STATE OF ALABAMA | X |
| | X |
| MONTGOMERY COUNTY | X |

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Richard F. Allen, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Richard F. Allen. I am presently employed as Commissioner of the Alabama Department of Corrections. I am over twenty-one (21) years of age.

I do not know the Plaintiff in this matter and to my knowledge have not had any contact with him. As Commissioner, I do not control the daily operation of the Kilby Correctional Facility or any of the various institutions of the Department, and had no involvement in the alleged incident.

I deny that I have violated the Plaintiff's constitutional rights in any way.

Richard F. Allen
Commissioner

SWORN TO AND SUBSCRIBED before me this 21 day of December, 2007.

NOTARY PUBLIC
MY COMMISSION EXPIRES

**EXHIBIT** 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ZEPHYRINUS EGBUONU #242109, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:07-cv-998-WKW |
| | ) | |
| CAPTAIN BARRETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED SPECIAL REPORT AND ANSWER

COME NOW Defendants Alabama Department of Corrections, Commissioner Richard F. Allen, former Commissioner Donal Campbell, Associate Commissioner Terrance McDonnell, Warden Willie Rowell, Warden Bobby Barrett, and General Counsel Kim Thomas, by and through the undersigned counsel in the above-styled action, and file their Special Report and Answer, pursuant to the November 9, 2007, of this Honorable Court. Defendants state as follow:

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he has been denied access to the courts.

### DEFENDANTS

1.    Richard F. Allen, Commissioner
      Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

2.    Donal Campbell, former Commissioner
      Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

3.    Terrance McDonnell, Associate Commissioner
      Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

4.    Willie Rowell, Warden II
      Kilby Correctional Facility
      P.O. Box 150
      Mt. Meigs, AL 36507

5.    Bobby Barrett, Warden II
      Staton Correctional Facility
      P.O. Box 56
      Elmore, AL 36025

6.    Kim Thomas, General Counsel
      Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

7.    Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

## **DEFENSES**

Defendants assert the following defenses to Plaintiff's claims:

1. Defendants deny each and every material allegation contained in Plaintiff's Complaint and demand strict proof thereof.

2. Defendants plead not guilty to the charges in Plaintiff's Complaint.

3. Plaintiff's complaint fails to state a claim upon which relief can be granted.

4. Plaintiff is not entitled to any of the relief requested.

5. Defendants plead the defense of qualified immunity and aver that any purported action taken by any of them was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by Plaintiff.

2

6. Defendants are entitled to qualified immunity and aver it is clear from the face of the complaint that Plaintiff has not alleged specific facts indicating that any Defendant violated any clearly established constitutional right.

7. Plaintiff is not entitled to any relief under 42 U.S.C. §1983.

8. The allegations contained in Plaintiff's Complaint against Defendants, fails to comply with the heightened specificity requirement of Rule 8 in §1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F. 2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. of Escambia County, Ala., 880 F. 2d 305, 309 (11th Cir. 1989).

9. Defendants plead all applicable immunities, including but not limited to qualified, absolute, sovereign, discretionary function immunity, and state agent immunity.

10. Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

11. Defendants plead the general defense.

12. This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against these Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

13. All claims of Plaintiff against these Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

14. Defendants plead the affirmative defense that Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to Plaintiff.

15. Defendants plead the affirmative defense that Plaintiff has failed to mitigate his own damages.

16. Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e(a) and as such these claims should be dismissed.

17. Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

18. Pursuant to 28 U.S.C. §1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. §1997 (e) (c).

19. Defendants reserve the right to raise additional defenses.

## DISCLOSURES

In accordance with the November 9, 2007, Special Report Order, Defendants submit the following initial disclosures:

A. Attached affidavits of:

    1.      Richard F. Allen, Commissioner

    2.      Terrance McDonnell, Associate Commissioner

    3.      Willie Rowell, Warden II

    4.      Bobby Barrett, Warden II

    5.      Kim Thomas, General Counsel

B. The following persons may have personal knowledge of the facts relevant to the claims asserted by Plaintiff or the defenses asserted by Defendants:

