IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 MAR 25  A  9: 22

| | | |
|---|---|---|
| ZEPHYRINUS EGBUONU, | * | DEBRA P. HACKETT, CLK |
| #27041-265 | | U.S. DISTRICT COURT |
| Plaintiff, | * | MIDDLE DISTRICT ALA |
| | * | |
| v. | * | 2:07-CV-998-WKW |
| | * | |
| CAPTAIN BARRETT, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## RESPONSE TO SPECIAL REPORT AND ANSWER

**COMES NOW** Plaintiff Zephyrinus Egbuonu, Acting Pro-Se, by
and through him in the above style in accordance with this Honor-
able Court  January 8, 30, and February 5, 2008 Orders (Doc. Nos.
15, 29, and 32),  Plaintiff file his response to Defendants';
Commissioner Richard Allen, General Counsel Kim Thomas, Warden
Terrence McDonnell, Deputy Warden Willie Rowell, and Captain Bobby
Barrett, Special Report and Answer.. Plaintiff state as follow:

### PLAINTIFF"S ALLEGATIONS

Plaintiff re-alleges and incorporates by references his
filed civil complaint and further states as follows:

Defendants arbitrary denial Plaintiff  access to legal mat-
erials (legal citations, statutes, resources), right of access to
the adequate law library,  rights of access to the courts, right
of access to incoming mails containing internet generated down-
loaded material text prints and failed to train and supervise

its staffs (officials) on how to conduct their duties and protect
prisoners constitutional rights such as failure to develop and or
enforce a policy of sharing informations regarding legal materials,
and unconstitutional implemented a policy that violated prisoners'
constitutional rights.

## RESPONSE IN  OPPOSITION TO DEFENSES

Plaintiff assert the following response in opposition to
Defendants' defenses:

1.  Defendants violated each and every material allegations
    contained in the Plaintiff's complaint and Plaintiff's
    material allegation made in the complaint and the
    Plaintiff's response to Special Report and Answer has
    been strict proof thereof.

2.  Defendants are guilty to the charges in Plaintiff's
    complaint and as stated in this response to Special
    Report and Answer.

3.  Plaintiff's complaint and this report state a claim
    upon which relief can granted.

4.  Plaintiff is entitled to all of the relief requested.

5.  Defendants are not entitled to qualified immunity and
    that all purported action taken by all of them was un-
    reasonable and in bad faith with reference to clearly
    established law at the time of the incidents complained
    of by Plaintiff.

6.  Defendants are not entitled to qualified immunity and
    it is clear from the face of the complaint that Plain-
    tiff has alleged specific facts indicating that all

Defendants violated all clearly established constitutional right.

7.  Tort is a legal word that means a wrong or injury. Tort law is the law that provides remedies for people who have been wronged or injured.  Common tort claims include negligence and intentional infliction of emotional distress.  Plaintiff is entitled to relief under 42 U.S.C. § 1983.

8.  The Plaintiff's complaints against Defendants, comply with the heightened specificity requirement of Rule 8 in § 1983 cases. Conley v. Gibson, 335 U.S. 41, 45-47, (1957), Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

9.  Defendants are not entitled to all applicable immunities, including but not limited to qualified, absolute, sovereign, discretionary function immunity, and state agent immunity.

10.  Defendants has acted under color of state law depriving Plaintiff his constitutional rights and Defendants are not entitled to substantive immunity.

11.  Defendants are not entitled to the general defense.

12.  This Honorable Court have subject matter jurisdiction due to fact that the Plaintiff's allegations against these Defendants are recognized as a deprivation of the Plaintiff's Constitutional rights.

13.  All claims of Plaintiff against these Defendants in their official capacities are not barred by the Eleventh Amendment of the United States Constitution.

3

State Government Staffs (Officials) can be sue for damages and injunctive relief.

14. Defendants are not entitled to the affirmative defense and Plaintiff's complaint contains detailed specification and factual description of the acts and omissions alleged to render Defendants liable to Plaintiff.

15. Defendants are not entitled to the affirmative defense that Plaintiff has not failed to mitigate his own damaaged, and Defendants' actions and inactions caused Plaintiff's damages.

16. Plaintiff has exhausted his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C § 1997 e (a), and as such these claims should be allow to proceed.

17. Defendants are not entitled to the affirmative defense that they are guilty of all conducts which justify the imposition of punitive damages against all of them and

18. Pursuant to 28 U.S.C § 1915 A, Plaintiff's claims was arguably actionable or nonfrivolous, Plaintiff state a claim upon which relief can be granted, Plaintiff seeks money damages and injunctive relief from Defendants who are not entitled to immunity as provided for in 42 U.S. C. § 1997 (e)(c).

19. Defendants request to reserve the right to raise additional defenses shall be denied.

20. Defendants are not entitled to a relief, that they are guilty of all conducts which justify the imposition of

4

of injunctive relief against all of them, Kilby Cor-
rectional Facility, Alabama State Corrections and State
-Wide injunctive reliefs.

21. Defendants' negligently recklessly disregarded and or
acted with actual malice or intent and with deliberate
indifference violated Plaintiff's Constitutional rights.

22. Defendants' violated all of the Plaintiff's due process
and equal protection right; First, Eighth and Fourteenth
Amendments to the Constitution of the United States.

23. Defendants' worked alone, together and agreed violated
all of the Plaintiff's Constitutional rights.

24. Defendants' policy or custom, conduct actions and inac-
tions as with respect to the Plaintiff's complaints and
claims was a "moving force" behind the violation of
Plaintiff's Constitutional rights and has caused Plaint-
iff to suffer.

In addition, Plaintiff submits that the Defendants plead
affirmative defense and the burden is thus on the Defendants to
establish its immunity from suit.  The Defendants offer no evid-
ence demonstrating that Plaintiff was provided the alleged stated
access nor train and supervise its staffs (officials) to fulfill
their constitutional obligation of ensuring that inmates' constit-
utional rights protected.  Moreso,  Defendants simply failed to
carry their burden of establishing Plaintiff's Constitutional
rights were not violated by them.    Defendants plead and plead
with respect to the Plaintiff's complaints shall be denied.

5

## DISCLOSURES

In accordance with the Honorable Court  January 8, 30 and February 5, 2008 Orders (Doc. Nos. 15, 29 and 32), Plaintiff submit the following initial disclosures prior to discovery:

A.   Plaintiff's Civil Complaint Exhibits:

1.   Ex. Parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. Nov. 24, 2004), Cert. Denied,  911 So. 2d 755 (Ala. Apr. 22, 2005)

2.   Kilby Law Library respond dated 02-13-06

3.   State of Georgia v. Mayze, 622 S.E. 2d 836 (GA. Nov. 2005) [Cited on Alabama Attorney General's Brief Appellee Brief].

4.   State of Alabama v. Zephyrinus Egbuonu Partial Trial Reporter's Official Transcript on Appeal.

B.   Attached Plaintiff's Response Affidavits of:

5.   Richard Allen, Commissioner

6.   Terrence McDonnell, Warden

7.   Willie Rowell, Deputy Warden

8.   Bobby Barrett, Captain

9.   Kim Thomas, General Counsel

10.  Donal Campbell, Former Commissioner (to be filed upon receipt of his affidavit)

C.   Clear and legible copies of the documents  relevant to Plaintiff's claims asserted in the action in part are as follows:

11.  Alabama State Code § 13A-8-192

12.  Alabama State Code § 13A-8-196

13.  Ex. Parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. Nov. 2004) Application for Rehearing Overruled dated 01-21 -05.

14.  Ex. Parte Egbuonu, 911 So. 2d 755 (Ala. Apr. 22, 2005)

15.  United States v. Rodriguez-Moreno, 526 U.S. 275 (1999)

16.  United States v. Cabrales, 524 U.S. 1 (1998)

17.  United States v. Lopez, 115 S. Ct. 1624 (1995)

18.  Other United States Supreme Court and Federal Courts' legal decisions.

19.  Plaintiff's indigent status granted, dated 06-02-04

20.  Plaintiff's State of Alabama Defense Counsel appointment dated 08-15-05

21.  State of Alabama Post-Conviction Notice of Direct Appeal dated 08-16-05.

22.  Zephyrinus Egbuonu v. State of Alabama - Post Conviction Appellant Brief dated 01-09-06

23.  Zephyrinus Egbuonu v. State of Alabama - Post-Conviction Partial Appellant Response Brief dated 02-21-06

24.  Order of the Alabama Supreme Court Adopting Appellate Court Time Standard.

25.  Shelton v. Heard, 696 F. 2d 1129 (5th Cir. 1983)

26.  Inmate Summary Data dated 01-17-06 and 07-31-06

27.  Superior Court of California, County of Los Angeles: LASD - Fugitive Detail dated 04-19-06.

28.  Alabama Department of Corrections Inmate Progress Review Form dated 03-21-06

29.  Alabama State Board of Pardon and Parole

30. Harris County Law Enforcement Report Case No. 910204093 dated 02-03-91

31. United States Department of Homeland Security Bureau of Immigration and Customs Enforcement - Arrest, Custody, Rights and Request Determination Documents dated 02-06 -07.

32. Zephyrinus Egbuonu v. State of Alabama, CR-05-0143 _____ So. 2d _____ (Ala. Crim. App. May 25, 2007) remand decision.

33. Zephyrinus Egbuonu v. State of Alabama, CR-05-0143 _____ So. 2d _____ (Ala Crim. App. January 4, 2008) remand decision.

34. Alabama State Court of Criminal Appeals remand letter to the Trial Court dated January 29, 2008.

35. Trial Court Order of Remand dated January 31, 2008

36. Zephyrinus Egbuonu v. State of Alabama, CR-05-0143 _____ So. 2d _____ (Ala. Crim App. February 22, 2008) affir-med decision.

37. Appellant (Plaintiff) counsel of record was granted withdraw for the appellant dated February 22, 2008.

38. Former Appellant's Counsel of Record letter to Plaint-tiff dated 02-04-08

39. Ex Parte Egbuonu, 911 SO. 2d 748 (Ala. Crim. App. Nov. 2004) - Appellant Brief dated August 25, 2004.

40. Plaintiff Biography

D. Other clear and legible copies of the documents relevant to Plaintiff's claim asserted in the action in part are as

8

follows:

41. Inmate Request - Time Conflict First Crew request dated 10-09-05

42. Inmate Request - Kitchen Job Time Conflict with Law Library and Religion dated 10-11-05

43. Inmate Request - Job Time Conflict with Appeal and Religion dated 10-13-05

44. Notification of Rejected Mail dated 10-18-05

45. Notification of Rejected Mail dated 10-28-05

46. Notification of Rejected Mail dated 11-01-05

47. Notification of Rejected Mail dated 12-06-05

48. Inmate Request - Legal Document Problem dated 12-24-05

49. Inmate Request - Trial Transcript Mail Issue dated 12-24-05

50. Inmate Request - Law Library dated 01-22-06

51. Inmate Request - Law Library dated 01-25-06

52. Inmate Request - Law Librarian Relate dated 02-08-06

53. Inmate Request - Legal Material dated 02-28-06

54. Inmate Request - Legal Material dated 02-28-06

55. Inmate Request - Legal Material dated 03-01-06

56. Inmate Request - Legal Material dated 03-07-06

57. Plaintiff letter to Alabama Department of Corrections Legal Division - Legal Materials dated 04-08-06

58. Inmate Request - Legal Material dated 04-06-06

59. Inmate Request - Transfer Denied dated 04-10-06

60. Inmate Request - Background Record Review dated 04-13-06

61.  Notification of Rejected Mail dated 04-14-06

62.  Inmate Request - Law Library Access dated 04-15-06

63.  Inmate Request - Vocational School Denied dated 04-18
     06

64.  Plaintiff's letter to Defendant Deputy Warden Rowell
     - Help to address some ongoing issues dated 04-20-06

65.  Affidavit and Court documents relating to Warden McDonnell

66.  Inmate Request - Official Law Library Hours dated 04-
     21-06

67.  Plaintiff's letter to Defendant Commissioner Richard
     Allen - Legal Materials dated 05-02-06

68.  Plaintiff's letter to Defendant Kim Thomas - Request
     for Legal Materials dated 05-19-06

69.  Plaintiff's letter to Defendant Deputy Warden Rowell
     - Request for inaccurate information correction dated
     05-23-06

70.  Inmate Request - Inmate Mail dated 05-23-06

71.  Inmate Request - Law library Access dated 05-23-06

72.  Inmate Request - Law Library dated 05-24-06

73.  Inmate Request - Law Library dated 05-26-06

74.  Inmate Request - Reading Material dated 05-28-06

75.  Inmate Request - Legal Mail dated 06-11-06

76.  Inmate Request - Mail Related dated 06-12-06

77.  Inmate Request - Mail Withheld dated 06-19-06

78.  Inmate Request - Mail Withheld dated 06-19-06

79.  Inmate Request - Jail Time Served dated 06-24-06

80.  Inmate Request - Mail Issue dated 06-28-06

81. Inmate Request - Notification of Rejected Mail dated 07-24-06

82. Plaintiff's letter to Defendant Commissioner Richard Allen - Help for Vocational Trade School dated 08-01-06

83. Plaintiff's letter to Defendant Commissioner Richard Allen - Help for access to internet material and adequate Law Library dated 08-01-06

84. Plaintiff's letter to Defendant Commissioner Richard Allen - Help for access to non-immediate family visitor dated 08-01-06

85. Plaintiff's letter to Defendant Deputy Warden Rowell - Jail Time Served dated 08-01-06

86. Plaintiff's letter to Defendant Deputy Warden Rowell - Environmental Tobacco Smoke Issues dated 08-01-06

87. Plaintiff's letter to Defendant Kim Thomas - Legal Materials dated 08-4-06

88. Plaintiff's letter to Mailroom Supervisor - Mail Withheld Issues dated 08-21-06

89. Inmate Request - Mail Withheld dated 08-22-06

90. Plaintiff's letter to Central Record Division - Jail Time Served dated 08-28-06

91. Plaintiff's letter to Defendant Commissioner Richard Allen dated 08-30-06

92. Plaintiff's letter to Mailroom Supervisor - Mail Withheld Issues dated 08-31-06

93. Plaintiff's letter to Defendant Kim Thomas - Legal materials dated 09-09-06

11

94.  Alabama Department Of Corrections Constituent Service Officer's letter to Plaintiff - Jail Time Served dated 09-13-06

95.  Plaintiff's letter to Constituent Service Officer - Jail Time Served dated 10-02-06

96.  Plaintiff's letter to Defendant Deputy Warden Willie Rowell - Account Balance for Forma Pauperis dated 10-17-06

97.  Plaintiff's letter to Defendant Commissioner Richard Allen - Jail Time Served dated 12-07-06

98.  Zephyrinus Egbuonu v. State of Alabama,  CR-05-0143 _____ SO. 2d _____ (Ala. Crim. App. Feb. 22, 2008) Application for Rehearing dated March 5, 2008

99.  Administrative Regulation 009, Smoke/Tobacco Free Policy

100.  Administrative Regulation 018, Institutional Standard Operating Procedures

101.  Administrative Regulation 026, Availability of Legal Assistance

102.  Administrative Regulation 214. Law Library Supervisors

103.  Administrative Regulation 219, Training

104.  Administrative Regulation 231, Training for Supervisors

105.  Administrative Regulation 403, Disciplinary Hearing Procedures for Major Rule Violation

106.  Administration Regulation 412, Institutional Law Library

107.  Administrative Regulation 448, Inmate Mail

12

## STATEMENT OF THE FACTS

Plaintiff mailed his motion for extension of time on January 21, 2008 (Doc. Nos. 25, 29) to enable him verify that Plaintiff is not Royce Privett and confined at Limestone Correctional Facility in Harvest, A l a b a m a   a s   s t a t e d   by Defendants (Doc. No. 10). On January 29, 2008 Defendants filed amended Special Report and Answer (Doc. Nos. 26, 28) and corrected that Plaintiff is not Royce Privett. However, the Defendants further alleged that "Plaintiff was an inmate within the Alabama Department of Correction. He was serving a 10-year term for two (2) conviction of Theft of Identity I. (Ex. 6a)". Plaintiff stated that the Defendants' amended Special Report and Answer is incorect and inaccurate.

Plaintiff is a former inmate at Kilby Correctional Facility ("KCF") from September 2005 to August 1, 2006 and at Staton Correctional Facility ("SCF") from August 1, 2006 to February 5, 2007. (Exhibits ("Ex.") 26, 29) Plaintiff was paroled by Alabama State Board of Pardon and Parole and release on February 5, 2007. (Ex. 29, 31) Presently, Plaintiff is currently a civil immigration detainee at the Federal Detention Center at Oakdale, Louisiana. (Ex. 31, Doc . No. 1, 2)

Plaintiff is a resident of Los Angeles, California and has never before corresponded conversed, internet, telephone with Alabama nor had any ties or connection with anyone in Alabama State. Plaintiff has never been to Alabama and has never fled from Alabama however the government of Alabama State labelled him fugitive from Alabama and extradited and brought him to the remote

13

forum State of Alabama for Alabama State justice. (Ex. 4)  No
crime or element of crime charged Plaintiff occurred in the State
of Alabama.    No crime of overt act was committed in connection
with Alabama.  (Ex. 3; dissenting opinion, 4, 14)  All crime
charged against Plaintiff in Alabama State Tribunal commenced,
continued, and consummated in the State of California and Cali-
fornia has subsequently dismissed the charges.  (Ex. 4, 15, 16,
17, 18)    Plaintiff was a victim of Identity Theft since 1991
prior to his engineering degrees graduation.  (Ex. 30, 40)

   Plaintiff was charged with Identity Theft in Alabama under
the Alabama State Code section 13A-8-192 and 13A-8-196 (Jurisdic-
tion) (Ex. 11, 12).    Plaintiff was falsely labelled fugitive
from Jefferson County, Alabama in the 21st Century pursuant to
the State of Alabama Code section 13A-8-196 which provides that
a criminal prosecution shall be held where Alabama States' res-
ident resides irrespective where the crime or element of the crime
was committed. (Ex. 12)  Plaintiff's extradition to the State of
Alabama was inconsistent and contrary to the Federal laws and
Constitution of the United States. 18 U.S.C § 3182, U.S.C. Article
IV, VI. (Ex. 12, 15, 16, 17, 18, 27).  Prior to Plaintiff's trial,
Plaintiff was offered a misdemeanor plea which Plaintiff declined.
The Alabama State accuser in this matter admitted that he has no
financial loss before the Alabama State Tribunal. (Ex. 4, 11)

   Prior to Plaintiff trial, Plaintiff through his paid retained
Defense Counsel filed a petition for Writ of Habeas Corpus purs-
uant to Alabama Code § 15-21-1 with the trial court during the
pendency of the PLaintiff's trial.  The Plaintiff argued:  1) Ala.