Terrance McDonnell, Associate Commissioner

Willie Rowell, Warden II

Bobby Barrett, Warden II

Kim Thomas, General Counsel

Zephyrinus Egbuonu, Plaintiff

Victor Napier, Correctional Captain

Kilby Correctional Facility, Inmate Law Library Clerks

C. Clear and legible copies of the documents relevant to claims or defenses asserted in the action are as follows[1]:

6a.    Inmate Summary Data

7.    Administrative Regulation 412, *Institutional Law Libraries*

8.    Administrative Regulation 448, *Inmate Mail*

9.    Inmate Handbook, page 18

10.    Standard Operating Procedure VII-6

11.    Request for Legal Access

12.    Memo dated 02-13-2006

13.    Memo dated 09-24-07

## STATEMENT OF THE FACTS

Plaintiff was an inmate within the Alabama Department of Corrections. He was serving a 10-year term for two (2) convictions of Theft of Identity I. (Ex. 6a)

---

[1] Exhibits 1 – 13 were submitted with the Special Report and Answer dated December 21, 2007. (Doc. 10)

Plaintiff had access to the Law Library while he was confined at Kilby Correctional Facility in Montgomery, Alabama. (Ex. 12) Inmates are allowed access to the Law Library Monday through Friday, 8:00 am to 4:00 pm, and Saturday, 3:00 pm to 6:00 pm. (Ex. 2) From October 2005 to July 2006, Plaintiff visited the Law Library 172 times. (Ex. 2, 3, 4, 12) The Law Library has a vast selection of legal resources, including Lexis/Nexis. (Ex. 3, 4, 5) The institutional law clerks are well trained in research procedures. (Ex. 3, 4) Two (2) of the law clerks have completed paralegal training. (Ex. 3, 4) Issues or problems with the Law Library were reported to Defendant Barrett, who monitored the operations of the Law Library on a regular basis. (Ex. 4) Plaintiff also requested legal materials from the Law Library who then responded as to what research could be provided. (Ex. 13) The Law Library also informed Plaintiff of the proper process in requesting information. (Ex. 13) If information could not be accessed at the Law Library, there is a request process. (Ex. 11) Plaintiff did on at least one occasion submit a request that was processed. (Ex. 4, 11)

Plaintiff did have mail that was rejected due to the fact that it contained internet material. (Ex. 4) Internet material is prohibited from being sent into Kilby Correctional Facility. (Ex. 3, 4, 9)

Commissioners do not oversee the daily operations of the correctional institutions. (Ex. 1, 5)

<u>**ARGUMENT**</u>

<u>I.</u>    <u>Immunities</u>

As is evident from Plaintiff's complaint, his claims are directed principally toward actions allegedly perpetrated by officials of the Alabama Department of Corrections

(ADOC). There are no claims directed specifically toward Defendants ADOC, Commissioner Allen, or former Commissioner Campbell.

"'It is well established in [the Eleventh] Circuit that supervisory officials are not liable under §1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'" Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Thus, the Commissioner or former Commissioner cannot be subjected to suit merely because other state officials or agents who may ultimately answer to them have allegedly violated the law.

Defendants are officials or an agency of the State of Alabama, Plaintiff's official-capacity claims must be considered to be against the State itself. This affords the Defendants Eleventh Amendment immunity; the State need not actually be named as a party for such immunity to be available. See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983). Thus, Plaintiff's federal claims for damages against the Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed.

Defendants are entitled to qualified immunity regarding the individual-capacity federal claims stated in Plaintiff's complaint. The basic test for qualified immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  Qualified immunity bars claims "so long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Further, qualified immunity is not just a bar to damages; it is a bar to suit. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity.  See Hansen v. Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial").  Also, in Gardner v. Howard, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held "[q]ualified immunity shields government officials from §1983 damage liability unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Citing Harlow, 457 U.S. 800).

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function.  If not for the protections of immunity, state officials could be subject to suit for every move they make, which would have a serious chilling effect on the ability of such officials to do their jobs.  In sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner.  Mitchell, 472 U.S. at 525-26; see also Hunter v. Bryant, 502 U.S. 224, 229 (1991); Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 794 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1983).