14

Code § 13A-8192, et seq. is unconstitutional in that it seeks to
extend Alabama's jurisdiction beyond the territorial boundaries
of Alabama; 2) Ala. Code § 13A-8-192 and 196 violate section VI
and VII of the Alabama Constitution of 1901 by not allowing a
criminal prosecution in the county where the crime was committed;
3) Ala. Code § 13A-8-192 et. seq., are in violation of Sixth,
Ninth and Tenth Amendments of U.S. Constitution in that they deny
the accused the right to a "speedy public trial by an impartial
jury of the State and District wherein crime shall have been
committed." ......... (Ex. 39)    The issues were based on upon
the above described facts in addition that the Plaintiff has
never been to Alabama, has no contact with Alabama.   In fact,
Plaintiff was arrested in California in March 2003, and that a
crime, if committed, was entirely committed in California.
Obviously, since the Appellant has never been to Alabama, has
never had any contact with Alabama, he cannot be termed as fugi-
tive from Alabama.  (Ex. 4, 12, 15, 16, 17, 18, 27)   Following
a trial court hearing of Plaintiff's Writ of Habeas Corpus pet-
ition, the petition was denied on June 23, 2004.  The State of
Alabama declared Plaintiff an indigent and ground him status of
financial hardship" in June 2004.  (E. 19)    Plaintiff's Writ of
Habeas of Corpus Corpus notice of appeal was filed on July 20,
2004 and Plaintiff's brief was filed on August 25th, 2004.  (Ex.
39)    On the appeal to the Alabama Court of Criminal Appeals, the
Plaintiff argued the stated above issues, as well as the argument
that the incorrect usage of "Fugitive" voids the extradition
which brought the Plaintiff to Alabama.   Ex. 1, 4, 27, 28   See

15

also <u>Hyatt v. Pope,</u> 188 U.S. 691 (1903).    The  Plaintiff's
appeal was denied on November 24, 2004.  (Ex. 1)   The Alabama
Court of Criminal supported its decision denying Plaintiff's
writ by citing an out of State legal citation; <u>State of Krecji,</u>
458 N.W. 2d 407, 411 (Minn. 1990), which was unavailable at  the
KCF institution law library at the time the event took place.
(Ex. 44 - 48, 53 -58, 67, 68, 83, 87, 2)

    The Plaintiff's thereafter filed a rehearing, it was
overruled on January 21, 2005.  (Ex. 13)   The Plaintiff's filed
a petition of writ of certiorari with Supreme Court of Alabama.
The writ was denied on April 22, 2005, (Ex. 14).    Thus the Mail-
box that was allegedly used in committing the instant crimes was
located in California State.  The identification documents disc-
overed in Plaintiff's criminal case were in California State.
The use of the identification documents at issue was done at a
Mervyn's Department Store in California State.  The crime at
issue was committed in California State.  (Ex. 4)   Yet, the State
of Alabama extended it reach to regulate such conduct via enforce-
ment of Ala. Code § 13A-8-196 and 13A-8-192.    The Alabama State
accuser reside in Alabama and the actual correct financial loss
victim is the Mervyn's Sore in California State.  Thereby the
Alabama State accuser satisfying the 21st Century jurisdictional
requirements of Ala. Code § 13A-8-196 which is inconsistent with
the federal law.  (Ex. 11, 12, 15, 16, 17, 18)   Alabama has
improperly exercised jurisdiction in a matter that had no effect
on the State of Alabama, as no "loss" was proved in this matter.
(Ex. 4, 11)   As such, Alabama has exercised jurisdiction over

16

a criminal case that did not have any impact or effect on the
State of Alabama (Ex. 15, 16, 17), thereby infringing upon the
prerogatives of both the federal government, the State of Calif-
ornia, other States in the Union and International Treaties. (Ex.
12, 15-18)  Further, as no part of the instant crime occurred
within Alabama, no overt act with Alabama, personal jurisdiction
and venue were also improper.  (Ex. 15-18)

    Plaintiff was subjected and improperly tried before an Ala-
bama State Tribunal with the Alabama accuser's hometown jury of
peers , selected from the Alabama accuser's resident community
where no crime nor overt act committed irrespective both the
Sixth Amendment, Federal Rule of Criminal Procedure Rule 18
requires that Plaintiff be tried in the State  and District where
the crime was "committed."  U.S. Const. Amend. VI, Fed. R. Crim.
P. 18; See also U.S. Const. Art. III, Sec. 2, Cl. 3.  The Plaint-
iff's trial began on May 22, 2005, and sentencing on August 2,
2005, the Plaintiff thereafter filed a motion for new trial.  The
Plaintiff argues that:  1) the verdict was contrary to law in
that Ala. Code § 13A-8-192 and 13A-8-196 unconstitutionally ext-
ended venue and jurisdiction beyond the boundaries of Alabama,
thus depriving the Plaintiff of a trial by his peers; 2) the
Plaintiff was denied right to have witnesses appear in his behalf
when he was forced to pay for the prosecutions's witness to app-
ear;  3) the Plaintiff (Defendant at trial) was denied a fair
trial when he was convicted using improperly admitted evidence;
4) the Plaintiff received an unduly harsh and unreasonable sent-
ence; and  5) the evidence utilized in convicting the Plaintiff

17

was insufficient.    On August 15, 2005 Alabama Public Defender
was appointed  for Plaintiff (Ex. 20) and a notice of post-convi-
ction direct appeal was filed in August 2005. (Ex. 21)  The app-
ointed Alabama State Public Defender was to presented Plaintiff
only in his States' post-conviction direct appeal in the State of
Alabama and not in the Federal Courts. (Ex. 19)

     Plaintiff was convicted of two counts of Identity Theft
pursuant to Ala. Code § 13A-8-192 and 196 and was sentenced to
ten (10) years' imprisonment for each conviction, to run consecu-
tively (Ex. 32), despite no financial loss was proved in this
case. (EX. 4, 11).  Plaintiff entered KCF under ALDOC system in
September 2005 to commence seving his prison term.  At KCF, Plain-
tiff learned that the Alabama Court of the Criminal Appeals will
not rule on his direct appeal within two years despite the Order
of the Alabama Supreme Court Adopting Appellate Court Time Stand-
ard (Ex. 24-25, 32-36)   Plaintiff decided to file his exhausted
States' denied writ (Ex. 1, 13-14) to the Federal Court under 28
U.S.C. § 2254 and or 2241 on the grounds that:  ·· 1) the State
of the Alabama has lached and lynched him without rope then sub-
subjected Plaintiff to slavery in absence of due process and jur-
isdiction in the 21st Century.  U.S.C Art. III § 2 Cl. 3; Amend-
ment V, VI, VII, X, XI, XIII, XIV and  2) was supported by United
States Immigration and Custom Enforcement which happens to placed
a detainer hold against Plaintiff in Alabama since November 2003
in support of law of State of Alabama § 13A-8-196 that is contra-
ry to the Federal Laws, Constitution of the United States.  U.S.
C. Art. 1 § 8, Art. 1v, Art. VI,  Fed. R. Crim. P. 18, 18 U.S.C.

18

§ 3182, § 3191, § 3237.

On November 21, 2005 the Supreme Court of Georgia rendered a split decision of a Georgia State Code § 16-9-125 which is similar to Alabama State Code § 13A-8-196.   The Georgia State Supreme Court dissenting Honorable Justices including the Chief Justice held that the legal citation which the Alabama State Court of Criminal Appeals Honorable Judges based its analysis in Plaintiff's denied States' writ; Ex. Parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. 2004) is .....distinguishable from the concept of identity fraud, and , as such, it supports neither the majority nor Egbuonu." (Ex. 1, 3).  See also Ex. Parte Egbuonu, 911 So. 2d 755 (Ala. Apr. 2005)(held that in denying the petition for the writ of certiorari, this court does not wish to be understood as approving all languages, reasons, or statements of law in the court of criminal appeals' opinion.) (Ex. 14)  No overt act was committed by Plaintiff with the Alabama State and Plaintiff was not a fugitive from Alabama.  (Ex. 15-18, 27)

Plaintiff's State appointed Public Defender filed Plaintiff's post-conviction direct appeal in January 2006 and response brief in March 2006.  Plaintiff by himself at KCF proceed to research, review, prepare a legal document to use file his States' exhausted State denied writ to Federal Court as a Pro-se.  Plaintiff  requested for the law library and Defendants to assist him by providing him the legal citations he needed to review to commence his research and preparation of non frivolous legal document to serve file his pleading.  Plaintiff was told that the legal citations he requested were unavailable in the KCF law lib-

rary. (Ex. 2-3, 53-8, 67-68, 83, 87, 93, 100-107)

Defendants denial Plaintiff right of access to legal materials
(legal citations, statutes, resources), right of access to adequate
law library, rights of access to the courts.

Plaintiff asked his family members and Friends to download;
the legal materials including the out States' legal citations
cited by Alabama State Judicial against the Plaintiff, from the
internet and mail the downloaded generated internet material text
prints to Plaintiff.    The Defendant received the Plaintiff's
numerous incoming mails containing the internet generated down-
loaded material text prints including the legal citations and
statutes not available KCF law library and rejected and returned
them back to the sender despite the Plaintiff needed the legal
materials to review and commence his Federal Court pleading for
his liberty interest.  (Ex. 44, 45, 46, 47, 81, 61, 101-105)

In February 2006, the State of Alabama Attorney General
Office cited the <u>State v. Mayze,</u> 622 S.E. 2d 836, 839-40 (GA.
2005) ; (Ex.3), and <u>Middlebrooks v. State,</u> No. A06A0030 2006 WL
305553 at * 5 (GA. App. Feb. 9, 2006) in their response brief to
Plaintiff's post conviction brief.  Again, both stated above two
legal citations were unavailable in the KCF law library and
Plaintiff's was denied access to review the legal citations
despite Plaintiff's numerous request for the out of State legal
citations.  (Ex. 2, 44-48, 53-58, 67-68, 83, 87)

In addition, Defendants denied Plaintiff....access to receive the
the internet generated downloaded material text prints of the
stated above cited legal citations by the Attorney General Office,

20

which were not at the KCF law library for Plaintiff to needed to
review and commence his Pro-Se pleading to the Federal Court.
(Ex. 2-3, 44-48, 61, 81, 100-107)  Furthermore, Plaintiff also
made requests of other legal materials (legal citations, statutes,
resources) to assist him prepare commence his writs, civil rights
and constitutional violations litigation however, the KCF law
library did not have the legal materials Plaintiff requested.
(Ex. 2-3, 44-48, 53-58, 67-68, 83, 87, 93, 100-107)

     Plaintiff filed numerous inmate request slip complaints and
request for:  1) access to the legal citations cited and used by
the Alabama State Judicial against him (Ex. 1, 3, 23, 44, 53-58, 67);
2) access to the legal citations as with respect to his various
pleading affecting his liberty personal interest including First
and Fourteenth Amendment rights (Ex. 2, 68, 83, 87   ); 3) access
to the legal citations as with respect to his States' denied writ
(Ex. 2, 68, 83, 87    );  4) access to other legal materials nec-
essary and Plaintiff needed to commence his pleading before the
Federal Court (Ex. 2, 68, 83, 87            );  5) access to use
the law library two desk top computers containing the current leg-
al citations to conduct his research for preparation of his Feder-
al Court pleading (Ex. 52  );  6) access to receive incoming mails
containing internet generated downloaded material text prints from
internet (Ex. 44-47, 61, 81, 100-107    );  7) access to adequate
library and access to the law library (Ex. 2,41-42,62,68,71-73,83,87)
Defendants recklessly disregarded and acted with deliberate indiff-
erences and failed to provide Plaintiff with the stated above acc-
ess to the legal materials Plaintiff requested and needed nor allow

21

Plaintiff to receive his incoming mails containing the legal mat-
erials  that were printed from the internet that Plaintiff needed
to review, research, prepare, serve and file his various pleading
and litigation to commence Federal Court proceeding affecting his
personal liberty in the State of Alabama Court.    Defendant failed
to provide Plaintiff an alternative avenue to enable him obtain
the stated above legal materials without forced Plaintiff to hire
a lawyer to send legal material to him which Plaintiff could not
afford to hire one due to his financial hardship in the State of
Louisiana.  (Ex.  41-42, 46 )    Defendants' actions and inactions
violated Plaintiff's constitutional rights under the First, Eighth
and Fourteenth Amendments of the Constitution of the United States,
and as result of the violations Plaintiff suffered and continue to
suffer on grounds that Plaintiff was unable to commence his writ
to the Federal Court when he was imprisoned in the State of Ala-
bama under the Alabama Department of Corrections ("ALDOC"). (Ex.
2-3, 44-48, 53-58, 67-68, 83, 87, 100-107)

On February 5, 2007, Plaintiff was paroled to interstate com-
pact to California by the Alabama State Board of Pardon and Parole
however, pursuant to United States Immigration and Custom Enforce-
ment ("USICE") at Alabama Office request, Plaintiff was released
to the USICE, later Plaintiff was process in process and transfer-
red to Louisiana to face removal using the Alabama State Code §
13A-8-196 and 192 to deny him his claim for relief.    Presently,
Plaintiff is still confined in the Federal Detention Center, Oakd-
ale, Louisiana waiting for the Fifth and Ninth Circuits to review
his petition for review.  (Ex. 29, 31)

22

On May 25, 2007 one of Plaintiff's two convictions was vacat-
ed and remand by Alabama State Court of Criminal Appeals as having
been obtained in violation of double jeopardy principles to the
trial court. (Ex. 32)    Plaintiff completed his parole in November
2007 for the both convictions.    On January 4, 2008, the Alabama
State Court of Criminal Appeals re-remand stating that the "trial
court's actions did not comply with Court's instructions." (Ex.
33)    On January 29, 2008, the Alabama State Court of Criminal
Appeals sent a letter to the trial court stating " the above refe-
renced appeal was remanded on January 4, 2008 with directions that
the return to remand be filed within 21 days by January 25, 2008"
(Ex. 34)    On January 31, 2008, the trial court issued his order
of remand.  (Ex. 35)    The Alabama State Court of Appeal for over
two years made not final decision of the Plaintiff's direct appeal
despite that the Plaintiff was imprisoned inconsistent with the
Federal Laws and Constitution of the United States and Universal
Declaration of Human Rights mandates (Ex. 25); the Order of the
Supreme Court Appellate Court Time Standards (Ex. 24); Plaintiff
has completed serving his sentences and paroled imposed (Ex. 25,
26, 29)    On February 22, 2008, the Alabama State Court of Crim-
inal Appeals affirmed the remaining one conviction against Plaint-
iff against Plaintiff and Alabama State Code § 13A-8-196 is not
unconstitutional. (Ex. 36 )    On February 22, 2008 the Alabama
State appointed Public Defender withdraw as counsel of record for
Plaintiff (Ex. 37)    Plaintiff's Family and Friends retained
another Defense Attorney to file Plaintiff's application for re-
heraing before the Court of Criminal Appeals, if necessary, then

23

a writ to Alabama State Supreme Court (Ex. 98 )

Plaintiff brought this civil complaint against the stated above Defendants on November 8, 2007 in part alleged and stated that these Defendants not only violated his Constitutional Rights but these Defendants worked alone and together and with others and agreed to violate Plaintiff's Constitutional Rights in support of a State law contrary to the Constitution and Plaintiff suffered and to suffer under these Defendants' actions and inactions. (Ex. 25)

Prior to Plaintiff being brought to the State of Alabama, Plaintiff was an engineer in the State of California for over ten (10) years with City of Los Angeles - Department of Public Works-- Bureau of Engineering. (Ex. 40)  Plaintiff was a victim of Identity Theft since 1991; (Ex.30) and not a fugitive from Alabama as Alabama has falsely labelled him (Ex. 4, 40).

On 10-09-05, Plaintiff sent an Inmate Request Slip to institution inmate general kitchen officials requesting shift time change from 2nd shift to 1st shift so that Plaintiff could have access to the law library on the basis that most of the time the "Gate 3" Prison Officers; Ex.62, close the law library from 8:00 AM to 10:00 AM for one reason or the other.  Plaintiff received no response from the kitchen official . (Ex. 41-42, 71-73)

On 10-11-2005, Plaintiff sent an Inmate Request Slip to Defendant Captain Barron (Captain Bobby Barrett) requesting shift time change from 2nd shift to 1st shift so that Plaintiff could have access to the law library on the basis that the kitchen officials assigned 2nd shift task from 8:30 AM to 5:30 PM has dep-

24

rived Plaintiff access to the law library.  Plaintiff received no
response from Defendant Barrett. (Ex. 42) and Defendants' Exhibit

On 10-13-05, Plaintiff sent other Inmate Request Slip to the
kitchen officials complaining and requesting the shift time chan-
ge from 2nd shift to 1st shift.  Plaintiff received no response
from the kitchen officials.  (Ex. 43)

On 10-18-05, the KCF institutional mailroom mail clerk notif-
ied Plaintiff that Plaintiff's incoming mails containing internet
generated downloaded material text prints are unauthorized, not
allowed and were return to sender.  No policy violation was cited
by the mailroom clek; (Ex. 106 (V)(G)), Plaintiff protested and
appealed the return of his incoming mail containing internet mat-
text prints, and states: "If inmates allow to receive photocopies
of materials, read newspapers, watch television, call telephone,
then exclusion of internet materials may be contrary, please
reconsider."   Plaintiff's protest was denied by Defendant Bar-
rett. (Ex. 44)    See also Ex. 45, 46, 47, 81, 101-105, 61)

On 10-28-2005, the KCF institutional mailroom clerk notified
Plaintiff that another Plaintiff's  incoming mail containing int-
ernet generated downloaded material text prints are unauthorized,
not allowed, were returned to the sender.  No policy violation
was cited by the mailroom clek; (Ex. 106 (V)(G)), Plaintiff again
protested and appealed the return of his incoming mail containing
internet generated downloaded material text prints and states:
"Material you returned constitute inmate essential legal material
for preparation of his appeal brief to state, federal court in

25

violation of his constitution rights, your law library is not per-
mitted to provide this to inmate for his personal use at dorm. In
addition, note that your law library are not equip to receive the
lastest U.S. Supreme Court rule case law and only way an inmate
to receive it immediately is through Lexis internet search serv-
ice, thereof please consider." Plaintiff's appeal protest was
denied by the Defendant Captain Barrett and in addition to the
denial, Defendant stated: "You can get it off the computer in the
law library. (Ex. 45) See Ex. 44, 46, 47, 81, 61, 100-107, 2.
and Defendants Exhibits 3, 4, 11, 12.

On 11-01-05, the KCF institutional mailroom clerk again not-
ified Plaintiff that another Plaintiff's incoming mail containing
internet generated downloaded material text prints are unathoriz-
ed, not allowed, was returned to the sender. No policy violation
was cited by the mailroom clerk; (Ex. 106 (V)(G)), Plaintiff again
protested and appealed the return of his incoming mails containing
internet generated downloaded material text prints and states:
"Sir, I cannot get the federal supplement, US Supreme Court 2005
recent ruled case laws from your law library, denying me receiving
internet legal material as relate to my case will render appealing
my case with outdated laws therefor, please reconsider all my
legal internet print out. Thanks." Plaintiff's protest and app-
eal was denied by Defendant Captain Barrett, and in addition to
the denial, Defendant Captain Barrett stated: "Send thru your
lawyer." (Ex. 46) See Ex. 44, 45, 47, 81, 61, 100-107, 2.
and Defendants Exhibits 3, 4, 11, 12,                    Here, the
Defendant Captain Barrett obstructed and denied indigent Plaintiff

26

the right of plaintiff to access to the courts which is a corollary of Plaintiff's right to petition for a writ of habeas corpus. Moreso, Defendant Captain Barrett forced indigent Plaintiff to retain a lawyer to purse his exhausted denied States' writ to the Federal Court when he ordered him to have a lawyer mail him internet materials of legal materials. Plaintiff has no funds to retain a lawyer to assist him to pursue his writ and other civil rights to the federal court and Defendant Barrett failed to provide him with alternative way. Ex. Parte Hull, 312 US 546, 85 L Ed 1034, 61 S Ct 640, reh den 312 US 546, 85 L Ed 85 L Ed 1146, 61 S Ct 823; Johnson v. Avery, 393 US 483, 21 L Ed 2d 718, 89 S Ct 747 (1969)

On 12-06-05, the KCF institutional mailroom clerk again notified Plaintiff that another Plaintiff's incoming mails containing internet generated downloaded material text prints are unauthorized, not allowed, was returned to sender. No policy violation was cited by the mailroom mail clerk. (Ex 106 (V)(G)) Plaintiff again protested and appealed the return of his incoming mail containing interest generated downloaded material text prints and states: "Victim of Identity theft, convicted of Identity theft in State I has no contact, the article you about to return would have assist me to prepare my appeal, please I need the article, if already returned, furnish me the address you returned the article and date." Plaintiff's protest and appeal was reviewed by the same malice clerk which is inconsistent with the ALDOC Administrative Regulation and Policy (Ex. 106 (IV), (V)(G)) Plaintiff's

protest and appeal was denied by the mailroom clerk, who stated: "Go to the law library to get your info." (Ex. 47) See Ex. 44, 45, 46, 81, 105; See also Ex. 2 and Defendant Exhibits 3, 4, 11, 12, 101-104. Moreso, the KCF institution law library did not have the material text prints rejected by the mailroom . Plaintiff's due process and First and Fourteenth Amendments rights were violated by the Defendants Deputy Warden Rowell and Captain Barrett. King v. Federal Bureau of Prisons, 415 F.3d 634 (7th Cir. 2005) (held refusal to allow King obtain a book on computer programming presents a substantial First Amendment issue despite King in prison for computer hacking or other computer related crimes.)

On 12-24-05 Plaintiff sent an Inmate Request Slip to the Defendant Captain Barrett to provide and deliver Plaintiff's incoming mail containing his State of Alabama transcript and evidences exhibit. No response was received from the Defendant Captain Barrett. However, one of the institution Lieutenant's contacted Plaintiff and resolved the matter after holding Plaintiff's incoming mail for ninety-six (96) hours. (Ex. 48) See also Ex. 1 106 (V)(F)(3)

On 12-24-05, Plaintiff also sent an Inmate Request Slip to the Mailroom Clerk to provide and deliver Plaintiff's incoming mail containing his State of Alabama Court trial transcript and evidences exhibits. No response was received from the Mailroom Clerk. However, one of the institutional Lieutenant's later contacted Plaintiff and resolved the matter after holding Plaintiff's incoming mail for over ninety-six (96) hours. (Ex. 49) See also Ex. 106 (V)(F)(3).