In the present case, Defendants deny that they violated "a clearly established right" of the Plaintiff.  As such, it is incumbent upon Plaintiff to show that Defendants violated "clearly established constitutional law" in their dealings with Plaintiff.  See

Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (holding that it is a plaintiff's burden to rebut a defendant's qualified immunity defense). This, however, has not been demonstrated by Plaintiff. He has alleged no constitutional injury perpetrated by any Defendant. Likewise, Plaintiff cannot contend that the Commissioner or former Commissioner vicariously harmed him because of the alleged actions of other state officials or agents. See Cottone, 326 F.3d at 1360. Because Plaintiff cannot demonstrate that any of his clearly established constitutional rights have been infringed, qualified immunity bars his attempt to impose liability on Defendants. Therefore, Plaintiff's federal claims against Defendants in their individual capacities should be dismissed.

Plaintiff's state-law claims against the Defendants in their official capacities are similarly barred by the State's sovereign immunity, as is bestowed by Article I, section 14 of the Alabama Constitution of 1901. In Haley v. Barbour County, the Alabama Supreme Court held that "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State." 885 So. 2d 783, 788 (Ala. 2004) (citing Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala. 2003), and Mitchell v. Davis, 598 So. 2d 801, 806 (Ala. 1992)). Thus, Plaintiff's claims under state law for damages against Defendants in their official capacities are barred by sovereign immunity and should be dismissed.

In Ex parte Butts, 775 So. 2d 173 (Ala. 2000), the Alabama Supreme Court adopted a test that was first set out in its plurality opinion in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), for evaluating whether a state official sued in his individual capacity is entitled to immunity as an agent of the State. Though distinct from a qualified immunity analysis under federal law, State-agent immunity similarly shields state

officials from liability while they are discharging their duties in good faith. In this case, Defendants' alleged actions clearly fall within the protection of State-agent immunity under Alabama law. See Butts, 775 So. 2d at 177-78 ("A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners").

Defendants can only be divested of State-agent immunity upon a showing that they acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law. Butts, 775 So. 2d at 177-78; Ryan v. Hayes, 831 So. 2d 21, 28 (Ala. 2002). Moreover, it is Plaintiff's burden to make such a showing. Ryan, 831 So. 2d at 27-28; see also Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, once it is shown that a state agent was undertaking a discretionary function, the burden shifts to the plaintiff to disprove the defendant's entitlement to immunity). Therefore, Defendants are immune from Plaintiff's suit.

II.    Access to Courts

The courts have continuously recognized that the operation of correctional institutions are, at best, a difficult assignment and that correctional officials must be given broad range in discretion and latitude in which to carry out their duties. See Hewitt v. Helms, 459 U.S. 460 (1983). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979), Sims v. Mashburn, 25 F. 3d 980 (11th Cir. 1994).

In Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998), the Eleventh

Circuit Court of Appeals held that "the fundamental constitutional right of access to the

courts requires prison authorities to … provid[e] prisoners with adequate law libraries or

adequate assistance from persons trained in the law." (Quoting Bounds v. Smith, 430

U.S. 817, 828 (1977)).  "While prison officials must provide prisoners with direct legal

assistance or access to a law library, they are not required to provide both, so long as the

constitutional requirement of 'meaningful access' is met." Ex parte Thigpen, 513 So.2d

101 (Ala. Crim. App. 1987); quoting Bounds, 430 U.S. at 817; other citations omitted.

The Wilson Court recognized that the United States Supreme Court "clarified that

prisoners' contentions of deprivations of access to courts must show actual injury as a

'constitutional prerequisite'." Wilson, 163 F.3d at 1290; Lewis v. Casey, 518 U.S. 343,

351 (1996); Weaver v. Brenner, 40 F.3d 527, 533 (2nd Cir. 1994).  The Wilson Court

stated:

> While *Bounds* guarantees the right of access to the courts under the
> Fourteenth Amendment, prisoners have no inherent or independent right
> of access to a law library or to legal assistance. *See Lewis*, 518 U.S. at
> 349-51, 116 S.Ct. at 2179-80.  Instead, they must show actual injury in the
> pursuit of specific types of nonfrivolous cases: direct or collateral attacks
> on sentences and challenges to conditions of confinement. *Id.* at 355-57,
> 116 S.Ct. at 2182. "Impairment of any *other* litigating capacity is simply
> on of the incidental (and perfectly constitutional) consequences of
> conviction and incarceration." *Id.* at 355, 116 S.Ct. at 2182.