28

On 01-22-06, Plaintiff sent an Inmate Request Slip to the
Defendant Captain Barrett to assist and provide Plaintiff with
legal material including legal citations that were unavailable at
the law library but were necessary and appropriate to be avail-
able and Plaintiff needed to review, prepare, serve and file his
pleadings in order to commence or prosecute Court proceedings and
others affecting his personal liberty. No response was received
from the Defendant Captain Barrett. Defendant Barrett failed to
assist instant Plaintiff in the preparation and filing of his
meaning exhausted States' denied writ (Ex. 1, 14) to the Federal
Court by failure to provide Plaintiff with adequate law legal
materials he needed nor provide him with alternative way with
adequate law legal material as with respect to Plaintiff case and
ligitation. (Ex. 50)    See also Ex. 52

On 11-25-06, Plaintiff send an Inmate Request Slip to the
Defendant Deputy Warden Rowell to assist and provide him with
legal materials including legal citations that were unavailable at
the law library but were necessary and appropriate to be available
and Plaintiff needed these legal materials to review, prepare,
serve and file his pleadings in order to commence or prosecute
Court proceeding and others affecting his personal liberty. No
response was received from Defendant Deputy Warden Rowell. Def-
endant Deputy Warden Rowell failed to assist Plaintiff in the pre-
paration and filing of his meaningful exhausted States' denied
writ (Ex. 1, 14) to the Federal Court by failure to provide Plain-
tiff with adequate law legal materials he needed nor provide
Plaintiff with alternative way with adequate law legal materials

29

as with respect to Plaintiff' case and litigations.  (Ex. 51)  See
also Ex. 54

On 02-08-06, Plaintiff sent an inmate Inmate Request Slip to
the Defendant Captain Barrett to assist and provide him with the
legal citations including out of States' legal citations cited and
used by the Alabama Court of Criminal Appeals in denying him his
State writ of habeas corpus; (Ex. 1), he needed to review, resear-
ch and commence his pleading to Federal Court level.  On Defendant
Captain Barrett response, Defendant Captain Barrett stated that:
"I have been advised the computer (Lexis-Nexis) has not been up-
dated w/these particular cases.  You will not have access to
computers.  This is the clerk job."  (Ex. 52)  See also Ex. 44-47,
81.

Plaintiff further requested numerous assistance from the
institutional law library to furnish him with Identity Theft res-
ources and legal citation associated with that Plaintiff needed to
review, prepare and file his exhausted States' denied writ to the
Federal Court in time and other legal citations he needed to review,
prepare  and file civil rights violations as with respect the im-
posed internet incoming mail materials prohibit.    Plaintiff's
requested legal citation and resources were unavailable at the
institution law library and were never provide to Plaintiff.

On 02-13-06, the KCF law librarian replied to Plaintiff req-
uests, informed Plaintiff to contact ALDOC legal Divison.  The Law
Librarian stated that the KCF have no access to the Federal District
or Circuit Cases outside 5th and 11th Circuits of current Federal
Circuits Reporter Volumes, that the Reporter Volumes currently in

in the back law library room which ended with legal citations iss-
ued approximately in March of 2005.  The Law Librarian also inform-
ed Plaintiff that 5th and 11th Circuits' current legal citations
are only on the front two desk top computer and only law librarian
clerks are allowed to conduct search using the two desk computer.
(Ex. 2, 52)   See also Defendants Exhibit 12.  Defendants' policy
and regulation have forced Plaintiff to depend on inmates' law
librarian for his freedom, Plaintiff has no way of knowing whether
the law librarian has knowledge of search  and actually has time
to conduct his search as he requested.  Plaintiff has no way of
knowing whether the inmates' law librarian actually did not supp
ress he request for search then told him the law library did not
have it in their computer databases.  See Cochran v. Kansas, 316
US 255, 86 L Ed 1453, 62 S CT 10688 (1942);  Ex. Parte Hull, 312
US 546, 85 L Ed 1034, 61 S Ct 640, reh den 312 US 716, 85 L Ed 1146,
61 S Ct 823 (1941).  The law librarian further stated Plaintiff's
requested legal citations are not a State legal citation from the
State of Alabama instead is from Northwestern Reporter which the
institution law library.  The institution law librarian then
locate Access to Legal Material Form N944L i, provided Plaintiff
the form to complete and send to the ALDOC Legal Division, "how-
ever the form required the signature of law library supervisor/
designee. (Ex. 2)  See Defendant Exhibits 12.  The inmate law
librarians were not proper and adequately train on how to provide
inmate like Plaintiff with access to legal materials and law
library form procedures and process to enable inmates obtain their
legal materials including legal citations. See Defendant Exhibit 12.

Plaintiff completed the form, signed and insisted that the law
librarian obtain signature of law library supervisor/designee
prior sending form the ALDOC Legal Division so that the ALDOC
legal division will provide Plaintiff with the legal materials
that he requested and needed to review, research, prepare and file
his writ and civil right litigations to the Federal Courts.   Plain-
tiff did not received the legal materials from the Defendants.
(Ex. 2)·  See also Defendants Exhibits 11, 12

On about 02-26-06 or 02-27-06, Plaintiff received the State
of Alabama Attorney General's response reply brief of his post-·
conviction direct appeal (Ex. 23) which cited another out of State
legal citations. (Ex. 3, 23)    Moreso, the State of Alabama did
not appointed an Attorney to represent him and appeal his exhaust-
ed States' denied writ to the Federal Court level despite Plain-
tiff is an indigent and imprisoned unconstitutional in the State
of Alabama.   Defendants perpetually denied Plaintiff access to
review legal materials he needed to enable him commence his plead-
ing before the Federal Court.

On 02-28-06, Plaintiff requested assistance for the KCF law
library to provide him with the out of State legal citation; (Ex.
3), cited by the Alabama State Attorney General on their Appellee
Brief for Plaintiff to review, research, prepare and file his ex-
hausted State of Alabama denied writ to the Federal Court in time.
The KCF law library did not have the legal citations cited by their
Alabama Attorney General that Plaintiff requested.   The law lib-
rarian informed Plaintiff that his requested legal citations were
not available in the law library computer database.   Plaintiff

32

was advised by the KCF law librarian to have family or someone
downloaded the legal materials he needed from the internet and
print the downloaded the legal material text in the free world
and mail it to Plaintiff through United States Postal Service mail.
Upon Plaintiff request for Access to Legal Material Form N944L i,
the law librarian told Plaintiff the form is unavailable and adv-
ised Plaintiff to go to afternoon open-house hour and speak to
Defendant Captain Barrett.  Plaintiff was further advised by the
law librarian to take it up his matter and talk to Defendants Dep-
uty Warden Rowell and Captain Barrett for further assistance
regarding his request for legal material materials including law
citations not available  in the institution law library.  In the
absence of the Access to Legal material Form, Plaintiff wrote down
the legal citations he needed that were unavailable at the instit-
ution law library on the Inmate Request Slip and mail to Defendant
Barrett; (Ex. 53)  Defendant Deputy Warden Rowell; (Ex. 54) for
assist to provide him with the legal citations he needed to comm-
ence his Federal Court pleading.

Plaintiff went to the afternoon open-hour and spoke to Def-
endant Captain Barrett.   Defendant Captain Barrett advised Plain-
tiff to write down the name of the new legal citations he needed
that were unavailable at the KCF law library and submit to him.
Plaintiff told Defendant Captain that the law library did not have
the Access to Legal Material Form N944L i, Defendant Captain Barr-
ett again told Plaintiff to use inmate request slip and write down
the name of the new legal citations that were unavailable in the
institution law library that he needed.  Plaintiff told the Def-

33

ehdant Captain Barrett that Plaintiff already wrote the new legal citations on the Inmate Request Slip and mail to him two (2) hours again. Defendant Captain Barrett asked Plaintiff to resubmit his Inmate Request Slip containing the unavailable legal citations at the law library and resubmit to him today. By the time the Plaintiff came back to resubmit another Inmate Request Slip containing the unavailable legal citations at the institution law library, Defendant Captain Barrett has gone from the open-house hour office.

On 02-28-06, Plaintiff was informed by Captain Bolling (Captain Bohr) about the inadequate of the KCF law library not having access to the legal citations that inmates needed to litigate their case to Federal Courts. Captain Bolling told Plaintiff that other ALDOC's correctional facilities he knew of have access to internet but declined to state which facilities and the reasons the KCF law library lacks such access to the legal citations Plaintiff requested. Based on these information Plaintiff receieved from the Defendant Captain Bolling, Plaintiff uncover that inamtes at Staton Correctional Facilities ("SCF") are allow to receive incoming mails containing internet generated downloaded material text prints from the free world. As a result Plaintiff request aggin for a transfer to SCF. (Ex. 28)

On 03-01-06 Plaintiff re-submit his Inmate Request Slip pursuant to the Defendant Captain Barrett's direct order instruction to Plaintiff on 02-28-06 at the open-house hour. (Ex. 55)

On 03-06-06, the ALDOC Legal Division Defendant Thomas respond back to Plaintiff's Law Library access to legal materials

34

requested dated 02-13-06 signed by Defendant Captain Barrett on
02-14-06.    Defendant Thomas only provided Plaintiff with: 1) one
page conclusion of Beard v. Bank, No. 04-1739 (US Supreme Court leg-
al citation) and Clark v. United States, No.05-5491 (US Supreme
Court legal citation) respectively;    2) no other information was
provided to Plaintiff as with respect to these stated above legal
citation to enable Plaintiff decide w h e n  to commence his
challenge to prison conditions and other in the Federal Courts;
3) no other legal citations Plaintiff requested were made available
to Plaintiff.    Defendant Thomas took over two weeks to respond
and deny Plaintiff request for access to legal materials; legal
citations, Plaintiff needed to commence his Federal Court pleading.
See Defendants Exhibit 11,  See also Ex. 2, 50, 51, 52, 57, 67.

    Plaintiff now asked his family members and friends to down-
load and print the download material text of the legal materials
including legal citations that were not available in the KCF law
library and mail to him through United States Postal Service.

    On 03-07-06, Plaintiff sent an Inmate Request Slip to Defen-
dant Deputy Warden Rowell requesting for assistance to provide
Plaintiff with the out of State legal citation cited by Alabama
Attorney General against Plaintiff (Ex. 56)

    On 03-08-08, Plaintiff sent letter to Defendant Thomas req-
uesting for assistance to provide Plaintiff with legal materials
including legal citations cited in Plaintiff's States' denied writ
and Alabama Attorney General brief and others which were not avai-
able at the institution law library.  (Ex. 57)

    On about 03-09-08, Defendant Captain Barrett respond back

35

to Plaintiff's Inmate Request Slip dated 02-28-06 sent to the Defendant Deputy Warden and states: "The above has been forwarded to our legal decision.  You should have a response soon." (Ex. 54)

On about 03-12-2006, the KCF's Warden Office respond back to Plaintiff's inmate request slip dated 03-07-06 and states: "I faxed a copy of your last req. to ADOC legal Div. last week. I have not heard anything back from them yet."  (Ex. 56)

On 03-16-06, Defendant Thomas of ALDOC legal Division respond back to Plaintiff's letter dated 03-08-06.  Defendant did not provide Plaintiff the out os State caselaw cited on Plaintiff's writ, Attorney General Brief, other legal citations and states' identity theft statute containing similar provision venue that Plaintiff requested so that Plaintiff would review, prepare and file his exhausted States' writ to the Federal Court as Pro-Se.  Plaintiff was only provided with Ex. Parte Egbuonu, 911 SO. 2d 755 (Ala. Apr. 2005) legal citations which the law librarian later determine that the legal citation of EX. Parte Egbuonu was in the institution law library computer database.  The KCF law librarian clerks were not properly train on how to conduct search using the computer database and Plaintiff was denied to use the computer to conduct research to commence his pleading; (Ex. 52)  Other legal material including legal citations and resources Plaintiff requested on his 03-08-06 were not provided to Plaintiff by the institution law library nor Defendants Thomas of ALDOC legal division.

On 04-06-06 Plaintiff sent a follow up Inmate Request Slip to the KCF Warden Office and raised the issue of: "Was it error for not providing inmate an adequate legal materials pertaining to

to his case nor allow the inmates to receive sent internet West
Law, Lexis Nexis legal materials print out to enable him response
purse all available State and Federal Post-Conviction remedies of
State of Alabama First Impression Case of Alabama code 13A-8-192."
Defendant Captain Barrett responded back and States: "Your legal
needs have been met to the best of our ability. Doc legal is aware
of your requests. We can only approve what we have." (Ex. 58)

On 03-21-06, at the ALDOC Progress Review, Plaintiff request
for a transfer to Staton Correction Facility for trade school was
recommended by KCF institution official but was denied by the
ALDOC Central Record Board on 04-03-06. (Ex. 28, 60-64, 69)

On 04-14-06, Plaintiff at the institutional mailroom clerk
again notified Plaintiff that another Plaintiff's incoming mail
containing internet generated downloaded material text prints are
authorized, not allowed, was returned to the sender. No ALDOC
policy violation was cited by the mailroom clerk as required by
ALDOC Administrative REgulation. (Ex. 106). Plaintiff again pro-
tested and appealed the return of his incoming mail containing
interest generated downloaded material text prints and states:
"Was it an error to discriminate against an internet publication
material or print out text from internet." Plaintiff's protest
and appeal was denied by Defendant Captain Barrett, in addition to
denial, Defendant Captain Barrett stated: "Internet material Pro-
hibited!" (Ex. 61) See also Ex¹ 2, 44-47, 81, 101-105 and Defen-
dants' Exhibits 3, 4, 11, 12.

On 04-15-06, Plaintiff sent an Inmate Request Slip to Defen-
dant Deputy Warden Rowell for law library access and to correct
his "Gate 3" officers new custom policy. (Ex. 62) Plaintiff rece-

ieved no response from Defendant Rowell.

On 04-21-06, Plaintiff sent an Inmate Request Slip to Defendant Rowell requesting official institution law library hours on the basis that the "Gate 3" officers have denied and deprived inmates access and egress of the law library.    Defendant Deputy Warden Rowell failed to correct the same and did nothing.  (Ex. 66)

On 05-02-06, Plaintiff sent United States Postal Service ("USPS") certified mail letter to Defendant Commissioner Allen requesting for his assistance in providing Plaintiff with adequate law library materials needed to research appeal Alabama State First Impression Case; Ex. Parte Egbuonu, 911 SO. 2d 755 (Ala. Apr. 2005) to United States District Court Pro-Se.  Plaintiff also informed Defendant Commissioner Aleen about not allow inmate to receive legal materials via USPS mail.  Plaintiff received no response from Defendant Commissioner Allen.  (Ex. 67) See also Ex. 83-84

On 05-19-06, Plaintiff send a letter to Defendant Thomas requesting for legal material and access to California State Superior Court so that Plaintiff could file applicable good faith complaints.  Plaintiff was tried imprisoned in Alabama State, a State no crime or over act was committed.  Plaintiff received no response.  (Ex. 68)

On 05-23-06, Plaintiff sent an Inmate Request Slip to the institution mailroom as with respect to opening some of his incoming legal mail in his absence, the Defendant Captain Barrett respond back to Plaintiff's Inmate Request Slip.  (Ex. 70)

On 05-23-06, Plaintiff sent another Inmate Request Slip to Defendant Deputy Warden Rowell requesting for review of his

38

"Gate 3" officers denial of inmates' ingress and egress of the law library between 9:30 AM and 11:30 AM. Plaintiff received no response back from Defendant Deputy Warden Rowell (Ex. 71)

On 05-24-06, Plaintiff sent another Inmate Request Slip to Defendant Deputy Warden Rowell requesting his review on the law library every Wednesday early morning hours prior to lunch hours. Plaintiff received no response from Defendant Deputy Warden Rowell. (Ex. 72)

On 05-26-06, Plaintiff sent another Inmate Request Slip requesting his review on the denial of inmates access ingress and egress to the law library on 05-26-06 between the hours of 10:30 AM to 2:00 PM. Plaintiff received no response from Defendant Deputy Warden Rowell (Ex. 73)

On 05-28-06, Plaintiff sent another Inmate Request Slip to Defendant Deputy Rowell requesting for Newspaper to Magazine substitution. Plaintiff response was denied by Defendant Captain Barrett without any reason. (Ex. 74)

On 06-11-06, Plaintiff sent another Inmate Request Slip to Defendant Deputy Warden Rowell requesting his review whether error was committed by his subordinates by opening several Plaintiff's Ratliff Law Firm incoming mails in absence of Plaintiff. Plaintiff received no response. (Ex. 75)

On 06-12-06, Plaintiff sent an Inmate Request Slip to institution mailroom requesting for deliver of Plaintiff's USPS Domestic Return Receipts. Plaintiff received no response from the KCF institution mailroom. (Ex. 76)

On 06-19-06, Plaintiff sent another Inmate Request Slip to

39

to Defendant Deputy Warden Rowell requesting his assitance to cor-
rect his officials' actions: withholding, delaying, obstructing
passage of inmates' incoming USPS Domestic Return Receipts mail.
Plaintiff received no response from Defendant Deputy Warden Rowell.
(Ex. 77)

On 06-19-06, Plaintiff sent another Inmate Request Slip to
the KCF mailroom requesting for deliver of Plaintiff's USPS
Domestic Return Receipts. Plaintiff received no response from
the KCF institution mailroom. (Ex. 78)

On 06-24-06, Plaintiff sent an Inmate Request Slip to the
Central Record Division requesting for credit with California Jail
Time served. (Ex. 79)

On 06-28-06, Plaintiff sent another Inmate Request Slip to
the KCF institution mailroom requesting for USPS Complaint Form
to use and file a complaint with the USPS Postal Inspector. Plain-
tiff did not receive a complaint form or response from the instit-
ution mailroom. (Ex. 80)

On 07-24-06, Plaintiff sent an Inmate Request Slip to the
KCF institution mailroom requesting an explanation of failure to
issue Plaintiff with Notification of Rejected Mail prior to return
of his mail. The KCF institution mailroom clerk responded back
and stated: "The conversation in the Defendant Captain's office
was your Notification of Rejected Mail it was oral not written and
it was sent back that day or the next day when reject mail went
out. (Ex. 81) See also Ex. 106 (V)(G).

On about 08-01-06, Plaintiff faxed and sent USPS certified
mail letter to Defendant Commissioner Allen requesting review
of denial and approve a vocational trade school education for

40

Plaintiff and transfer Plaintiff to Staton Correctional Facility.
Plaintiff did not receive a response from Defendant Commissioner
Allen however, Plaintiff was transferred to SCF. (Ex. 82)
Defendant Commissioner Allen has failed to response to Plaintiff's
letter so as the Subordinates. Defendant failed to train to his
subordinates.

On 08-01-06, Plaintiff faxed and sent USPS certified mail
letter to Defendant Commissioner Allen requesting for his review
and approve for inmates to receive incoming mails containing int-
ernet generated downloaded material text prints or provide adequate
law library. Plaintiff received no response from Defendant Com-
missioner Allen. (Ex. 83)    Defendant Commissioner Allen failed
to provide Plaintiff access to incoming internet mail containing
material text prints and adequate law library.

On 08-01-06, Plaintiff faxed and sent USPS certified mail
to Defendant Commissioner Allen requesting for his review and
approve for Plaintiff for Plaintiff to receive non-immediate family
visitor through contact or non-contact visit, so that Plaintiff's
mother that is over eighty (80) years old could visit with an
escort from out of State.    Plaintiff received no response from
Defendant Commissioner Allen.    Plaintiff's mother passed away in
October 2006 without seeing his son in Alabama State prison where
no crime nor over act committed. (Ex. 84)

On 08-07-06, Plaintiff sent USPS certified mail letter to
Defendant Deputy Warden Rowell requesting Plaintiff's California
Jail Time served credit.    Defendant Deputy Rowell refused to
accept his incoming certified mail.    The Defendant Deputy Warden
Rowell's certified mail was returned back to sender. (Ex.  85)
Defendant Deputy Warden Rowell failed to accept his mail.