It is the policy of Defendant ADOC "to provide legal resource libraries and to

permit all inmates access to the materials available." (Ex. 7) Should necessary materials

be "missing" "the inmate should report this to the institutional law library supervisor by

submitting Form N944L i, 'Access to Legal Material.'" (Ex. 7) In the case at bar,

Plaintiff has been allowed access to a law library and various case law. (Ex. 3, 4, 11, 12,

11

13) Plaintiff requested and received various research. (Ex. 11, 12) He has not shown how, if at all, he has been injured. Therefore, this case should be dismissed.

III.    Legal Mail

Plaintiff alleges that Defendants opened and returned legal research that was mailed from his family. The ADOC established an administrative regulation to address incoming and outgoing inmate mail. The current regulation is AR 448, which was enacted on December 19, 2005. This regulation defines "legal mail" as "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the courts and governmental agencies." The regulation states that "[a]ll 'Legal Mail' will be opened and inspected in the presence of the inmate." This regulation further states that the inspection of "[i]ncoming mail, including 'Legal Mail', shall be inspected for contraband and/or for abuse of the mail privilege. Outgoing mail may be inspected for contraband." (Ex. 8) It should be noted that Plaintiff is aware of the mail procedure since these procedures are stated in the Alabama Department of Corrections, Inmate Handbook. (Ex. 9)

The United States Supreme Court considered the issue of incoming legal mail in Wolff v. McDonnell, 415 U.S. 539, 576-577 (1974). The Wolff decision held "[w]e need not decide, however, which, if any, of the asserted rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found acceptable by the State....we think that [the prison officials], by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires." "The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not

been improperly read in the guise of searching for contraband." <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997); citing <u>Harrod v. Halford</u>, 773 F.2d 234 (8th Cir. 1985); <u>Morgan v. Montanye</u>, 516 F.2d 1367 (2nd Cir. 1975). The legal research that was rejected was internet material that was sent from a free-world person. (Ex. 3, 4) This type of material is prohibited from entering the institution. (Ex. 3, 4, 10) Thus, the material was rejected. Therefore, there was no violation of Plaintiff's rights.

Wherefore these premises considered, Defendants pray that this Honorable Court will find that Plaintiff is not entitled to any relief and this complaint should be dismissed.

Respectfully submitted,

/s/TARA S. KNEE
TARA S. KNEE
ASSISTANT ATTORNEY GENERAL
ASSISSTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**
Alabama Department of Corrections
Legal Division
Post Office Box 301501
Montgomery, Alabama 36130-1501
(334) 353-3885

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of January, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

> Inmate Zephyrinus Egbuonu
> #27041-265
> Federal Detention Center
> P.O. Box 5010
> Oakdale, LA  71463

/s/Tara S. Knee
Tara S. Knee
Assistant Attorney General
Assistant General Counsel

```
28/JAN/2008      15:12:42     CDSUM     499     L-TARA          CDSUM01     604
                            DISPLAY INMATE SUMMARY DATA                  PRODUCTION
-------------------------------------------------------------------------------
AIS: 00242109    INMATE: EGBUONU, ZEPHYRIUNS C           RACE: B   SEX:  M

INST: 000-UNASSIGNED                   JAIL CR: 0670D DOB: 03/04/1965
SSN:              PAR CONS DT: 08/2006 CURR CUST: NONE  CURR CUST DT:09/14/2005
ALIAS:                                 ALIAS:
ADM TP: NEW COMIT FROM CRT W/O REV OF  STATUS: EOS FROM PAROLE
INIT SENT DT:08/02/2005 ADM DT: 08/02/2005 DEAD TIME: 00Y 00M 00D
                                  N                                       TY
COUNTY        SENT DT   CASE    L CRIME                         TERM      PE
JEFFERSON   08/02/2005 1422.1 Y THEFT OF IDENTITY I        * 10Y00M00D  CS
JEFFERSON   08/02/2005 1422.2 Y THEFT OF IDENTITY I        * 10Y00M00D  CC


              NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 000DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 007TRANSFER RECORDS ON FILE.
INMATE HAS 00 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL   TERM  REV GOOD TIME  MIN REL DT  TOT GOOD TIME  SHORT DATE  LONG DATE
010Y 00M 00D  000Y 00M 00D   11/30/2007  006Y 02M 20D  11/30/2007  09/26/2013
```



DEFENDANT'S EXHIBIT 6a