On 08-12-06, Plaintiff sent another USPS certified mail letter to Defendant Deputy Warden Rowell requesting for his review of Environmental Tobacco Smoke ("ETS") level that the inmates are exposed to at the KCF institution. Defendant Deputy Warden Rowell refused to accept his incoming certified mail again. The Defendant Deputy Warden Rowell failed to accept his incoming mail and correct existing problem at the institution, the sent mail was returned back to the sender. (Ex. 86)

On 08-04-06, Plaintiff sent another Inmate Request Slip to the Defendant Thomas requesting for his assistance and to provide him with the legal material that were not available at the institution law library at SCF. Plaintiff received no response from Defendant Thomas. (Ex. 87)

On 08-21-06, Plaintiff faxed and sent a letter to the KCF mailroom requesting for the deliver of Plaintiff's USPS Domestic Return Receipts. Plaintiff's sent letter to the KCF institution mailroom was refused and returned back to sender. (Ex. 88)

On 08-22-06, Ms Hester of SCF delivered two out of three Plaintiff's USPS Domestic Return Receipts mail to Plaintiff. (Ex. 89)

On 08-28-06, Plaintiff sent a USPS certified mail letter to Central Record Division requesting for review of Plaintiff's California Jail Credit. (Ex. 90)

On 08-30-06, Plaintiff faxed and sent a USPS certified mail to Defendant Commissioner Allen requesting his review and assistance to obtain credit for Plaintiff's California Jail Time served. Plaintiff received no response from Defendant Commissioner Allen. (Ex. 91)

42

On 08-31-06, Plaintiff faxed and sent another letter to the KCF institution mailroom requesting for the deliver of Plaintiff's USPS Domestic Return Receipt mails. The KCF institution mailroom refused to accept the incoming mails. This incoming certified mail was returned back to sender. (Ex. 92)

On 09-09-06, Plaintiff sent another letter to Defendant Thomas requesting for his assistance and to provide him with the out of State legal citations cited by Attorney General in the Attorney General Brief (Ex. 3, 23) and other accompanying identification statute and legal citations in each State. Plaintiff received no response from the Defendant Thomas. (Ex. 97)

On 9-13-06, Constituent Service officer respond to Plaintiff's letter to Defendant Commissioner Allen and advised Plaintiff to contact Jefferson County Circuit Clerk's Office for assistance with respect to his jail credit. (Ex. 94)

On 10-2-06, Plaintiff sent a letter to Constituent Service Officer with additional information and request for further assist. (Ex. 95)

On 10-17-06, Plaintiff faxed and sent a letter to Defendant Deputy Warden Rowell requesting for his assistance and to provide Plaintiff with his inmate account balance from September 2005 to August 2006 to enable Plaintiff to file his motion to leave and proceed in forma pauperis (28 U.S.C. § 1915 (b)(1)) to the Federal Courts. Defendant Deputy Rowell refused to accept his incoming mails. The Defendant Deputy Warden Rowell rejected the Plaintiff's incoming mail and then returned back to the sender. Plain-received no further response from Defendant Deputy Rowell. (Ex. 96)

43

On 12-07-06, Plaintiff sent another USPS certified mail letter to the Defendant Commissioner Allen requesting assistance and to provide and credit Plaintiff's with California Jail Time served. Plaintiff received no response from Defendant Commissioner Allen. (Ex. 97)

Administrative Regulation 018, <u>Institutional Standard Operating Procedures</u> dated 03-29-05, establishes responsibilities, policies and procedures for developing <u>Standard Operating Procedures</u> (SOPs). It also provides that it is a policy of the ALDOC that each institutional/facility shall operate within the parameters specified and set forth by the laws of the State of Alabama in conjunction with the policies and directives of the ALDOC Commissioner. It is the responsibility of the Warden of each institution to: plan, direct, control and otherwise manage his/her respective institution in such a manner as to ensure the effective aacomplishment of its mission; implement and promulgate local orders, procedures, and policies through the publication of SOPs; All ALDOC employees, contract personnel and visitors are responsible for complying with each institution's SOPs. It also provides written policy shall establish a requirement that SOPs are current, complete, and available at each security post unless security would be compromised ....written policy shall establish a system to ensure that officers sign and date ALDOC Form 018-A, Staff Accountability Log, Prior to Assuming a post to indicate  they have read and understand the SOP for that assignment. This process be repeated every three months, ALDOC Form 018-A shall be maintained for three years. SOPs shall contain the following

44

instructions: ..... one copy of each SOP and all changes or
revisions shall be provided to Research and Planning. It also
provide that is extremely important that SOPs be maintained up-to
-date: 1. Changes to the document be made as they occur;
2. Periodic reviews should be scheduled to ensure that practices
and procedures are effective, and in agreement with laws, regul-
ations, and established standards. SOPs shall be updated annually.
The stated above ALDOC Administrative Regulation (ALDOC AR) 018
was authored  by Defendant Commissioner Campbell and was in eff-
ective at the time the events took place. (Ex. 100) See Defend-
ants Exhibit 10 - Standard Operating Procedure Number: VII-6; In-
mate Mail Privileges.

    Administrative Regulation 026,  _Availability of Legal Ass-_
_istance_ dated 03-21-05, establishes responsibilities, policies,
and procedures to provide for the availability of legal assistance
to the ALDOC and it employees. It also provides that Legal Cou-
nsel shall be available, when needed to advise and provide legal
assistance to ALDOC  Commissioner and its employees. The General
Counsel shall advise the Commissioner, and such other department
employees as time and resources permit, of significant legislative
and judicial development which may affect the ALDOC and its oper-
ation of correctional institutions. The General Counsel shall
a mandatory reviewer of all ALDOC regulations to ensure their
legality and shall advise the Office of Primary Responsibilty
(OPR); Warden/Director, Deputy Commissioner Staff Unit, Office,
or activity having functional responsibility for the program,
procedure, law, rule or regulation matter; the appropriate Deputy

45

Commissioner, and the Commissioner of any potential legal problems
that might result from promulgation of the regulation.    The Gen-
eral Counsel shall be available and advise the Commissioner, or
designee, when inmate grievances raise legal issues, which must
be resolved prior to a response being made to the inmate.    The st-
ated above ALDOC AR 026 was authored by Defendant Commissioner
Campbell and was in effective at the time this events took place.
(Ex. 101)    See Defendants' Exhibits 1-5, 10)    Plaintiff now states
that genuine issue of material fact existed as to whether the
Defendants Thomas advised to other Defendants as with respect to:
1) Law Library legal materials including legal citations, statues,
resources, computer access, opening hours, law librarian clerk;
and law librarian assistance;    2) Internet Material is Prohibited;
3) KCF and ALDOC regulations, policies, customs;    4) Training of
Official and law librarian;    5) adequate law library ; and
5) Plaintiff's Civil Complaints as stated therein , were the
moving force behind the Defendants' violating Plaintiff's Consti-
tutional rights. See also Ex. 52, 54, 56-58, 67)

Administrative Regulation 214, Law Library Supervisors dated
June 29, 2004 establishes responsibilities, policies, and proced-
ures for those officers assigned to supervise the institutional
law library.    It also provide legal resource libraries and allow
all inmates access to the materials available.    Wardens/designees
are responsible for the operation and maintenance of the library.
Each institution shall make legal materials available in a suit-
able location for access by inmates assigned to that institution.
Law Library access shall be open to all inmates housed in general

46

population of the institution.    The Law Library at all institut-
ions shall be open a minimum of 20 hours per week.    Law Library
services shall provided during work hours to provide  access to
the greatest number of inmates that does not interfere with work
assignments or other programs.  Material and equipment, as appro-
ved by the ALDOC Legal Division, will be provided through the
institutional contingency fund of the respective institution.
The Warden's designee will coordinate and supervise the law lib-
rary services in the institution as follows: ...... Daily logs
of the law library, and those denied direct access, is maintained.
........Coordinate requests for legal material with the Commiss-
ioner's designee........Instruct inmate Law library clerks that
they are not to pretend to be licensed attorneys or in any way
appear to be engaged in the unauthorized practice of law.    Inmate
Law clerks should also be instruct that they shall not charge for
legal services.    Annex - Institutional law library Form Numbers:
N942L - Material Received log;  N943L - Access to Law Library;
N944L - Access to Legal Material;  N946L - Photocopy Log Law
Library;  N949L - Law Library Sign-In Sheet;  N950L - Law Library
Inventory Sheet.  (Ex. 102)  See  Ex. 2-3, 5-10, 41-42, 44-48,
53-58, 62, 67-68, 71-73, 83-87, 101, 103-105.    The stated above
ALDOC AR 214 was authored by Defendant Commissioner Campbell and
was in effective at the time this events too place.

Administrative Regulation 219, Training dated 08-11-2004
establishes responsibilities, policies, and procedures for the
development and implementation of training programs that meet the
requirement of the Alabama Peace Officers Standards and Training
Commission (APOSTC) and provide professional development of all

47

ALDOC personnel. Training programs shall be developed and imp-
lemented that will assure all employees receive initial basic
training (orientation, on-the-job training, academy training) and
Advanced Training.  The Wardens, Directors and Division heads
are responsible for: 1. Developing their institutional/division
standard operating procedures (SOPs), as necessary, for the imp-
lementation of Administrative Regulation 219, Training.  2. Exer-
cising operational control over institutional On-The-Job-Training
(Job) and job orientation training for all assigned personnel.
Supervisors at all levels are responsible for:  1. Identifying
training needs and ensuring that their personnel attend required
training;  2.  Ensuring that subordinate employees follow train-
ing policy and institutional policy pertaining to training.
Annual Master Training Plain Development - The Director of Train-
ing will coordinate with Wardens, Directors and Division Heads
for input and through a needs assessment develop an annual Master
Training Plan; The training plan will be submitted for approval
to the Deputy Commissioner of Operations.   Annual Training Plan
Implementation - Training for Support Supervisors, Support Pers-
onnel, Contracted Employees, and Volunteers will be balanced
between mandatory search and/or ALDOC policy training and job-
related, professional development training.   Records Maintenance-
The supervisor will document any institution/division training
conducted and a copy of the documentation will be sent to the
appropriate Regional Advanced Training Center for inclusion in
the individual's training record, should an employee transfer to
another region, the Training Supervisor will forward the training

record to the receiving Regional Advanced Training Center; Emp-
loyees that complete State Personnel training courses or any
other recognized training courses should forward a copy of the
certificate of completion to the Regional Advanced Training Cent-
er. (Ex. 103) See also Ex. 41 - 98. Defendants' lacks train-
ing as with respect to Plaintiff's request: access to legal mat-
erials; access to adequate law library; access to the court; and
access to internet material text prints, were the moving force
behind the violation of Plaintiff's Constitutional rights by
Defendants.

   Administrative Regulation 231, Training for Supervisors
dated 12-30-04 establishes responsibilities, policies, and proc-
edures to ensure that all new supervisors receive New Supervisor
Training within the probationary period. It also provides it is
the policy of the ALDOC to ensure that all supervisors shall
receive training designed to develop and enhance supervision
skills. The Deputy Commissioners, Wardens, and Division Directors
are responsible for ensuring all newly appointed supervisors
attend New Supervisor Training. Newly appointed executive level
staff shall be trained at the discretion of the appointing auth-
ority. (Ex. 104) Defendants' lacks training as with respect to
Plaintiff's request: access to legal materials; access to adequate
law library; access to the court; and access to internet material
text prints, were the moving force behind the violation of Plain-
tiff's Constitutional rights by Defendants. See also Ex. 41 - 98.

   Administration Regulation 403, Disciplinary Hearing Proc-
edures for Major Rule Violations dated 01-30-03 establishes pol-

49

icies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the ALDOC. the Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary processings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges. The ALDOC inmates' violations table and authorized sanctions Annex A includes: making false statement or charge to a ALDOC employee with intent to deceive the employee or to prejudice another person; failure to obey a direct order of ALDOC official; insubordination; forgery; conspiracy to committ a violation of departmental or institutional rules; aiding and abetting another to commit a violation of departmental or institutional rules; violation of State or Federal law. (Ex. 105) Plaintiff has never violated any KCF or ALDOC regulations or policies or customs as with respect to this Plaintiff's claim. See Ex. 26, 41-98

Administrative Regulation 412, Institutional Law Library dated 02-07-05 establishes responsibilities, policies, and procedures for institutional law libraries. It also provides that it is a policy of the ALDOC to provide legal resource libraries and to permit all inmates access to material available. Wardens/designees are responsible for the operation and maintenance of institutional law libraries, and in the event that an inmate discovers that a book(s), or page(s) of a book, or other materials, are

50

missing from the law library that are necessary to the inmate's
legal research, the inmate should report this to the institutional
law library supervisor by submitting Form N944L i, Access to legal
Material.    The stated above ALDOC AR 412 was authored by Defend-
ant Commissioner Campbell and was in effective at the time this
events took place.    Defendants did not provided Plaintiff with
the legal materials including legal citations and resources and
statutes that he requested that were not available in the instit-
ution law library.    See also Ex. 1-3, 19, 22-23, 52, 54, 56-58,
66-68, 71-74, 87, 93, 97.

Administrative Regulation 448, Inmate Mail dated 12-19-05
establishes responsibilities, policies and procedures for inmate
mail.    It provides that it is the policy of the ALDOC to allow
inmate mail accordance with the United States Postal Service re-
ulations and guidelines set forth in this regulations  Mail incl-
udes but is not limited to items delivered by the United States
Postal Service, inter-institutional mail, and any private carrier
servicing the ALDOC.    Printed materials: Books, Publications,
Magazines, Newspapers, Periodicals, Circulars and Catalogues del-
ivered by the Postal Services and Internet Material-Downloaded
Copy from a web sites.    It also provides that incoming mail, inc-
luding "Legal Mail", shall be inspected for contrband and/or for
abuse of the mail privilege, and outgoing mail may be inspected
for contraband.    Abuse of mail privileges by inmates may result
in rejection and possible disciplinary action.    Abuses included
but are not limited to the following: Receipt of Mail, identified
as legal mail, from any individual or agency not meeting the legal

51

definition.   In the event any incoming mail rejected, the mail
clerk will cite the policy violation and complete an ALDOC Form
448, Notification of Rejected Mail, then forward to the inmate in
a timely manner.   An inmate may appeal the rejection to the
Warden/designee for review and final determination.   (Refer to
ALDOC Form 448, Notification of Rejection).   If the appeal is
denied, the will have the option of returning the mail to sender
at his/her own expense within 30 days, or the property will be
destroyed at the end of the 30-day period.   Every effort should
be made to ensure that all incoming letters and packages are
delivered within hours after receipt at the institution, other
weekends and holidays.   Inmates will be nofified of rejected
mail in accordance with procedures contained in V.G.   (Ex. 107)
The stated above ALDOC AR 448 was authored by Defendant Commiss-
ioner  Campbell and was in effective at the time this events took
place.   Defendants KCF  Standard Operating Procedure (SOP)
Number VII-6; Inmate Mail Privileges is inconsistent with this
ALDOC AR 448 as with respect to inmates' incoming mails contain-
ing internet material prints.   See Defendants' Exhibit 10.
Defendants denied Plaintiff access to incoming mails containing
internet material text prints (Ex. 44-47, 61, 81) and access to
due process (Ex. 47, 81).   Plaintiff has never violated any KCF
or ALDOC regulations or polices or customs as with respect to
Plaintiff's claim.   See Ex. 26, 41-98.

    Administrative Regulation 009, Smoke/Tobacco Free Policy
dated 12-17-04 establishes responsibilities, policies, and proc-
edures to provides a healthful comfortable, and productive work/

living environment for employees, inmates, visitor and contract-
ors and is the policy of the ALDOC that all ALDOC owned or leased
buildings, facilities, and vehicles will be smoke-free.    Certain
institutions shall be designated as tobacco free.    It is the
responsibility of all ALDOC employees, inmates, visitors, and
contractors to comply with contents of this regulation.    Smoking
is strictly prohibited within all ALDOC building/ institutions
including, .......... (Ex. 99) See also Ex. 86

The goal of the ALDOC AR relating to prisoners constitut-
ional rights is to prevent the First violation from occurring,
and it is not an option for the Defendants to ignore nor failed
to inform or follow due process requirement of what is required
of them by ALDOC regulations, citizen of Alabama State and consti-
tution which mandate to protect constitutional rights.

Thus, the federal courts should give deference to State
Prison authorities, that does not mean that evry prison regulation
and prison official conducts is insultated from review no matter
what the fact might be.    When a prison regulation or practice
offends a fundamental constitutional guarantee federal courts will
discharge their duty to protect constitutional right.

The ALDOC Commissioner, his designee(s), Wardens and other
ALDOC employees whose duties involve in response of inmates'
complaints or disciplinary hearing proceeding are responsible for
following the provision of the ALDOC regulations and constitution
and all procedures require final action by the Institutional Head
or his/her designee where inmates' complaint was not met or inmat-
es' was a violator of a major rule of ALDOC which punishments or

53

sanctions may be imposed.    Defendants' affidavits establishes
that they ignored to follow the ALDOC AR Policy and constitution
and or lacks of training.    Ex. 100-107

The ALDCO AR and KCF establishes policies and procedures
governing the conduct, disposition of inmates' complaints, disci-
plinary hearings for inmates in their custody and prison officials
and contractors which violated ALDOC AR and inmates' constitut-
ional rights, however, it was ignored by the Defendants and or
Defendants' lacks of training.    Ex. 2, 3, 41-42, 44-48, 53-58,
61-62, 67-68, 71-73, 81, 83, 87, 93.

Plaintiff has never violated any of the ALDOC AR and
policies through his incarceration under ALDOC and has never been
given any write-up, citation, extra duty, disciplinary hearing by
any Defendants and other prison officials under ALDOC and KCF for
violating such as: filing false complaint; lying or providing a
false satement to prison officials; refusing to obey an order of
any prison officials; interfering with prison officials, conducts
which disrupts or interferes with orderly running of the institut-
ion; failure to follow direct staff's order, state and federal
laws.    Ex. 28, 105.    However, Defendants worked alone, and togeth-
er with others agreed to deny the Plaintiff the stated above des-
cribed access.    Ex. 3, 3, 41-42, 44-48, 53-58, 61-62, 67-68, 71-
73, 81, 83, 87, 93 despite that Plaintiff made out numerous comp-
llaints and letters to Defendants to assist him, however, Defend-
ants acknowledged Plaintiff's complaints and letters, recklessly
disregard and did nothing to assist and correct the deficiency in
the ALDOC legal division and KCF law library and mail room polic-

54

ies, regulations and customs and as a result of Defendants' act-
ions and inactions , Plaintiff suffered and continue to suffer.
Defendants actions and inactions caused Plaintiff severe pain,
emotional distress and actual irreparable harm and injury.

Defendants were aware, know that their conducts as with
respect to the stated above described access violated constitut-
ional rights but totally recklessly disregarded to provide or make
available the stated above described access, and facilitated the
denial, approved it, condoned it or turned a blind eye for fear
of what they might see, Defendant either knowingly or acted with
deliberate reckless indifference violating Plaintiff's constitut-
ional rights.

Defendants  either lack training on responding to inmate
complaints and requests for inmates' constitutional rights prot-
ection or lack training in what inmates' constitutional rights
meants, what adequate law library and legal materials meants and
access to the court meants.   Defendants have failed to train
their prisonofficials on how to conduct their duties and to pro-
tect prisoners constitutional rights.

As a result of the Defendants actions and inactions and
failure to intervene, delays to response to inmates requests,
failed to train their prison official as with respect to Plaint-
tiff's constitutional claim for relief, Plaintiff suffered irrep-
arable harm and injury.

The ALDOC legal dicision was particularly import to inmates
with civil rights as well as criminal rights, as these inmates
like Plaintiff are not typically represented by counsel at the

the federal court.    Plaintiff requested legal materials not
available at the KCF institutional law library, but could not get
it.  Ex. 2, 3, 44-48, 53-58, 61, 67-68, 81, 83, 87, 93

Plaintiff requested legal materials to assist in the filing
of a exhausted state writ and civil rights complaint to the
federal court and could not get assistance from the ALDOC legal
division and Commissioner office.

Due to a lack of legal access to legal materials including
legal citation decisions, statute, resources; adequate law library;
and right of access to the court, Plaintiff was not able to file
an appropriate action to the Federal court.    In light of the
unavailiability of legal materials and statutes and resources
Plaintiff  requested and needed to commence his pleading in the
federal court, Plaintiff is being denied his constitutionally
protected right of access to the courts.    Defendants have impair-
ed Plaintiff's ability rights of access to the court and legal
materials for legal research and preparation of legal document to
commence serve, file federal court proceeding with respect to his
personal liberty.

Thus cognizable harm arises not only when the Plaintiff's
efforts to purse a claim are impeded ....... consistent with,
Plaintiff need not show that a claim which a Defendant interfered
would have prevailed, but only that it was not frivolous.    Def-
endants deprived Plaintiff of an arguable laims and inflicted in-
tentional emotional distress and actual injury which Plaintiff
suffered and continued to suffer.

Defenfants' failure to provide him with legal citation
decisions and out of state legal citation decisions he requested

56

that were not available in the KCF institution law library has
deprived him of his access to the court and legal materials neces-
ssary to conduct legal research, prepare, serve and file or com-
mence court proceeding affecting his personal liberty before the
federal court.    Defendants failure to provide Plaintiff with
informations regarding his requested United States Supreme Court
decisions has deprived Plaintiff access to the courts to commence
his civil rights litigation.    Ex. 2, 50, 51, 52, 57, 67

Defendants prevented Plaintiff from receiving prompt incom-
ing mail containing internet generated downloaded legal citation
decision material text prints not available in the institution
law library and has deprived Plaintiff of his access to legal
materials necessary to conduct legal research, preparation of
legal documents and access to the court is a violation of Plaint-
iff's First and Fourteenth Amenddments of the United States Cons-
titution.    Ex. 44-48, 61, 81

Defendants violated Plaintiff's constitutional rights by
forbidding him from receiving incoming mails and legal citation
decisions and others from internet Plaintiff requested and needed
for his legal research, prepare, serve, and serve and file or com-
mence court proceeding affecting his personal liberty before the
federal courts and as a respect of Defendants' actions and inact-
ions as respect with this claim,  Plaintiff sustained actual in-
jury and suffered irreparable harm and injury.    Defendants have
knowingly worked alone and together and have violated Plaintiff's
constitutional rights in all manner respectively.    Defendants vio-
lated Plaintiff's First and Fourteenth Amendments of the United
States  Constitution.

## ARGUMENT

Defendants press the narrower specious argument and failed
to address Plaintiff's civil complaints.  Such argument is unper-
suasive to the point that Defendants' affidavits were incorrect
and inaccurate as with respect to this claim.  Plaintiff's sever-
al filed requests and complaints to Defendants; ( Ex. 2, 41-42,
44-48, 53-58, 61-61, 66-68, 71-72, 81, 83, 87, 93, 97), unless
frivolous concerning inmates' law library and internet incoming
mails are deemed complaints and petition for redress of complaints
and thus are protected by the First Amendment of United States
Constitution.  Prison Officials like Defendants punished State's
inmates like Plaintiff in retaliation for filing complaints with
prison authorities accusing Prison Officials; Defendants of not
providing or making available the following access:  1) access to
legal materials including legal citation decisions, statutes,
resources; 2) access to adequate law library;  3) access to the
Court; 4) access to incoming mails containing internet downloaded
material text prints and among others.  But, because Plainttiff's
accusations were not false; thus Plaintiff was not punished by the
Kilby Correctional Facility ("KCF") Defendants for filing his hon-
est truthful numerous complaints requesting the stated above
described access and to protect Plaintiff from suffering irrepar-
able harm and injury and damages and loss.  **Johnson v. Avery,**
393 U.S. 483, 89 S. Ct. 747, 21 L Ed 2d 718 (1969).

Thus, the Alabama Department of Corrections ("ALDOC") Admin-
istrative ("AR") Number 403; (Ex. 105), mandates sanction, cita-

tion, disciplinary hearing and action for major rule violations
such as: Rule 41, making false statement or charge to a ALDOC
employee or to prejudice another person; Rule 56, failure to obey
a direct order of ALDOC Official.   Basically to say, the Defend-
ants' affidavits; (Defendant Exhibits ("Def. Ex.") 4, 5), and arg-
ument stateBat Plaintiff violated all of above described major
rules and others and they were aware of it and did nothing, and no
evidence presented by Defendants showing that Plaintiff violated
of the ALDOC AR Number 403 rules nor the Stated above described
access provided nor make available to the Plaintiff.   However, the
Plaintiff's evidence; (Ex. 41-107), and his ALDOC records; (Ex.
28), clearly established that Plaintiff has never violated any of
ALDOC AR rules therefore Defendants' affidavits and arguments are
specious and incorrect and inaccurate statement of facts before
the Court.   Defendants' affidavits offend and contrary to the
ALDOC AR Number 403 and if the Court allow Defendants unaccounted
statement claim to go untouched it will further successfully chil-
led prisoner's rights on the basis Defendants work together to
cover-up their custom unlawful unconstitutional conduct acts
imposed on states' inmates in Alabama States in the United States.

        Plaintiff evidences prior to discovery shows that Defendants
in this matter have contrived, conspired with each other and work-
ed together to cover up the unlawful stated above described access
deprivation in the 21st Century in the State of Alabama at the
time the event took place.   Plaintiff filed numerous oral and in
writing complaints requesting that the Defendants provide or make
available the stated above described access he needed to prepare
serve file his Court pleading before the Federal Court, Defendants

did not provide or make available the stated above described access. Defendants were aware, recklessly disregarded an Plaintiff's stated above described access and his First and Fourteenth Amendments. Defendants were totally aware of Plaintiff's numerous complaints with respect to this civil complaint and recklessly disregarded and acted with deliberate indifference and did nothing to provide or make available the stated above described access and protect Plaintiff's Constitutional rights.

Defendants' actions and inactions and failure to act brought about and caused the violation of ALDOC AR. (Ex. 100-107)  As a result of Defendants failure to act brought about caused Plaintiff to endured emotional distress, anxiety, sleeplessness, irreparable harm and injury, damages and loss and longer incarceration and detention.  Defendants have failed to meet their burden as with respect to Plaintiff's claim for relief. Because Defendants have filed to meet their burden of demonstrating that there is no dispute as to any material fact, and because the facts set forth in Plaintiffs' civil complaint, statement of facts, affidavits and attached evidences prior to discovery show that Defendants violated Plaintiff's clearly established Constitutional rights, this Court should deny Defendants motion in all aspects.

Plaintiff claims that Defendants recklessly disregarded his request for the access to legal materials, adequate law library, right s to the Court and internet incoming  mails and acted with deliberate indifference and actual malice and violated his First, Eighth, Fourteenth Amendments of the Constitution.  Plaintiff contend that part of the issue Plaintiff presented is not Whether

60

Plaintiff was only denied his Constitutional rights of the stated
above described acces, but the issue is whether Defendants con-
ducts Constitutional to how Defendants and others worked alone and
together and agreed to cover-up the unlawful State of Alabama
enacted criminal code 13A-8-196; (Ex. 3, 12, 14-18), that automat-
ically declare non-fugitive resident of another States in the
Union to be a fugitive from Alabama so that criminal trial shall
be held in Alabama where Alabama Resident resides or found that no
overt act nor element of crime was committed; (Ex. 4, 22, 39), in
doing so denied deprived Plaintiff his Constitutional rights of
access to legal citation decisions, statutes, resources, review
for preparation of legal document to serve file before the Federal
Court.

    Plaintiff's attached evidences prior to discovery clearly
established that Defendants: 1) was properly adequately notified
informed about Plaintiff's request and complaints and needs for
the legal citations; 2) of KCF forwarded and faxed Plaintiff's
numerous requests to the ALDOC Legal Division, to provide the
legal citation decisions and others that Plaintiff requested which
were never provide nor make available in the KCF law library for
Plaintiff's review; 3)of ALDOC received letters from the Plaintiff
requesting their assistance and in part failed to response nor
provide or make available the legal materials for Plaintiff's
review.  (Ex. 41-99)

    Thus, genuine issues of material fact exists concerning
whether Defendants' denying the stated above described access from
Plaintiff is reasonably related to legitimate peneological inter-

ests?   Genuine issue of material fact exists concerning Defend-
ants' personal participation in the alleged Constitution depriva-
tion of Plaintiff's access rights under First and Fourteenth
Amendments.   Also, genuine issue of material fact exist as to
whether the defendants were negligent in their duties in failing
to provide nor make available and deliver the legal materials;
legal citations, statutes, informations Plaintiff requested to
Plaintiff.   Moreso, genuine issue of material fact exists as to
whether the Defendants' negligent was a result of inadequate tran-
ing and or Defendants was negligent in failing to train their
Prison Official, Contractor, inmates' law librarian clerks in
laws, paralegal, non-interest Lexis/Nexis desktop computer data
base search to protect inmates like Plaintiff's as with respect to
his Constitutional rights.   Plaintiff avers that Defendants'
motion shall be denied as with respect to the Plaintiff's claim
for relief.   "As the Supreme Court has explained, the discretion-
ary function exception will not apply when a Federal statute, reg-
ulation, or policy specifically prescribes a course of action for
an employee to follw.   In this event, the employee has no rightful
option but to adhere to the directives.   And if the employee's
conduct cannot appropriately be the product of judgment or choice,
then  there is no direction in the conduct for the discretionary
function exception to protect."   Bultema v. United States, 359 F
3d 379, 385 (6th Cir. 2004); citing Berkovitz v. United States,
486 U.S. 531, 536 (1988).   Discretionary function exception did
not apply to Plaintiff's claim for relief that Defendants was
negligent in not giving Plaintiff the legal materials, the proper

instructions when the law librarian clerks and KCF Defendants perpetually informed Plaintiff that his legal materials request have been processed/faxed to the legal division. (Ex. 2,52,54,56,57)

The First Amendment of the Constitution of the United States guarantees the right "to petition the Government for a redress of grievances. "Prisoners have constitutional right to file certain petitions with the courts: criminal appeals (including post-conviction appeals and habeas corpus petitions) and civil rights lawsuits. Hudson v. Palmer, 468 U.S. 517, 523 (1984). Prison officials must provide the tools prisoners need "to attack their sentences, directly or collaterally, and in order to challenge their conditions of confinement." Lewis v. Casey, 518 U.S. 343, 355 (1996); see also Bounds v. Smith, 430 U.S. 817, 827 (1977)

Habeas Corpus is the highest remedy in law for any man or woman who is imprisoned. Habeas Corpus is available in Federal Court to indigent prisoners like Plaintiff in this matter, of both of the State and Federal government to test the validity of their detention, there is no higher duty than to maintain it unimpaired. U.S.C. Art. I Sec. 9. Habeas Corpus is not an attack on a criminal conviction or correctional facility unconstitutional conducts but on the validity of detention, and hence it is a collateral proceeding rather than an appeal. There can be no equal justice where the kind of trial and a relief a man or woman gets depend on the amount of money he has. (Ex. 2, 44-47, 50-58, 61-62, 66-68, 71-74, 81, 83, 87, 97, 101-106) The imposition by the State of Alabama financial barriers restricting the available appellate review for indigent criminal defendants in States' Judicial System; by Correctional Facility conducts actions, has no place in the American

63

heritage of equal justice under law.  The Fourteenth Amendment of
United States Constitution requires that, where a State grants the
right of Habeas Corpus, rich and poor prisoners be treated alike.
Smith v. Bennett, 365 U.S. 708, 6 L Ed 2d 39, 81 S. Ct. 895.

Plaintiff now re-alleges and incorporates by references page
13 through 41 above and argument pages and states that the Defend-
ants denied the instant  matter Plaintiff:  1) access to legal
materials including legal citations, statutes, resources;  2) acc-
ess to adequate law library;  3) access to the Court;  4) access
to incoming mails containing internet downloaded material text
prints; 5)stated above access with no another alternative way to
receive the stated above access Plaintiff's requested and needed
to review, research, shepardize, prepare, serve and file his
pleadings before the Federal Courts.  The above named defendants
have violated Plaintiff constitutional rights.  Plaintiff's case
in part present the issue:   Whether defendants can prevent pri-
soner; through by denying him access to legal materials (legal
citations) cited by government, from challenging their confinement
and states' unconstitutional conviction in the Federal Court thr-
ough a Writ of Habeas Corpus.   If so, are the defendants that
determine prisoner access to legal materials (legal citations)
status an adequate substitute for a habeas hearing?    For Cent-
uries in the Anglo-American tradition, prisoners could seek the
Writ to assert that should not be locked up.  The Writ was consi-
dered so essential at the nation's founding that the United States
Constitution limits when it can be suspended.  Prisoner like Plain-
liff have right to challenge his confinement in the Federal Court.

64

Plaintiff's legal claims that Plaintiff wanted to pursue as such: 1) to held a criminal trial in the State and District where the crime was committed instead of where the Alabama State resident resides (Ex. 12); to have access to receive incoming mails containing internet generated downloaded material text prints, were arguably actionable" or non frivolous" however the stated above Defendants prevented Plaintiff from filing and litigate the stated above.    Plaintiff now states that prior to the ratification of the United States Constitution, Alexander Hamilton recognized that the several States of the Union would retain many rights of sovereignty.    The Federalist No. 32. However, State sovereignty would not be retained in cases where like power had been expressly granted to the Federal government or where exercise of a power by both the State and Federal governments would be contradictory and repugnant.    Specifically delegated to the Federal Congress was the power to regulate commerce among States. U.S.C. Art. I  § 8.  In exercising the commerce power, the Federal government has expanded the meaning of the commerce clause to allow for Federal regulation that "aims directly to secure and promote the public welfare," which is a power known as the police power. Robert Cushman, The National Police Power under the commerce clause of the Constitution, 3 Minn. L. Rev. 289, 290 (919).  In exercising this police power through the commerce clause, Congress has forced itself into the realm of criminal law, as it has carved itself the power to regulate criminal conduct that has a substantial relation to interstate commerce.  (Ex. 17)    Pursuant to such power, the Federal gover-

nment has enacted a prohibition against commission of identity
theft.    See 18 U.S.C. § 1028.    Moreso, Alabama has improperly
exercised jurisdiction in a matter as with respect of Plaintiff's
Criminal case that had no effect on the State of Alabama, as no
"loss was proved in this matter"; Ex. 11, and doing so ignored
and dismantled the Federal laws and Constitution of the United
States and International Treaties. (Ex. 3 (dissenting opinion),
4, 11-12, 14-15, 19, 22, 25, 39, 98). See also Defendants Exhib-
it 10 (II)(A)(3).    For instance,  Can a French National, or
Hawaiian Resident, who has never been to nor has contact with
the State of Alabama, and is accused of committing a crime of
identity theft in Paris, or Honolulu, against an Alabama State
resident who was on vacation in Paris or Honolulu, be constitut-
ionally seized in Paris or Honolulu, labelled as Fugitive, extra-
dited under the Federal Laws and Constitution, denied him or her
access to his witnesses and impartial jury of the Country or
State  and district wher the crime shall have been committed,
subjected him or her to trial before the Alabama State tribunal,
with the Alabama State accuser's jury of peers known as "hometown
jury" selected only from Alabama State resident accuser's
community?    If so, would the stated above Defendants, the State
of Alabama and United States of America consider it a usurpation
of its sovereignty to have one of its citizen or resident extrad-
ited to the State or Country, and whose only connection with the
Hawaii and France never existed and sought to try the case and
preempt Alabama State and or United States Federal Statutes or
Laws.    Th reverse is the Plaintiff's case at hand in the State of

Alabama since 2003. (Ex. 3 (dissenting opinion), 12, 14, 15-17, 18-19, 22, 25, 39, 98)    Plaintiff was lynched without rope and subject to slavery in Alabama State in absence of due process jurisdiction as guaranteed by the Constitution of the United States in the 21st Century and the stated above Defendants denied Plaintiff access to his freedom by not providing him with the legal materials, adequate law library, internet material text prints, and access to the Court despite indigent Plaintiff's numerous requests, complaints and grievance appeals. (Ex. 45-106).

I.    Exhaustion

Plaintiff had exhausted his State remedies on claims, as required for Federal Habeas Relief; 28 U.S.C. § 2254, 28 U.S.C. § 2241, and civil rights and tort litigation 42 U.S.C. § 1983. The Prison Litigation Reform Act of 1995 ("PLRRA") requires a prisoner to exhaust any available prison condition in Federal Court. 42 U.S.C. § 1997 (e)(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L Ed 2d 12 (2002) Exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S. 731, 741 (2001) The Court has cautioned against reading futility or other exceptions into the statutory exhaustion requirement. Id at 741 n.6. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective admini-

67

strative grievance or appeal.    Woodford v. Ngo, 126 S. Ct. 2378,
2387 (2006)    The PLRA exhaustion requirement creates an affirm-
ative defense that a Defendant may raise however, the Defendant
bears the burden of raising and proving the absence of exhaustion
as with respect to Plaintiff's claim.    (Ex. 2, 44-48, 50-58, 61-
62, 66-68, 71-74, 81, 87, 97, 93, 100-106.    In deciding a motion
to dismiss for a failure to exhaust nonjudicial remedies, the
Court may look beyond the pleadings and decide disputed issue of
fact.    If the district court looks beyond the pleadings to a
factual record in deciding the motion to dismiss for failure to
exhaust - a procedure closely analogous to summary judgment -
then the court must assume that the prisoner has fair notice of
his opportunity to develop a record.    If the district court
concludes that has not exhausted administrative remedies on a
claim, the proper remedy is dismissal of the claim without pre-
judice.    The Court found that the PLRA does not require "total
exhaustion" under which no part of a suit may proceed if a single
claim in the action is not properly exhausted.    Jones v̈. Back,
127 S. Ct. 910, 923 (2007).    The language of the PLRA in 1997
(e)(a), "no action shall be," does not support the "total exhau-
stion" rule because it is boilerplate language, frequently used
in the Federal Code.    And such language has never been construed
to lead to the dismissal of an entire action if a single claims
fails to meet the pertinent standards.    Moreover, statutory ref-
erences to an "action" have not been read to mean that every
claim included in an action must meet the pertinent requirement
for an "action" to proceed.    The Court also noted the general

68

Court practice of dismissing bad claims and not a complaint as a
whole.  Id at 924.    In <u>Rhines v. Weber,</u> 125 S. Ct. 1528 (2005)
(the Supreme Court concludes, "If a petitioner present a district
court with a mixed petition and the Court determines that stay
and abeyance is inappropriate, the Court should allow the petit-
ioner to delete the unexhausted claims if dismissal of the entire
petition would unreasonably impair the prisoner's right to obtain
Federal relief.")

In <u>Priester v. Rich,</u> 457 F Supp 2d 1369, 1372-73, (S.D. GA.
2006)(" prisoner must comply with his prison's grievance proced-
ures) <u>Miller v. Tanner,</u> 196 F 3d 1190, 1993 (11th Cir. 1999) (he
must provide as much relevant information as he reasonably can
so that officials passing on the grievance can make informed and
reasonable investigation and respond to the grievance)  <u>Brown v.
Skies,</u>  212 F 3d 1205, 1207 (11th Cir. 2000)(Federal Courts have
excused inmates from complying with such procedures when officials
have prevented prisoners from utilizing the procedures, or when
officials themselves have failed to comply with the grievance
procedures were not applicable to [particular] grievances does
not matter and is not determinative.)  <u>Brown v. Valoff;</u> 422 F 3d
926, 942-43 (9th Cir. 2005)(delay in responding to a grievance,
particularly a time-sensitive one, may demonstrate that no admin-
istrative process is in fact available for purpose of exhaustion
requirement)  <u>Braham v. Clancy,</u> 425 F3d 177, 181-182 (2nd Cir.
2005) (quotes and cities omitted).  See also <u>Brengettacy v. Hort-
on,</u> 423 F 3d 674 (7th Cir. 2005)("held that prison officials
failure to respond to a  prisoner's claim can render administr-

ative remedies unavailable .........") Also See Mojias v. John-
son, 351 F 3d 606 (2nd Cir. 2003)(held that: 1) district court
considering dismissal under PLRA exhaustion provision must first
establish from legally sufficient source that administrative
remedy is available and that particular complaint does not fall
within exception, and Court that sua sponte dismisses action
challenging prison conditions on grounds of exhaustion must afford
notice and opportunity befor dismissal). Vacated and Remanded.
The PLRA's exhaustion requirement does require that prison off-
icial be 'afford[ed] ...... time and opportunity to address
complaints internally,' however, the Court found that "inmates
must provide enough information about the conduct of which they
complain to allow prison officials to take appropriate responsive
measures." Porter v. Nussle, 534 U.S. 516, 524-25 (2002)

PLRA exhaustion did not require inmate to complete all
appeal steps for grievances even after receiving relief request-
ed in those grievances Thornton v. Synder, 428 F 3d 670, 696-97
(7th Cir. 2005), Cert. Denied, 126 S. Ct. 2862 (2006)(Citing
Booth v. Churner, 532 U.S. 731, 734-36 (2001)(holding that a
prisoner need not appeal a favorable resolution to his grievance
to satisfy the PLRA's exhaustion requirements); Johnson v. John-
son, 385 F 3d 503, 515 (5th Cir. 2004)(mandating that a prisoner
appeal any adverse grievance determination to exhaust administra-
tive remedies); Abney v. McGinnis, 380 F 3d 663, 668-69(2nd Cir.
2004)(determing that a prisoner need not necessarily appeal a
favorable grievance ruling). (Ex. 2, 52, 45, 56-58)

In this instant matter, Plaintiff was incarcerated at KCF

under ALDOC system.  Plaintiff was granted indigent status by
the Court.  Plaintiff needed to review the legal citations and
materials cited by the Alabama Judicial System and others.  (Ex.
1-3, 19, 22-23, 44-48, 61-62, 66-68, 71-74, 87, 93, 97, 100-106)
Plaintiff notified the KCF law librarian clerk for legal assist-
ance to provide him with the legal citations and statutes and
resources.   The law librarian clerks told Plaintiff the legal
citations and statutes and resources were unavailable in the law
library and issued him the Access to Legal Material Form to
complete and mail to the ALDOC legal division despite that
th Access Form required the Law Library Supervisor/Designee
Signature.  (Ex. 2, 44-48, 50-58, 61-62, 66-68, 71-74, 81, 87,
97, 93, 100-106)  See also Defendants Exhibits 11, 12)

    Plaintiff made another request for legal citations and res-
ources through the KCF law librarian clerk, the law librarian
clerk informed Plaintiff to talk to KCF Defendants.  Upon Plain-
tiff request for Access to Legal Materials Forms to complete,
the law librarian clerk told him that the form is unavailable
and suggest that Plaintiff talk to the KCF Defendants. Plaintiff
completed and filed numerous Inmate Request Slips in unavailab-
ility of the Access to Legal Material Form with the KCF Defend-
ants pursuant to the law librarian clerk advise requesting for
legal citations and materials that were unavailable in the law
librarian or the law librarian clerk lacks proper training on
how to locate the same in the computer non-internet Lexis/Nexis
database.   The KCF Defendants informed Plaintiff in verbal and
written that all of his sent-in Inmate Request Slips for access

to legal materials that were unavailable at the KCF institution
law library have been processed accordingly and faxed to the
ALDOC legal division for action and Plaintiff would be notified
as soon as the ALDOC legal division make the legal citations and
materials available to the KCF Defendants or the institution law
library. (Ex. 52, 54, 56-58, 67)

    As a result of the Defendants' delay and failed response
his numerous requests filed with the KCF Defendants for access
to the legal citations and resources and statutes Plaintiff req-
uested and needed to commence his federal litigation. Plaintiff
sent numerous letters direct to the ALDOC legal divisions provide
him with access to the legal citations and resources and statutes
that Plaintiff needed and were not available at the institution
law library. Plaintiff did not received a response back of his
letter nor provided with legal citations and materials he req-
uested. (Ex. 56-58-68, 87, 97, 93). In addition, as a result
of the result of the ALDOC legal division failure to respond back
to PLaintiff's sent to the ALDOC legal division, Plaintiff now
sent letters to ALDOC Commissioner Office; Commissioner Allen,
to assist and provide Plaintiff with the legal citations and
materials including legal citations and resources that were
unavailable at the institution law library that Plaintiff needed
to review research and shepardize and serve and file, commence
his Federal Court pleading proceeding. Plaintiff received no
response from the Defendant Commissioner Allen or Commissioner
Office. (Ex. 67, 85)

    Neither the institution law librarian clerks nor the KCF

72

Defendants or ALDOC Defendants provided the Plaintiff the legal
citations and materials that he requested needed necessary for
him to review, research, shepardize, prepare, serve and file his
exhausted States' denied Writ of Habeas Corpus and other Civil
Rights violations such as denial of access to internet generated
downloaded materials.    As much, neither did law librarian clerks
nor KCF Defendants or ALDOC Defendants provided Plaintiff with full
legal citations of the United States Supreme Court decision of
Beard v. Banks,  126 S. Ct. 2572 (2006) that dealt with prison-
ers' first Amendment constitutional rights and others that
Plaintiff requested.    Upon Plaintiff request for the KCF law
library clerk to provide him with Federal Circuit Reporter legal
citation that led  to the stated Beard v. Bank  [ No. 04 - 1739 ]
the law librarian clerk informed Plaintiff that he has no way of
knowing the legal citation.  (Ex. 2, 50, 51-52, 57, 67)

    Defendant offer no evidence demonstrating that Plaintiff
failed to exhaust any administrative set by the KCF and ALDOC,
moreso, there are no administrative remedies for Plaintiff to
exhaust in KCF and ALDOC.    Plaintiff has exhausted all available
administrative remedies and all Defendants were adequately and
properly informed and notified about Plaintiff's numerous com-
plaints as with respect to this matter before the Court.    Def-
endants have failed and filed no response to Plaintiff's Civil
Complaints and the version of events set forth therein.    Defend-
ants have simply failed to carry their burden of establishing
Plaintiff's failure to exhaust the available administrative rem-
edies.    Defendants' position that Plaintiff claims should be

73

dismissed for failure to exhaust administrative remedies must be rejected and Defendants' motion as with respect to this claim dismiss shall be denied.

## II.    Respondeat Superior or Vicarious Liability

A supervisor is only liable for Constitutional violations his subordinates if the supervisor participated in or directed violations or knew of the violations and failed to act to prevent them. (Ex. 2, 41, 42, 44-48, 53-58, 61, 67-68, 71-73, 81, 83, 87, 93) A supervisor are only liable for their own culpable involvement in the violation of a Constitutional rights. The supervisor must be personally involved in the Constitutional violation and a sufficient causal connection must exist between the supervisor and the Constitution violation.  In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of subordinates, a Plaintiff must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence violation by the subordinates.  This may include evidence of the supervisor's personal participation, exercise of control or direction, or failure to supervise.  (Ex. 5, 6,7,8,9) A supervisor may be liable upon a showing that he or she implemented a policy so deficient that the policy itself is a repudiation of Constitutional rights and was the moving force of the Constitution violations. (Def. Ex. 3, 4, 5, 10) then see Ex. 2, 41-42, 44-48, 53-58, 61, 62, 67-68, 71-73, 81, 84, 87, 93.

In the case, the records before this Court contains ample evidences concerning Defendants knowledge and personal involvment in the alleged Constitution violation.  The attachment to Plain-

tiff's verified complaint as well as the evidence exhibits to
Defendants' verified Special Report and Answer reflect that Defend-
ants reviewedPlaintiff's: 1) inmate request slips; 2) access to
legal materials and law library forms; 3) notification of reject-
ed mail appeals; 4) sent letters at their respective offices and
did nothing.    Those Plaintiff's inmate request slips, access to
legal materials and law library forms, notification of rejected
mail appeals, sent letters states essentially that in all inst-
ances Defendants found the respective denial descisions to be
appropriate and correct.    This provides evidence that defendants
had more than the mere right to conrol the ALDOC employees and
contractors, KCF employees who were making the respective decis-
ions.    Defendants had the authority and opportunity to enforce
and or overturn those decisions and protect the Plaintiff and
his constitutional rights  but defendants failed to act to prevent
the same, failed to train and supervise his subordinates on how
to conduct their duties and to protect prisoners' (Plaintiff)
Constitutional rights.   (Ex. 6, 7, 8, 9)  See Def. Ex. 1, 2, 3,
4, 5).

A rational trier of fact could conclude based on this evid-
that defendants actively participated and or acquiesced in his
subordinates' decisions which deprived Plaintiff of his Constitu-
tional rights by finding those supervisors and or subordinates
Defendants access decisions to be correct and appropriate and or
otherwise.  Because a genuine issue of material fact exists con-
cerning the extent of Defendants' personal involvement and with
others in this matter, this aspect of Defendants' motion (defense)

75

shall be denied. Supervisory personnel are not liable under the
§ 1983 for the actions of their employees under a theory of res-
pondeat superior. Therefore, when a named Defendants holds a sup-
ervisory position, a causal link between the Defendant and claimed
constitution violation must be shown. (Ex. 2, 41-42, 44-48, 53-58,
61, 62, 67-68, 71-73, 81, 83, 87, 93, 5, 6, 7, 8, 9, 10) There-
fore, Defendants argue that there no claims directed specifically
toward Defendants ALDCO Commissioner Allen, or Former Commissioner
Campbell is inaccurate as with respect to Plaintiff' claim for
relief. An Official may simultaneouly exercise county authority
over others. An administrative function might be characterized
as an exercise of ALDOC Defendants' power. A Defendants official
were acting as ALDOC and or KCF officials and not acting as agent
of State, at time of alleged failure to properly train subordina-
tes or establish policies to protect arrestees. The Defendants
Commissioner Allen and former Commissioner Campbell and others as
with respect to Plaintiff's claim have recklessly disregarded and
acted with deilberate indifference and failed to train and super-
vise its employees (Prison Official and Contactor) on how to con-
duct their duties and protect prisoners' constitutional rights
including: 1) failed to develop a policy of sharing information
regarding out of States' legal citation decisions cited against
prisoners by the Alabama Judicial Branches with the ALDOC Commis-
sioner Officer, ALDOC legal Division and KCF institution law lib-
raries and made provide or make such out of States legal decision
available at the KCF and other correctional facilities law libra-
ries for inmates uses; 2) failure to provide adequate training

76

and supervision on the stated above access issue and protection
of prisoners' Constitutional rights.   Defendants in this matter
in part are responsible for the deficiency and Plaintiff's Consti-
tional rights violation because they instituted that system that
was the moving force behind the stated above Constitutional vio-
lations.

III.   Immunities

Defendants argue that they are entitled to sovereign immun-
ity on Plaintiff's official claims against them because they were
State Official discharging their official duties in their actions
relating to this lawsuit.   When a suit alleges a claim against
a State Official in his his official capacity, the real party in
interest in the case is the State, and the State may raise the
defense of sovereign immunity under the Eleventh Amendment.   Under
these circumstances, sovereign immunity generally bars actions in
Federal Courts for damages against State Official acting in their
official capacitiies.   Furthermore, Congress did not abrogate
the States' sovereign immunity when it enacted § 1983.   Quern v.
Jordan, 440 U.S. 332, 338-45, 99 S. Ct. 1139, 59 L Ed 2d 358
(1979).   Nonetheless, the Ex. Parte Young doctrine enables a
Plaintiff to circumvent the Eleventh Amendment.   Under this doc-
trine, a suit against a State Official in his Official Capacity
seeking prospective equitable relief is permitted, while a suit
requesting retroactive relief is considered to be a suit against
the State.   Will v. Michigan Dep't of State POlice, 491 U.S. 58,
71 n. 10, 109 S. CT. 2304 (1989) (" Of course a State Official in
his or her Official Capacity, when sued for injunctive relief,

77

would be a person under § 1983 because Official Capacity actions
for prospective relief are not treated as actions againt the
State.")    In determining whether the Plaintiffs seek prospective
injunctive relief, the Court must examine the complaint to see
whether it gives any indication that PLaintiff might be entitled
to prospective injunctive relief and or injunctive relief.    Here
the Plaintiff is seeking that the Court enter "an injunction
ordering Defendants, their successors, agents, employees, and all
persons acting in concert with them; to provide inmates access to
legal materials need   for preparation of legal documents, ade-
quate law librarian staff train law in law and computer database
search (new legal citation descision), adequate computer database
terminal for inmates' legal research direct use not through the
law librarian clerk, reasonable photocopy fees instead of imposed
fifty (50) cents a page photcopy, adequate access to law library,
access to current  legal citation decision journal or alternative,
access to typewriter or alternative, access to receive incoming
mail containing internet material print out, implement adequate
and uniform mail and law library control policies, and train
staff to satisfy their obligation to provide inmates meaning right
of access as stated above above in this documents."    Plaintiff's
civil complaint contains references to the stated above described
injunctive relief and adequately indicate that Plaintiff challeng-
ing the stated above described access, regulation and conduct
itself and the manner in which it may be applied prospective.
Moreso, Defendants  n o t  acting as agaent of State, at time of
alleged failure to properly train subordinates or establish

78

enforce policy to protect prisoners' Constitutional rights like Plaintiff.    Defendants have not proved the burden of his affirm- ative defense as with respect to this claim.  Defendants are  not entitled to sovereign immunity under the Eleventh Amendment to the Constitution and they motions shall be denied to the extent as with respect to the Plaintiff's claim against Defendants.

Qualified Immunity is an immunity from suit rather than a mere defense to liability.  Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985)(holding that a clearly established right does not require judicial precedent to that effect).    Instead, a clear established rights exists in the absence of precednt, where "the contours of the right [are] sufficiently clear that a reason- able official would understand that what he is doing violates that right."    Anderson v. Creighton, 483 U.S. 635, 640 (1987).   To that extent, government officials are considered "on notice" that conduct is violative of established law if the State of the law ...... gave them "fair warning" that their conduct would be uncon- stitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  Oualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.  Malley v. Briggs, 475 U.S. 335, 341 (1986).    Qualified immunity protects "government official ..... from liability for civil damages  insofar as their conduct does violate clearly established stautory or Constitutional rights of which a reasonable person would have known."  Harlow v. Fitzger- ald, 457 U.S. 800, 818 (1982);  Davis v. Scherer, 486 U.S. 183, 191 (1984).   In Saucier v. Katz, the Supreme Court set out a two step inguiry in determining whether an Official has qualified

immunity.  533 U.S. 194, 201 (2001).  First, "taken in the light
most favorable to the party asserting the injury, do the facts
show the Officer's conduct violated a Constitutional right?"  Id.
Second, the Court must "ask whether the right was clearly estab-
lished."  Id.  "The relevant, dispositive inquiry in determining
whether a right is clearly established is whether it would be
clear to a reasonable Officer his conduct was unlawful in the
situation ......... confronted."  Prison Officials are not entit-
led to qualified immunity from a claim that they applied this
policy in a discrimination fashion to suppress materials that
would embarrass the agency and eduacate prisoners on how to file
their claims.    For this claim, their bad motivation itself vio-
late Plaintiff's First Amendment.  Prison Legal News v. Lehman,
397 F 3d 692 (9th Cir. 2005)   Defendants violated Plaintiff's
right of access to legal materials he needed for preparation of
legal materials; right of access to the Court; right of adequate
law library with appropriate legal material; right of access to
receive incoming mails containing internet material text prints
and in addition to failure to train and supervise his Prison
Official and Contactore on how tp conduct their duties and to pro-
tect the stated above described prisoners' Constitutional rights,
satisfying Saucier's first prong.    Whether the right at issue in
a claim of qualified is clearly established is judged as of the
date of the incident alleged and is a pure question of law, which
Court revie de novo.   In Saucier, the Supreme Court held that
the "clearly established" inquiry "must be undertaken in light of
specific context of the case."  533 US. at 201.   Moreso, Saucier's
observation that when "various Courts have agreed that certain

80

conduct is a Constitutional violation under facts not distin-
guishable in a fair way from the facts presented in the case at
hand, the officer would not be entitled to qualified immunity."
Id at 202-03, 121 S. Ct. 2151. Faced with the Supreme Court's
decision in Lewis and Bounds and numerous subsequent cases, a
reasonable officer would know that failing to provide access to
adequate law library, access to legal material needed in order
"to prepare, serve and file" court documents would result in
prisoners' claims being "dismissed for failure to satisfy ......
technical requirements" or would otherwise frustrate prisoners'
litigation efforts. See e.g. Lewis, 518 U.S. at 351, 384, 116
S. CT. 2174. In addition with Supreme Court's decision in
Turner, Procunier and Thornburgh and numerous prior and subseq-
uent cases, a reasonable officer would know that failing to
allow Plaintiff to receive incoming mails containing internet
generated downloaded material text prints and internet generated
downloaded legal material text prints unavailable at institution
law library that Plaintiff needed to "prepare, serve and file"
Court documents would result in prisoners' claims being "dismiss-
ed for failure to satisfy ...... technical requirements" or would
otherwise frustrate prisoners' litigation efforts. Id. Further-
more, a reasonable officer would know that Plaintiff's First
Amendment rights were violated by enforcement of it s policy pro-
prohibiting Plaintiff from receiving mails containing internet
material text prints. (Ex. 101) See Martin v. City of Struth
ers, 319 U.S. 141 (1943); Reno v. ACLU, 521 U.S. 844, 868 (1997).
See also Lamont v. Postmaster General of U.S., 381 U.S. 301, 308

(1965)(Brenan, J., Concurring),  Clement v. California Dept. of
Correction, 364 F 3d 1148 (9th Cir 2004)(Prisons may not ban mail
simply because it contains material downloaded from internet),
King v. Federal Bureau of Prisons,  415 F 3d 634 (7th Cir. 2005)
(Prison's refusal to allow Prisoner to order book on computer
programming states a First Amendment claim),  Canadian Coalition
Against Death Penalty v. Ryan,  269 F. Supp 2d 1199 (D. Ariz.
2003)(Prisoners may not be punished for posting material on the
internet with the assistance of non-incarcerated third parties).
Indeed, " some conduct is so obviously contrary to Constitutional
norms that even a in the absence of caselaw, the defense of
qualified immunity does not apply." Skrtich v. Thornton, 280 F
3d 1295, 1305, n.9 (11th Cir. 2002)    In the Supreme Court dec-
isions in United States v. Lanier, 520 U.S. 259, 265 (1997), and
Hope v. Pelzer, 536 U.S. 730, 740 (2002), both of which focused
on whether a reasonable person would know that the challenged
behavior violated a Constitutional right and held that there need
not be case law on point so long as the official had "fair warn-
ing" that her conduct was impermissible.  It is well established
in many circuits that prison rules may not be enforced arbitrarily
or selectively in such a way as to violate prisoners' Constitu-
tional or statutory rights, including the right of access to the
Court, access to legal materials and adequate law library.  Thus,
all the above described rights were clearly established at the
time Defendants' actions, and rights not to be subjected to arb-
itrary and selective enforcement of prison regulations were also
clearly established at the time of Defendants' actions.  In add-

ition, the resolution of the qualified immunity question "will often require examination of  the information possessed by the ......... official." Anderson v. Creighton, 483 U.S. 635, 641 (1987).   They are no dispute that the Defendants as with respect to this Plaintiff Complaints were properly notified and informed of the access  to legal materials, adequate law library, access to the Court, and access to receive incoming mail containing internet materials text prints but Defendants totally recklessly disregarded and refused to provide the Plaintiff with his request that Plaintiff needed in preparation of legal documents, and such actions would be unlawful under the clearly established Con- stitutional standards set in Lewis, Bound, Turner, Procunier, and Thornburgh.   The delays in time not to respond to Plaintiff's numerous request was unreasonable based upon the informations known to Defendants at the time.

Plaintiff has presented genuine issues of material facts and strict proof thereof.   Defendants' record presented as with respect to the Plaintiff's allegation against Defendants are unsatisfactory given the importance of the Plaintiff's Costitut- ional right question raised.   Kennedy v. Silas Mason Co., 334 U.S. 249 (1948).   Defendants have discussed their asserted justi- fication for the regulation under the required four factor analy- sis under Turner.   Plaintiff have met his burden to overcome Def- endants' qualify immunity defense at this procedural juncture and genuine issues of material facts existed and Defendants are not entitle to judgment as a matter of law.   The records before this Court does not establish at least at this procedural juncture that

83

Defendants are entitled to qualify immunity on this claim for relief, therefore Defendants' motion shall be denied as with respect of this Plaintiff's claim for relief.

Absolute immunity is an absolute bar to liability. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 486-87 (1991). The official seeking absolute immunity there bears the burden of demonstrating that it is warranted, and the Supreme Court has been "quite sparing in its recognition of claims to absolute official immunity." Forrester v. White, 484 U.S. 219, 224 (1988). Damages are available against State official who is sued and held liable in His Individual capacity. Papasan v. Allain, 478 U.S. 265, 278 (1986). Plaintiff seeking to impose liability on a governmental entity or municipality under § 1983 must identity a governmental or municipal policy or custom that caused Plaintiff's injury. In certain situations, a law enforcement agency's failure to train its officer may constitute a "policy upon which governmental liability may rest. City of Canton v. Harris, 489 U.S. 378 (1989). Such liability may be imposed for a single decision by policymakers under appropriate circumstances. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) Liability may be imposed for existence of an improper or inadequate policy or from the absence of a policy. In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basics for § 1983 liability only where the failure to train amounts to deliberate indifference to

84

right of persons with whom the police come into contact. The
Court further held that municipality may only be held liable
where the policies were the "moving force behind the Constitu-
tional violation" id at 389 (Polk County v. Dodson, 454 U.S. 312,
326 (1981)) The touchstone of the § 1983 action against a gover-
nment body is an allegation that official policy is responsible
for a deprivation of rights protected by the Constitution, local,
governments, like every other § 1983 "person," by the very terms
of statute, may be sued for Constitutional deprivations visited
pursuant to governmental "custom" even though such a custom has
not received formal approval through the body's official decision-
making channels. Monell v. New York City Dept. of Soc. Serv.,
436 v. 658 (1978) Moreover, for liability for inadequate training
to attach the "identified deficiency in a City's training program
must be closely related to the ultimate injury." Id at 391. Thus,
a municipality can be liable under 42 U.S.C. § 1983 only if the
Plaintiff can demonstrate that his civil rights have been violated
as a result of that municipality's policy or customs. Monell v.
Dept. of Soc. Servs. City of N. Y., 436 U.S. 658, 694 (1978)
Defendants did not provide Plaintiff with some form of adequate
legal materials he needed in preparation of his writ and filing
civil rights litigation actions to the Federal Court,If relief be
granted he would have shortened the term of Plaintiff's confine-
ment but Defendants recklessly disregarded and acted with delibe-
rate indifference and did nothing. Wolff v. McDonell, 418 U.S.
539, 41 L Ed 2d 935, 94 S. CT. 2963 (1974) It is fundamental
that access of prisoners to the Courts for the purpose of present-

85

ing their complaints may not be denied or obstructed, the Court in Jonson v. Avery, 393 U.S. 483 (1969) held that unless and until a State provided some reasonable alternative to assist inmates in the preparation of petitions for postconviction relief, it could not validly enforce a regulation barring inmates from furnishing such assistance to other prisoners. Plaintiff state he was denied access to legal materials, adequate law library, the Court and incoming mails containing internet material text prints of legal citation decisions and literature which were not available in the institution law library. Plaintiff argues that Defendants and others have failed to train its officials on how to conduct their duties and to protect prisoners' Constitutional rights and failure to develop and or enforce a policy of sharing informations regarding out of State legal citation decision cited and used by the Alabama Judicial Systems with ALDOC against indigent Plaintiff and on their alleged failure to provide law library training and supervision as with respect to the stated above described issue available in the law library and in a timely manner. Defendants failed in their Constitutional obligation to establish and enforce and adequately train and supervise their subordinates, to fulfill their Constitutional obligation of ensuring that inmates' Constitutional rights protected. Defendants failed in their Constitutional to establish and enforce procedures and regulations to insure communication of all relevant information on Plaintiff's requests on the issue of access as described above. Defendants violated Plaintiff's Constitutional right by purposefully or with deliberate indifference failed to create a system that would sat-

86

isfy this obligation stated above. Defendants' polices and cus-
toms were also a moving force behind the violation Plaintiff
suffered and continue to suffer that has caused him irreparable
harm and injury.  Defendants were also final policies and custom
decision makers because neither Defendants has provided access and
training of officials to protect Plaintiff's Constitutional rights.
Defendants practices of not providing Plaintiff access as request-
ed is a custom that is so longstanding and it well-settled by the
Defendants to point is amounts to unspoken rule for the Defendants.
Defendants' policy of training and supervising its official has
also caused Plaintiff's Constitutional rights violation and was
so grossly inadequate that it amounted to deliberate indifference
to Plaintiff rights.   Defendants inadequate policies and customs
reflected a deliberate and conscious choice made by them and now
it's a pattern of unconstitution   behavior by the Defendants not
to provide Plaintiff with the out of State legal citation decis-
ions.   Defendants' actions and inactions and as a result, Plaint-
iff suffered when his incarceration continued despite his incar-
ceration being unconstitutional.   If the Defendants policies and
regulation are in place as with respect of the out of State legal
citation decisions and others, and enforced, the Defendants'
policies and regulations would not allow their officials to sub-
ject Plaintiff not to file his habeas corpus writ to the Federal
Court on the basis of policy consideration.  Notwithstanding the
Defendants knowingly that they did not comply with Constitutional
obligation and did nothing to correct the stated above.   Defend-
ants are liable both in official and individual capacities.   Def-

endants have implemented a custom pattern denying Plaintiff's
the stated above access as such Plaintiff's constitutional
rights were violated when Plaintiff was denied a response to sev-
eral file request for access in part.    Defendants refusal to
respond Plaintiff request has caused Plaintiff emotional pain,
emotional distress, frustration, anxiety, injury, psychological
effects, sleeplessness, mental pain and economic and non-economic
deprivation.    Defendants were aware and well informed of the
lack of the stated above access but Defendants recklessly disreg-
arded and acted with deliberate indifference and did nothing.
Defendants' have performed their negligently and acted with actual
malice and intent, caused harm to Plaintiff when Defendants denied
Plaintiff the stated above access and failed to train his subord-
inates' to respond to his request for access nor provide or make
available the stated above access.    Defendants have violated
Plaintiff's Constitutional rights under First, Eighth, and Four-
teenth Amendments.    Defendants are not entitled to absolute immun-
ity, official immunity nor individual immunity as with respect to
this claim.    Therefore, Defendants motion shall be denied.

Plaintiff argues that the Defendants worked alone and to-
gether, agreed, engaged in intentional and reckless conduct
against Plaintiff and Defendants' conduct was extreme and outra-
geous and caused Plaintiff emotional distress, and the emotional
distress suffered by the Plaintiff was severe.

To support a claim for intentional infliction of emotional
distress, the defendants' conducts must be so extreme in degree,
as to go beyond all possible bounds of deceny, and to be regarded

as atrocious, and utterly intolerable in a civil society.
Whether a claim rises to the requisite level of outrageousness
and egregiousness to sustain a claim for intentional infliction
of emotional distress is a question of law.  The evidences pres-
ented by Plaintiff as respect to this claim that the Defendants
denied Plaintiff access to legal materials, access to adequate
law library; access right to the Court; access to receive incoming
mail containing internet material text prints are sufficient to
create genuine dispute with respect to all the elements of Plain-
tiff's claim for intentional infliction of emotional distress
asserted against Defendants.  Evidence of denying Plaintiff acc-
ess to receive legal material text prints cited by the Alabama
Judicial Branches against him and were not available in the inst-
itution law library and not provided or made available to the
Plaintiff irrespective of Plaintiff's numerous request to provide
him with the aforesaid mentioned legal materials were sufficient
to prove outrageous and extreme conduct for purpose of intention-
al infliction of emotional distress claim.   Plaintiff is an
indigent, wasn't appointed a Defense Counsel to file his denied
States' writ; Ex. 1, 14, to Federal Court in timely manner.  Def-
endants did not provide or make any alternative arrangement so
that Plaintiff to obtain the legal material that were not avail-
able at the institution law library.  Defendants failed to insure
that this indigent Plaintiff before you will have meaningful acc-
ess to the Federal Court for his writ as Pro-se.  Therefore, Def-
endants are not entitled to relief with respect to Plaintiff's
claim for intentional infliction of emotional distress asserted
against defendants.

89

When a government entity through its agents by virtue of its law enforcement powers, has arrested and imprisoned a person, it is could to exercise ordinary and reasonable care; under the circumsatnces, for the preservation of the person's life and health.    For a breach of that duty, the custodial entity may be liable in damages.    McCord v. Maggio, 927 F 2d 844 (5th Cir. 1991).

Under Alabama law, the elements of a negligence are duty, breach, causation and injury.  If the defendants had a duty to provide Plaintiff with access to legal materials, adequate law library including access to desktop computer database, access to the Courts(Federal Courts), access to receive information by mail containing internet generated downloaded material text prints, Defendants breached these duties by refusing to provide the same stated above described access, a reasonable fact finder could conclude that these breaches are proximate cause of Plaintiff's not his legal documents to the Federal Court to commence his pleading.  The evidences before the Court shown each Defendants' actions and inactions therefore Defendants' does not entitle to judgment  as a matter of law as with respect to this claim, Defendants' motion shall be denied.

A suit against a public officer acting in his or her official will be barred by official immunity unless the public officer   (1) negligently performed a ministerial duty or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty.   Plaintiff argues that Defendants were negligent in performing a duty and have acted

with actual malice or actual intent to cause injury against
Plaintiff while performing their respective duties and have also
acted with deliberate indifference indifference while performing
their respective duties alone and together  and with others in
denying the Plaintiff the access to legal materials not available
in the institution law library, access to adequate law library,
access to the Court and access to receive incoming mail contain-
ing internet generated downloaded material text prints.   Even if
Defendants were performing a discretionary duty, a reasonable jury
could infer that Defendants acted with malice or actual intent
to caused harm and injury by denying Plaintiff the stated above
described access to receive, research, review, prepare, serve and
file his pleading to the Federal Courts.   Therefore, Defendants'
does not entitle to judgment as a matter of law as with respect
to this claim, Defendants' motion shall be denied.

Plaintiff have a qualify liberty interest in access that
are protected by the First Amendment. Procunier v. Martinez, 416
U.S. 396, 418 (1974) overruled on other grounds by Thornburgh v.
Abbott, 490 U.S. 401, 413-14 (1989).   Thus, Plaintiff have a
right to procedural due process when his access when his access
requests were rejected and or unanswered.   The Plaintiff must
receive notice, an opportunity to be heard, and an opportunity
for appeal to a prison official who was not involved in the ori-
ginal access decision and or unanswered requests.   Procunier, 416
U.S. at 418-19, 94 S. Ct. 1800.

The records concludes Plaintiff were not afforded proced-
ural due process in the denial of access to legal materials,
adequate law library, access to the Court when the Defendants

unanswered the Plaintiff's made request.  Ex. 42, 48, 50, 51, 53, 54, 62, 63, 64, 66, 67, 68, 71-73, 83, 84, 87, 93   Plaintiff was not afforded procedural due process in the denial of access to incoming mail containing internet material text prints.  Ex. 47, 81, 107 (G)   Plaintiff have not been afforded all of the procedural due process that is constitutionally required and Defendants have  not submitted ant evidence contrary that they were not denied notice and an opportunity to be heard or appeal.  Defendants violated Plaintiff's procedural due process as with respect to stated above described access claim on their failure to respond Plaintiff's request.

Thus the threshold question in due process analysis is whether a constitutionally protected interest is implicated. Meachum v. Fano, 427 U.S. 215, 223-24 (1976).  A State may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitation on the exercise of official discretion.  Hewitt v. Helms, 459 U.S. 460, 470-71 (1983).  To establish a protected interest, a prisoner must show "'that particularized standards or criteria guide the State's decisionmakers.'"  Olim v. Wakinekona, 461 U.S. 238, 249 (1983)(quoting Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 467 (1981)(Brennan, J. Concurring).  There must be "objective and defined criteria" which the decision-maker is required to respect.  Id.  The instant matter Defendants have to abide by the criteria guide of 2005 ALDOC AR, First and Fourteenth Amendments of the Constitution as with respect to this Plaintiff's claim for relief.  Ex. 42-48   The ALDOC AR published prison regulation may

92

create a protected interest. Olim v. Wakinekona, supra, 461 U.S.
249-50 (1981)   It is unclear whether the Defendants issued Stan-
dard Operating Procedure ("SOP") - Inmate Mail Privileges; Def.
Ex. 10, be valid when in fact inconsistent with the 2005 ALDOC AR
and Constitution or be valid without violating the 2005 ALDOC AR,
Constitution and Plaintiff protected rights. Ex. 47, 81, 107 (G)
Defendants' actions and inactions as with respect to the stated
above constituted a deprivation of liberty without due process in
violation of Plaintiff's Fourteenth Amendment rights under the Un-
ited Constitution and their actions were acted with deliberate in-
difference.

      Plaintiff argues that the Defendants' cannot arbitrarily
deny privileges based on the lack of regulations if it grants pri-
vileges under unfiled regulations to other prisoners and being
arbitrarily were a denial of due process.   Defendants at KCF
acted with deliberate indifference and arbitrarily denying Plain-
tiff access to his incoming mail containing internet generated
downloaded material text prints which other correctional facilities
like SCF allowed.   Defendants at the ALDOC also acted with delib-
erate indifference and arbitrarily denying Plaintiff access to
legal materials including legal citations and resources, access
to adequate law library and access to the Court which was made
available to other inmates except inmates with identifying inform-
ation conviction like Plaintiff.   Defendants cannot arbitrarily
provide benefit and protection to one class of inmate and deny the
same to the other class. Ex. 2, 52, 67.   The KCF SOP VII-6 Inmate
Mail Privileges at the time of the event occurred violated the

equal protection and due process and did not have a rational relationship to a legitimate ALDOC AR and States' interst. <u>Dandridge v. Williams,</u> 397 U.S. 471, 485-86 (1970).    Defendants violated Plaintiff's due process and equal protection under the Fourteenth Amendment of the United States Constitution, therefore Defendants are not entitled to relief with respect to Plaintiff's claim for relief as stated above.

IV.    <u>Right of Access to Courts</u>

It well established by decision of the Supreme Court that prisoners have a constitutional right of access to the courts. <u>Ex. parte Hull,</u> 312 U.S. 546 (1941); <u>Cochran v. Kansas,</u> 316 U.S. 255 (1942); <u>Johnson v. Avery,</u> 393 U.S. 483, (1969); <u>Younger v. Gilmore,</u> 404 U.S. 15 (1971); <u>Cruz v. Hauck,</u> 404 U.S. 59 (1971); <u>Cruz v. Beto,</u> 405 U.S. #!( (1972); <u>Procunier v. Martinez,</u> 416 U.S. #(¢ (1974); <u>Wolff v. M cDonnell,</u> 418 U.S. 539 (1974); <u>Bounds v. Smith,</u> 430 U.S. 817 (1977); <u>Lewis v. Casey,</u> 518 U.S. 343 (1996).

In <u>Cruz v. Beto,</u> the Supreme Court stated that federal courts do not sit to supervise prisons but to enforce the constitutional rights of all "person," including prisoners, and that persons in prison, like other individuals, have the right to petition the government for redress of grievances, which right includes access of prisoners to the courts for purpose of presnting their complaints.

In some cases involving habeas corpus the Supreme Court has stated that the right of prisoners to access to the courts is a corollary of their right to petition for a writ of habeas copus. Noting that the Supreme Court had constantly emphasized the fund-

mental  importance of the writ of habeas corpus in our constitut-
ional scheme, that Congress had demonstrated its solicitude for
vigor of the "Grit Writ," and that the court had steadfastly
insisted that there was no higher duty than to maintain the writ
unimpaired, the court in Johnson v. Avery, stated that since the
basic purpose of the writ of habeas corpus is enable those unlaw-
fully incarcerated to obtain their freedom, it is fundamental that
access of prisoners to the courts for the purpose of presenting
their complaints may not be denied or obstructed.  Ex. 2, 3, 41-42,
44-48, 53-58, 61-62, 67-68, 71-73, 81, 87, 93.

In Ex. Parte Hull, the Supreme Court in finding invalid
a prison regulation requiring that prisoners' writs of habeas be
submitted to correctional authorities for approval before being
passed on to the courts, held that neither the state nor its off-
icers may abridge or impair a prisoner's right to apply to a
federal court for a writ of habeas corpus.  Ex. 52

The Supreme Court has stated that the rule that indigent
defendants must have equal and open access to a state's appellate
system does not represent a balance between the needs of the acc-
used and the interests of society, but rather is a flat prohibition
against pricing indigent defendants out of as effective an appeal
as would be available to other able to pay their own way. Mayer v.
Chicago, 404 U.S. 189 (1971) see also Ex. 46

It is well established by decisions of the Supreme Court
that once a state or Federal Government establishes avenues of
appellate review, these must be kept free of unreasoned distinc-
tions, based on economic status, which can impede open and equal
access to the courts.  Burns v. Ohio, 360 U.S. 252 (1959); Lane v.

95

Brown, 372 U.S. 477 (1963); Rinaldi v. Yeager, 384 U.S. 305 (1966);
Entsminger v. Iowa, 386 U.S. 748 (1967); Roberts v. La Vallee, 389
v. 40 (1967; Gardner v. California, 393 U.S. 367 (1969); Williams
v. Oklahoma City 395 U.S. 458 (1969); Ross V. Moffit, 417 U.S. 600,
(1974).  The Constitutional source of the right of indigent def-
endants to equal and open access to the courts, insofar as the
states are concerned, lies in the Fourteenth Amendment guaranties
of equal protection and due process, these being the provisions
cited by the Supreme  Court in Griffin v. Illinois, 351 U.S. 12
(1956).

In Cochran v. kansas, the Supreme Court dealing with the
right of access to the access to the courts, where the court noted
that a state had properly conceded that if it were proved that
state penitentiary officials had enforced prison regulations so as
to suppress a prisoner's documents appealing his conviction, their
would be no question but that there was a violation of the equal
protection clause of the Fourteenth Amendment.  The Supreme Court's
decisions have estableshed that in the absence of other forms of
adequate legal assistance, prison administrator must provide in-
mates with adequate law libraries in order to insure that they will
have meaningful access to the courts.

It was now established beyond doubt that prisoners have a
constitutional right of access to the courts, and that recent
decisions of the court had required remedial measures to insure
that inmate access to the courts was adequate, effective, and
meaningful.  the Supreme Court Bounds v. Smith, held that this
this right of access to the courts requires prison authorities
to assist inmates in the preparation and filing of meaning legal

96

papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

The Court had previously held that the right of prisoners to an adequate opportunity to present their claims fairly did not require appointment of counsel to file petition for discretionary review in state courts or in the Supreme Court; Ross v. Moffitt, 417 U.S. 600 (1974), the rationale of that decision supported the result reached by the court in the instant case, which was concerned in large part with original actions seeking new trials, release form confinement, or vindication of fundamental civil rights. The court also found that its analysis of the instant case was strongly reinforced by its holding in a previous case; Younger v. Gilmore, 404 U.S. 15(1971), experience under that decision having demonstrated no reason to depart from it, and observed that while judicial restraint was often appropriate in prisoners' right cases, such a policy could not encompass any failure to take cognizance of valid constitutional claims.  The Court had found that the library established by the list was inadequate for the needs of indigent prisoners, who were unable to take advantage of the state laws permitting them to communicate with private counsel and to buy personal lawbooks, and that the denial of prisoners' right which the inadequate library occasioned was not justified by the state's countervailing considerations of economy and standardization. Ex. 44-48, 52.

The Court has held that the right of prison inmates to access to the courts requires that prison authorities provide inmates with some form of adequate legal assistance, not only in

97

preparing habeas corpus petitions, but also in filing civil rigts actions.  The Supreme Court held unless and until a state provided some reasonable alternative to assist inmates in the preparation of petitions for postconviction relief, it could not validly enforce a regulation barring inmates from furnishing such assistance to other prisoners;  Johnson v. Avery, 393 U.S. 483 (1969), the court also stated where prison regulations conflicted with federal constitutional or statutory rights, those regulations could be invalidated.

In Procunier v. Martinez, 416 U.S. 396 (1974), the Supreme Court held that s State prison system's regulation restricting access of prisoners to members of the bar and banning the use of law students and legal paraprofessionals to interview inmate clients was unconstitutional.   The Supreme Court held that a state's refusal to supply an indigent defendant with a free transcript of the minutes of his preliminary hearing, at which major state witnesses had testified, constituted a denial of equal protection, the court noting that is decisions had made it clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution.  Robert v. La Vallee (1967).

In instant case, first the court shall decide whether the arbitrary denial by prison official prison official's contractors and state officials routinely made available legal materials to inmate including indigent inmates for preparation of legal documents constitutes a denial of an inmate's right of access to the courts where it results in the loss of a legal claim relief leds to the inmates' immigration and expel proceeding from United

98

States of America proceeding.

Under the First and Fourteenth Amendments to the Constitut-
ion, satte prisoners have a right of access to the courts. Lewis
v. Casey, 518 U.S. 343, 346, 116 S. Ct. 2174, 135 L Ed 2d 606
(1996). "[A]ccess to the courts means the opportunity to prepare, se-
rvee and file whatever pleadings or other documents are necessary
or appropriate in order to commence or prosecute court proceeding
affecting one's personal liberty." Id. at 384, 11 S. Ct. 2174
This right "requires prison authorities to assist inmates in the
preparation and filing of meaningful legal papers by providing
prisoners with adequate law libraries or adequate assistance from
persons trained in the law" Bounds v. Smith, 430 U.S. 817, 828
(1977)

Where a prisoner asserts a backward-looking denial of acc-
ess claim-one, as here, seeking a remedy and relief for a lost
oportunity to present a legal claim - he must show: 1) the loss
of a "nonfrivolous" or arguable" underlying claim; 2) the offic-
ial acts frustrating the litigation; and 3) a remedy that may be
awarded as recompense but that is not otherwise available in fut-
ure suit. See Christopher v. Harbury, 536 U.S. 403, 413-14 (2002)
The first element, requiring the loss of a nonfrivolous underlying
claim, goes to the plaintiff's standing to bring suit. To have
standing to assert a claim of denial of access to the courts, an
inmate must show "actual injury." Lewis, 518 U.S. at 351, 116 S.
Ct. 2174.   In order to establish actual injury, the inmate must
demonstrate that official acts or omissions "hindred his efforts
to purse a [nonfrivolous] legal claim."   Id. at 351, 353, 116 S.

Ct. 217.

Plaintiff re-alleges and incorporates by refernce page 1
through    above and states that Defendants' refused to provide
Plaintiff access to the the court, adequate law library and legal
materials including legal citation decisions, statutes, resources:
1) cited by the Alabama State Court of Criminal Appeals in denying
Plaintiff his writ; Ex. Parte Egbuonu, 911 SO. 2d 748 (Ala. Crim.
App. No. 2004)  Ex. 1;   2) cited by the Alabama Attorney General
in governments' response to Plaintiff's post-conviction Plaintiff's
brief.  Ex. 23;  3) other legal materials that were necessary that
the Plaintiff needed to review, prepare, serve, file his criminal
and civil right violation complaints to the federal courts;  Ex. 2
3, 41-42, 44-48, 53-58, 61-62, 67-68, 71-73, 81, 87, 93 to attack
his perpetually imprisonment and detention in the remote State of
Alabama.   Defendants' as much hindered Plaintiff's ability to
file his writ to the federal court seeking review of his denied
states' writ relief action, civil rights  and others.  This action
resulted in the petition not being file and thus caused "actual
prejudice with respect to contemplated or existing litigation."
Id at 348, 116 S. Ct. 2174   Would have Defendants have given  the
Plaintiff access that he requested and needed, Plaintiff would
not have been further imprisoned nor detained from 2005 to present
on the grounds that the federal court would have declare Alabama
Cose § 13A-8-196 unconstitutional; Ex. 3, 15, 16, 17, 18, and
Plaintiff would release from the detention center.  The Defendants
have violated Plaintiff's constitutional rights and in part with
others caused Plaintiff over two years  in prison and detention;

between the time Plaintiff made his request for the stated above
access as described and present detention.

The second element, requiring the Plaintiff show that Def-
endants' denial of access to the out of states' legal citation
decisions cited by Alabama State Judicial System; Court of Crimin-
al Appeals and Attorney General Office, and other legal materials fr-
ustrated his attempt to press his claim in the federal court.   In
other word, as in any § 1983 case, plaintiff must alleged viola-
tion of his rights was proximately caused by Defendants, the State
actor.   Parratt v. Taylor, 451 U.S. 527, 535 (1981)  Defendants
effectively prevented Plaintiff from filing his petition to the
federal court by arbitrarily and selectively denying him access to
the legal materials he needed to review in preparation, filing,
serving pleading and other documents essential for pleading his
causes.       The constitution requires that prison officials make
it possible for inmates to prepare, file, and serve pleadings and
other documents essential for pleading their causes.   Lewis, 518
U.S. at 346, 116 S.Ct. 2174  Nevertheless, it remains true that
some means of preparing legal documents including a means of
reviewing legal materials including legal citation decisions cited
by your opposition or opponent, statutes, shepardizing where req-
uired, must be made available to the Plaintiff in a timely manner

The uncontradicted evidence in the record indicates that,
despite alleged policy to the contrary, legal materials were the
method the correctional facility routinely made available to in-
mate on every occasion except the one at issue here at KCF.
Whether or not the KCF and or ALDOC had a policy prohibiting

indigent inmates from receiving and reviewing the out of state legal citations decision cited by the Alabama State Judicial System against him or prohibiting KCF or ALDOC and law library staff from providing inmates like Plaintiff out of states' legal citation decisions he needed is irrelevant on the ground that such a policy, if indeed it existed, was either routinely not enforced or was intermittenly and arbitrarily at the caprice of the Defendants officials responding to Plaintiff's request for access.

Plaintiff's constitutional right was violated by the Defendants. Plaintiff's constitutional rights, including the right of access to the courts, was violated by the arbitrary and selective enforcement of otherwise valid policies and unconstitutional policy under the First and Fourteenth Amendments in such a way as to interfere with Plaintiff access to the courts, adequate law library, legal material to purse litigation arising from his incarceration.

Defendants cannot arbitrarily deny priviledges based under unfiled regulations to other prisoners and as such selective enforcement of regulations against indigent Plaintiff in this case, constitute a violation of the Plaintiff's due process rights when it resulted in a deprivation of Plaintiff's liberty interest of right of access to the court to file his writ to the federal court.

Defendants have offered no justification for enforcement of the regulation restricting access to the out of states' legal citation decisions and its accompanying cited by the Alabama State System but not any other occasion. Moreover, it was entirely forseeable that Defendants' actions and inactions and arbitrary

102

denial of the out of sate legal citation decision cited by their
Judicial Branches would obstruct Plaintiff's ability to prepare his
petition and file it to the federal court.

Defendants refusal to provide Plaintiff access to the legal
citation descisions cited by their judicial system, when the Def-
endants allowed other inmates to use other legal citation decis-
ions on numerous accasions both before and after, so far as the
record reveal, Defenadnts quite predictably interfered with Plain-
tiff's efforts to prepare his petition for writ to federal court
and thereby violated his right of acces to the courts.

Defendants' refusal to provide Plaintiff the legal materi-
als requested and needed, placed Plaintiff in the untenable posit-
ion of having to decide whether to file the writ and other civil
rights petitions to the federal court or wait until he could rece-
ive the legal materials then review and file the writ petition
hopes that it would be accepted.   Because  it was Defendants'
actions that placed Plaintiffs  in the position of having to make
this choice, Defendants cannot now make the complaint - highly
speculative in any that Plaintiff made the wrong choice; not to
file, therof, Defendants violate Plaintiff's constitutional rights.

Plaintiff also satisfies third element, requirement that
Plaintiff have no other remedy than the relief  available in his
denial of access suit as stated above described and Defendants
failure to train his officials (staffs) on how to conduct their
duties and to protect prisoners' constitutional rights suit.
The KCF and ALDOC legal division must provide 'indigent' prisoners
with basic supplies of Alabama Judicial System cited legal citation
against him which ensure that their access is 'meaningful' and

adequate law library was provided.   Plaintiff has shown that the
legal material he requested and needed was a necessary pre-requis-
ite to allowing him "meaning access to the courts. Ex. 1, 2, 3,
14, 53-58, 67-68, 83, 87, 93, 44-48, 101-102, 106.  The existence
of a law library at KCF does not provide for adequate law library
and meaning access when inmates are not afforded in part because of
denials, a reasonable legal materials that necessary and inmate
needed to attack his incarceration and amount of time to use the
facility. and The existence of law library clerks at the KCF law lib-
rary does not provide for the law library clerk are adequate train-
ed in law and have adequate legal materials to use and assist pris-
oners.

     For these stated above reasons, the unreasonable prison
policy, Defendants actions and actions were the cause of Plaint-
iff's loss and constitutional right's violation.   Defendants vio-
lated Plaintiff's constitutional rights.   Defendant's arbitrary
denial Plaintiff of access to the legal materials supposedly avai-
lable at the ADOC legal  division and unavailable in the KCF insti-
law library.   Defendants actions and inactions contray to the
KCF and ALDOC established past practice violated Plaintiff's
rights of access to the courts.   Consistenly with general plead-
ing, Plaintiff have stated a claim upon which relief can be granted.

V.       Internet Mail

     Defendants argument :   "Plaintiff alleges that Defendants
opened and returned legal research that was mailed from his family"
is inaccurate and specious argument made before the court.   Plain-
tiff's argues that Defendants failed to provide him with the legal

materials icluding legal citation decisions, stautes, resources
that he requested that were not available in the KCF law library
and denied him access to recieve incoming mails containing internet
generated downloaded material text prints of the legal materials
and others.  Ex. 44, 45-48, 61, 81, and Def. Ex. 3, 4, 10.
Plaintiff next argues that the KCF Standard Opertaing Procedure
Inmate Mail Privileges prohibiting inmate from receive incoming
mail containing internet material text print is not constitutional.
Def. Ex. 10   Defendants in his specious argument failed to argue
on inmates' incoming mail containing internet generated downloaded
material text prints that were rejected without any justifications.

"Law incarceration brings about the necessary withdrawal or
limitation of may privileges and rights, a retraction justified by
considerations underlying our penal system" Jones v. North Carol-
ina Prisoners' Labor Union Inc., 433 U.S. 119, 125 (1977)(quoting
Price v. Johnston, 334 U.S. 266, 285 (1948)

Yet "prisoner's do not forfeit all constitutional protect-
ions by reason of their conviction and confinement in prison." Bell
v. Wolfish, 441 U.S. 520, 545 (1979); Wolff v. McDonnell, 418 U.S.
539, 555-56 (1974)

In the setting of a prison, there must be "mutual accomod-
ation" between the penal institution's legitimate needs and goals
and the prisoner's retained constitutional rights.  Bell v. Wol-
fish, 441 U.S. at 546; Wolff v. McDonnell, 418 U.S. at 556.  In
short, "a prisoner loses only those rights that must be sacrified
serve legitimate penological needs." United States v. Lilly, 576
F 2d 1240, 1244 (5th Cir. 1978); See Pell v. Procunier, 417 U.S.

105

817, 822 (1974).

In considering the constitutionality of prison regulations relating to censorship of prisoner mail.    See Procunier v. Martinez, 416 U.S. 396 (1974).  Martinez, set out a two part test. First, the prison regulation must further " an important or substantial governmental interest."   Id. 416 U.S. at 413.   Second, the regulation's restrictions "must be no greater than necessary or essential to the protection of the particular governmental interest involved." Id. at 413.   The Supreme Court ruled that the Department of Corrections "failed to show that the broad restrictions on prisoners mail were in any way necessary to the furtherance of a government interest unrelated to the suppression of expression." 416 U.S. at 415.   A regulation banning expression of inflammatory, political, racial and religious views was struck down because it was "not arrowly drawn to reach only material that might be thought to encourage violence nor [was] its application limited to incoming letters."   416 U.S. at 416.

This two-part standard should be applied with a wide-ranging defernce to the expert judgment of prison administrators. Turner v. Safley, 482 U.S. 78, 79 (1987)(the restriction is valid "if it is reasonaly related to legitimate penological interests.") Publication may be censored, subject to certain procedural safeguards, if they contain material harmful to prison security. Thornburgh v. Abbott, 409 U.S. 401, 414-19 (1989).

In recognition of the judiciary's deference, the Supreme Court has repeatedly stated:

106

> such consideration [of prison administration] are
> peculiarly within the province and professional
> expertise of corrections officials, and, in the
> absence of substantial evidence in the record to
> indicate that the officials have exaggerated their
> response to these considerations, courts should
> ordinarily defer to their expert judgment in
> such matters.

Bell v. Wolfish, 441 U.S. at 547-58 (quoting Pell v. Procunier, 417 U.S. at 827) then See Clement v. California Department of Correction, 364 F 3d 1148, 1152 (9th Cir. 2004)

"When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Procunier v. Martinez, 416 U.S. at 405-06, See Rhodes v. Chapman, 452 U.S. 337, 362 (1981)(Brennan J., concurring); United States v. Bailey, 444 U.S. 394, 419 (1980) (Stevens, J. Concurring)(Courts should not give "undue deference to" prison official expertise). Thus, for example, prison administrators' bald assertions of security interest will not justify the loss of a prisoner's fundamental rights. Lee v. Washington, 390 U.S. 333 (1968)(statute requiring racial segregation in prisons violated the Fourteenth Amendment). Ex. 44, 45, 46, 47, 48, 61, 81, and Def. Ex. 3, 4, 10.

Defendants bald assertion of security is threatened by the introduction of internet generated downloaded material text prints is not clearly apparent when defendants failed to states the security threatened by incoming mail containing internet generated downloaded material text prints and its different from other incoming mails material text prints allow into the KCF; computer

material generated text prints formats.

The record does not indicate that the incoming mail con-
taining internet generated downloaded material text prints if
allowed would require aditional staff trained in computer skill to
examine/censor the inmates' incoming mail.    The security problem
raised by the Defendants does not conatin any evidence to support
the bald assertion of a security problem in this regard.

The limited record before the court, the Defendants has
adduced what can only be described as an extremely meritless friv-
olous weak security justification and does not justify security
interests.

There is no evidence in the present record addressed to
the issue of whether ALDOC AR 448 and or KCF Standard Operating
Procedure (SOP) Number VII-6 (II)(A)(3) imposes no greater rest-
riction than necessary to further the state interest of security
nor the Defendants address that question.    Carter v. Stanton, 405
U.S. 669, 671 (1972)(reversed summary judgment because the dist-
rict court's order was opaque and unilluminating as to either the
relevant facts or the law). See also Rudolph v. Locke, 594 F 2d
1076 (5th Cir. 1979)    Defendant has not explain as to why 2003
KCF SOP is preferable to other state's facilities and 2005 ALDOC
AR which did not restrict First and Fourteenth Amendment rights.

The First Amendment "embraces the right to distribute
literature, and necessarily protects the right to receive it"
Martin v. City of Struthers, Ohio, 319 U.S. 141,143 (1943).    It
protects material disseminated over the internet as well as by the
means of communication devices used prior to the high-tech era.

Reno v. ACLU, 521 U.S. 844, 868 (1997).  "[T]he right to receive publication is ....... .... a fundamental rigt.  The dissemination of ideas can accomplish nothing if otherwise willing  addresses are not free to receive and consider them" Lamont v. Postmaster General of U.S., 381 U.S. 301, 308 (1965) (Brennan J., concurring)

Prisoners retain their First Amendment right to receive information while incarcerated.  Turner v. Safley, 482 U.S. 78, 84 (1987)("Prison walls do not form a barrier separting prison inmates from the protections of the constitution.")  The Supreme Court has repeatedly recognized that restrictions on the delivery of mail burden an inmate's ability to exercise his or her First Amendment rights.  This First Amendment right is operative unless it is "inconsistent with [a person's] status as prisoner or with the legitimate penological objectives of the corrections system" Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977)(quoting Pell v. Procunier, 417 U.S. 817, 822 (1974))

When constitutional rights of both inmates and outsiders are implicated, the standard of review becomes whether the regulation "is reasonably related to legitimate penological objectives, or whether it represents an exaggerated response to those concerns." Turner v. Safley, 482 U.S. at 87,      See also Thornburgh v. Abbott, 490 U.S. at 411.  This test has four elements:  "(1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;  (2) Whether there are alternative means of exercising the right that remain open to prison inmates;  (3) What impact accomodation of the asserted constitution right will have on guards and other inmates, and on the allocation of prison resources gener-

ally and (4) Whether there exist ready alternative ........ that
fully accomodate [  ] the prisoner's rights at de minimis cost to
valid penological intersts." Turner, 482 U.S. at 89-91.

State prison regulation prohibiting inmates from receiving
mail containing material downloaded from the interest violated in-
mates' and Plaintiff's First and Fourtennth Ammendments rights;
prohibiting all internet-generated mail was arbitrary way to
achieve security, state corrections facility did not support its
assertion that coded messages were more likely to be inserted into
interest-generated materials than word-processed documents and
evidence showed that origin of printed electonic mail was usually
easier to trace that that of handwritten or typed mail.

Defendants' failed to meet the Turner test because it did
not articulate a rational or logical connection between it policy
and Plaintiff and or outsider interest.   Defendants' policy are
not rationally related to legitimate penological objectives and
shall be unconstitution.

The Court have held that racial classifications [imposed
by government] ........ must be analyzed by a reviewing court
under strict scrutiny.   That means the government has the burden
of proving that racial classifications are narrowly tailored
that further compelling government interests.   That is to "smoke
out illegitimate uses of race" by making sure that the goal is
important enough to justify it.   Johnson v. California, 125 S. Ct.
1141.   The ALDOC policy is not neutral and prison officials have
failed to the burden of proving that internet prohibit against
inmate are narrowly tailored measures that further compelling gov-

110

ernmental and or prison interest.    Inmates at KCF have access to
other media and mailed in other media text print except internet
material text print is not legitimate penological interest outweigh
the Plaintiff's internet material text print interest nor internet's
publisher interest or Department of Justice and Department of
Education's interests and First Amendment right.

Defendants' argument of legal mail in his response was
specious meritless and fivolous arguments when the Defendants
totally recklessly disregarded the truth and deliberate failed to
address the Plaintiff's Complaint that the Defendants ordered
Plaintiff's incoming mail from family, friend, free world person
containing:  1) internet generated downloaded material text print;
2) internet generated downloded material text print of legal cita-
tion decisions not available in KCF institution law library; 3) in-
ternet generated downloaded material text print of Law and Educat-
ion material literature not available in the KCF  or law library,
returned back to sender on the grounds that the internet generated
downloaded material text print is prohibited from entering the KCF
institution.    Moreso, Defendants have no plan in place to provide
Plaintiff the stated above described internet material text prints,
and their decision is not a legitimate governmental penological
interest, and its unconstitutional, and violated Plaintiff's cons-
titutional rights under First and Fourteenth Amendments.

Thus, other ALDOC state facility such as Staton Correctional
Facility ("SCF") allow inmates like Plaintiff to receive incoming
mail from family, friend and free-world person containing internet
generated downloaded material text prints.  No Plaintiff's incoming
mails containing internet generated material text print contain mat-

111

erial harmful to prison and prison security.    Defendants' internet prohibit policy intentionally puts significant pressure on inmates such as Plaintiff to abandon his First and Fourteenth Amendments rights when the Defendants perpetually denied him access to receive incoming mail containing internet generated downloaded material text prints.

Defendants' cannot arbitrarily deny privileges based on the lack of regulations if it grants privileges under unfiled regulations to other prisoners. Defendants' such selective enforcement of regulations constitute a violation of the Plaintiff's process rights and deprived him of his liberty interest to receive internet generated downloaded material text print.    Plaintiff contends that the denial of his internet generated downloaded material text print incoming mails constitute a deprivation of liberty without due process in violation of the 14th Amendment.    Ex. 44-48, 61, 81.

The failure to give notice of non delivery to sender of internet publications presents factual issues under the <u>Turner</u> standard.    Under <u>Procunier v. Martinez,</u> both inmates and correspondents have a qualified liberty interest in uncensored communication, and <u>Thornburgh v. Abbott,</u> held that publishers have a First Amendment right in access to prisoners.    The law is clearly established that inmates have a First Amendment right to receive information while in prison and that prison officials may not censor prisoners' incoming publication unless the censorship is reasonably related to legitimate penological interest.    <u>Pell v. Procunier,</u> 417 U.S. at 822; <u>Thornurgh v. Abbott,</u> 490 U.S. at 413.

112

Defendants' adopted an internet-generated mail policy
that prohibits only mail containing material that has been down-
loaded from the internet is retyped or copied into a document gen-
erated in a word processor program.    The policy prohibits photo
copies of download internet material but not of non-internet pub-
lications.    The Defendants' policy violated Plaintiff's First and
Fourteenth Amendments rights and has caused Plaintiff to suffer
and irreparable harm and injury.

Plaintiff now request that the Court enter a permanent in-
junction which would provides:    the Defendants as well as their
Officers, Officials, Directors, Employees, Agents, Contractors,
and those in privity with them are enjoined from enforcing any pol-
icy prohibiting Alabama State inmates from receiving mails because
it contains internet generated material text prints.    The injunc-
tion does not require court supervision, enjoins only enforcement
of the unconstitutional policy and does not interfere with prison
mail security measures, on the grounds:  1) inmates have no direct
internet access;  2) prison official members may open all incoming
mail and inspect it for contraband;  3) incoming mail may also be
read and examined for contraband;  4) if prison official members
finds extensive monitoring of inmate mail to be difficult or expen-
sive, the court may permit them to impose limits on the volume of
mail inmates may receive not just because the mail containing in-
ternet material text prints.    The injunction will prohibit banning
internet materials simply beacause their source is the internet.
It will not prohibit restriction for any legitimate penological or
security or security reason.

The refusal to allow prisoner to obtain internet material

113

presents a substantial First Amendment issue.  Freedom of Speech is
not merely freedom to speak; it is also freedom to read.  Stanley v.
Georgia, 394 U.S. 557, 564 (1969);  Lamont v. Postmaster General,
381 U.S. 301, 306-07 (1965).  Forbid a person to read and you
shut him out of the market place of ideas and opinions that it is
the purpose of the free-speech clause to protect.  Forbids a per-
son to read or receive or buy internet material text prints that
would enable him to increase his ability in fact of law and federal
constitutional rights so that he could file his states' exhausted
claim and other civil rights violation to the federal court as Pro-
Se under 28 U.S.C. §⁻2245 or 28⁻U.S.C § 2241 (INS detainer writ)
constitute infringement of his freedom of speech and great writ of
habeas corpus; U.S.C. Aritcle I, and the Defendants ahve failed to
present any evidence to show that the internet prohibit restriction
is justified by the need to protect the prison security.  Plaintiff
argues that Defendants have violated his First Amendmet and liberty
interest under Fourteenth Amendment right of the Constitution.

Defendants were aware, possessed knowledge and properly
notified and informed numerous time about the legal materials in-
cluding legal citation, stutes and resources, not available at the
KCF law library that Plaintiff requested and needed to research,
prepare, file and commence his states' exhausted writ before the
federal court but the Defendants worked alone and together with
others and agreed, totally and recklessly disregarded and acted
with deliberate indifference not to provide or make available
the legal materials that Plaintiff requested that would have assist
Plaintiff to reverse the imposed Alabama trial which is contrary to

114

the      federal law and constitution of the United States. Ex. 3,
14, 15, 16, 17, 18, 98, 4

Defendants have denied deprived the Plaintiff access to:
1) the legal citation decisions cited by the Alabama State criminal
court of criminal appeals in Plaintiff's denied writ. Ex. 1, 36;
2) the legal citation decisions cited by the Alabama State Attorney
General in governments' response to Plaintiff's post conviction
appellant brief. Ex. 4, 23;   3) other numerous legal citation
decisions not available at the KCF law library that Plaintiff has
requested through inmate request slips, access to legal material
forms and latters, which were never provided nor made available to
Plaintiff.     Ex. 2, 55-58, 67-68, 83, 87, 93;   4) receive incom-
ing mail containing internet-generated downloaded material text
print of the legal citation decisions not available at the KCF law
library that were sent by Plaintiff's family, friends, and free-
world person.   Ex. 44-48, 61, 81, which would have assisted Plain-
tiff to commence his pleading in federal court.

Defendants' imposed internet prohibit at the KCF permanent
party general population facility despite inmates at permanent
party general population have a greater degree of freedom than in-
mate at higher security facilities because they pose fewer security
risks is contrary to ALDOC AR.  Ex. 100, 101, 102, 106, 107

Plaintiff now states that he has not only presented and
shown that :  1) his claim was non frivolous or arguable underlying
claim;  2) the official acts frustrating the litigation;  3) a rem-
edy that may be awarded as recompense but that is not otherwise
available in a future suit (See Christopher v. Harbury,  536 U.S.

403, 413-14 (2002) but have shown that Defendants have worked alone
and together with others deprived Plaintiff access to the federal
court to litigate whether the State of Alabama holding a trial
in a place in Alabama State where Alabama's accuser resides, no
crime nor element of crime or overt act comitted and other criminal
and civil rights issues, constitutional?  Ex. 3, 12, 14, 15, 16, 18,
2, 44-48, 53-58, 67-68, 61, 81, 83, 87, 93.   Defendants violated
Plaintiff's constitutional rights as stated above and described in
this Plaintiff's response to Defendants' special report and answer
and affidavits and evidences attached.

Plaintiff final assert "mere voluntary cessation of alleg-
edly illegal conduct does not moot a case [ . ]"  United States v.
Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968).
Party asserting mootness has a heavy burden of demonstrating that
subsequent events have made it absolutely clear that the allegedly
wrongful behavior  cannot reasonably be expected to recur and
interim relief or events have completely and irrevocably eradicated
the effects of the alleged violation.  Defendants' have failed to
meet this heavy burden as with respect to Plaintiff claims against
them.   Therefore the Honorable Court find  enter an order granting
Plaintiff's injunctive relief consistent with constitution of the
United States.

W H E R E F O R E   these premises considered, Plaintiff
pray this Honorable Court will find that Defendants are not
entitled to nay relief and their motions for relief shall be denied.

116

Respectfully Submitted,

*Egbuonu Zephyr*

Zephyrinus Egbuonu
Acting Pro-Se
27041-265 FDC
Federal Detention Center
P. O. Box 5010
Oakdale
Louisiana 71463

## CERTIFICATE OF SERVICE

I hereby certify that I have this 19th day of March, 2008 served a copy of the forgoing attached, by first-class United States Mail, postage prepaid and addressed upon the following:

Tara S. Knee

Assistant Attorney General
Assistant General Counsel
Alabama Department of Corrections
Legal Division
Post Office Box 301501
Montgomery, Alabama 36130-1501

*Egbuonu Zephyr*

Zephyrinus Egbuonu
(Acting Pro-Se)
27041-265 FDC
Federal Detention Center
Post Office Box 5010
Oakdale,
Louisiana 71463