IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

ZEPHYRINUS EGBUONU,        *

     Plaintiff,           *

        v.             *       2:07-998-WKW
                                      (WO)

CAPTAIN BARRETT, *et al*.,    *

     Defendants.       *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff  filed this 42 U.S.C. § 1983 complaint on November 8, 2007 alleging that during his incarceration at the Kilby Correctional Facility located in Mt. Meigs, Alabama, Defendants violated his right to access the courts and prohibited his receipt of mail containing internet print material.[1]  Named as Defendants are Commissioner Richard Allen, former Commissioner Donal Campbell, Associate Commissioner Terrance McDonnell, Warden Willie Rowell, Warden Bobby Barrett, and General Counsel Kim Thomas.  Plaintiff files suit against Defendants in their individual an official capacities.  Plaintiff requests trial by jury and seeks damages as well as declaratory and injunctive relief.

In accordance with the  orders of the court, Defendants filed an answer,  special report, amended special report, and supporting evidentiary material in response to the

---

[1] At the time Plaintiff filed this action, he was incarcerated at the Federal Detention Center in Oakdale, Louisiana, as an immigration civil detainee.  During the pendency of this action, Plaintiff was deported to Nigeria.  *See Egbuono v. William*, Civil Action No. 2:07-CV-685-ID (M.D. Ala. 2010) (*Doc. No. 63*).

allegations contained in the complaint.  The court then informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff took advantage of the opportunity granted to file responses to the  special report filed by Defendants.  This case is now pending on Defendants'  motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail

on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive Defendant's properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is

-4-

not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt

-5-

as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  DISCUSSION

In March 2003 Plaintiff was arrested in the State of California on a two-count

indictment charging him with first degree identity theft in violation of Ala. Code § 13A-8-192. Following his extradition to Alabama, Plaintiff was convicted in 2005 of identity theft in the Circuit Court for Jefferson County, Alabama. The trial court sentenced Plaintiff to ten years imprisonment. *See Egbuono v. Warden*, 2:08-CV-1745-CLS-HGD (N.D. Ala. 2009). The actions which form the basis of the complaint occurred during Plaintiff's incarceration at the Kilby Correctional Facility ["Kilby"].[3]

In the instant complaint, Plaintiff complains that he was denied access to the courts with regard to his wish to file a federal habeas petition from the state court's denial of his state pre-trial habeas application.[4]   Plaintiff indicates that he was not appointed counsel to assist him with his appeal of his "exhausted pre-trial writ of state remedies to federal court," and thus, he chose to proceed *pro se*.[5]   Pursuant to these litigation activities, Plaintiff requested legal material from the law library at Kilby, including out-of-state case law

---

[3]Plaintiff entered Kilby in September 2005 and remained incarcerated there until August 2006.

[4]Prior to Plaintiff's criminal trial on the charges against him for identify theft, Plaintiff's retained counsel filed a pre-trial habeas corpus petition in the Circuit Court for Jefferson County. Petitioner sought to challenge the constitutionality of Ala. Code § 13A-8-192, *et seq*., claiming that it extended Alabama's jurisdiction beyond the territorial boundaries of the State. He also argued in the pre-trial writ that Ala. Code §§ 13A-8-192 and 196 violated sections VI and VII of the Alabama Constitution by not allowing criminal prosecution in the county where the crime was committed. Finally, Plaintiff claimed that he was subjected to excessive bail. The petition was denied on June 23, 2004. Following an appeal from the lower court's ruling, the Alabama Supreme Court denied Petitioner's petition for writ of certiorari on April 22, 2005. Petitioner was subsequently tried and convicted on the charge of identity theft and sentenced on August 2, 2005 to ten years imprisonment. *See Egbuonu v. Warden*, Civil Action No. 2:08-CV-1745-CLS-HGD (N.D. Ala. 2009).

[5]During the time Plaintiff was incarcerated at Kilby, his direct appeal proceedings, filed by retained counsel, were pending in state court. *See* Civil Action No. 2-08-CV1745-CLS.

decisions, in order to prepare and file his writ in federal court. Plaintiff alleges that Kilby's law library did not have all the legal decisions he requested and that the unavailable material was never furnished to him. Prison personnel advised Plaintiff to contact the legal division of the Alabama Department of Corrections for further assistance.  Plaintiff did so but complains he still did not receive all the legal materials he requested.  Plaintiff also contacted his family and friends for purposes of obtaining legal material available on the internet. Plaintiff contends that his mail containing internet printed material was returned to sender by prison officials thereby denying him access to that information.[6]  (*Doc. No. 1*.)

Defendants deny violating Plaintiff's right of access to the courts. Defendants maintain that Kilby's law library contains digital legal material which includes, but is not limited to, statutory information, federal sentencing guidelines, Alabama case law, federal and appellate case law from both the Fifth and Eleventh Circuit, the federal  rules of civil procedure, U.S. Supreme Court reports, and case updates for each category of court decisions with no more than a three month lag.  The law library also contains a broad variety of hard

---

[6]This matter is before the court on the allegations presented in Plaintiff's original complaint, and thus, to the extent Plaintiff presents new claims for relief or factual allegations and/or additional theories of liability in his opposition to Defendants' dispositive motion, such claims are not properly before the court nor did  the court consider Plaintiff's opposition as an amendment to his complaint. *See Chavis v. Clayton County Sch. Dist*., 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention . . . We do not regard this kind of claim as properly before us . . ."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (cited with approval in *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

copy periodicals including, but not limited to, the Alabama Reporter, Alabama Reports, Alabama Appellate Reports, Federal Supplement, Federal Reporter, and West's Alabama and Federal Practice Digests.  The law library also has law clerks, some with paralegal training, who are knowledgeable with respect to both hard copy materials and the LEXIS/NEXIS digital system.  (*Doc. No. 10, Barrett Affidavit; Doc. No. 26*.)

Defendant Barrett who, at the time the events complained of, was responsible for security operations at Kilby as well as the law library, states that Plaintiff visited Kilby's law library 172 times between October 2005 and July 31, 2006.  Defendant Barrett states that he discusses questions regarding legal materials or a lack thereof with inmate law clerks and the legal division of the Alabama Department of Corrections if necessary.  Defendant Barrett recalls discussing on a couple of occasions Plaintiff's requests for legal materials with the senior inmate law clerk.  At those times the information requested by Plaintiff was not available or could not be obtained as Kilby's law library was not set up to locate cases by case number alone which is what Plaintiff provided rather than the legal citation.    After discussing Plaintiff's requested legal material with legal counsel for the Alabama Department of Corrections ["ADOC"], Defendant Barrett was asked to send to the legal division Plaintiff's requests.  Defendant Barrett complied with that directive and informed Plaintiff of his actions.  According to Defendant Thomas, General Counsel for the ADOC,  there is a procedure in place for inmates to obtain copies of missing or damaged items from the law library. An inmate directs his request through the law library supervisor through a particular

form which is completed and then forwarded to the legal division.  Defendant Thomas affirms that he has received many such requests over the years and the requested information is copied and forwarded to the appropriate facility for an inmate's review.  This procedure, Defendant Thomas states, ensures that inmates have access to law library materials which have been damaged. (*Doc.  No. 10, Exhs. 4, 5, 11, 12, 13; Doc. No. 26*.)

**A.  Injunctive/Declaratory Relief**

As noted herein, Plaintiff is  no longer incarcerated at the Kilby Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Kilby, his  requests for injunctive and/or declaratory relief have been rendered moot.

**B.  Official Capacity Claims**

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages.  "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44,

59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.  Defendants are, therefore,  entitled to absolute immunity  from any claim for monetary damages asserted against them in their official capacities.

## C.  Access to Courts Claim

### i.  Inadequate Law Library/Legal Resources/Legal Assistance

As explained above, Plaintiff, while incarcerated at Kilby, desired to file an  "appeal" of his exhausted state pre-trial writ in federal court. (*See Doc. No. 1, Exh. 1.*[7])  He complains that he was arbitrarily denied access to out-of-state legal materials which he needed in order to "review, prepare, and file" his federal habeas application challenging the state court's rejection of his state pre-trial habeas petition.  Specifically, Plaintiff sought "out of state case law decisions cited by the Alabama Attorney General on the Appellee brief for his review." (*Doc. No. 1 at pgs. 4-5*).

Prisoners are entitled to "a reasonably adequate opportunity to present claimed

---

[7]*Ex parte Zephyriuns Egbuonu* (*In re State of Alabama v. Zephyriuns Egbuonu*), 911 So.2d 748 (Ala.Crim.App. 2004); *Ex parte Egbuonu*, 911 So.2d 755 (Ala. 2005).

violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable but only where the inmate is able to demonstrate actual injury from such deprivation. *Id*. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 353. Rather, the *Lewis* Court concluded that the *Bounds* decision stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355. Additionally, the Court found that "[b]ecause *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id*. at 353; *see also Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) ("prison officials' actions which allegedly infringed an inmate's right of access to the courts must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim); *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (inmate must demonstrate that inability to gain access to legal materials resulted in "actual injury" to his "capacity of bringing contemplated challenges to sentences or conditions of confinement before the courts").

Plaintiff has failed to demonstrate that he suffered actual injury due to the lack of

certain state or federal legal material in Kilby's prison library which he contends he needed in order to  prosecute a federal habeas petition challenging the denial of his state pre-trial habeas petition.[8]  Plaintiff maintains that the petition he sought to file was "arguable actionable or nonfrivolous," and that the actions of Defendants in failing to provide him with the legal material he requested caused him headaches, nightmares, and psychological effects, as well as economic and non-economical damages.  (*Doc. No. 1 at pgs. 9-10; Doc. No. 35.*) He further contends that Defendants' failure to provide him with all the legal materials he requested hindered his opportunity to research, prepare, and file his federal writ and "placed him to the point of not to file his constitutional legal claims."  (*Doc. No. 1 at pg. 11; Doc. No. 35.*)

Notwithstanding his allegations, Plaintiff's complaint and his responsive pleadings fail to show actual injury of the kind required by *Lewis*.  At best, Plaintiff merely makes reference to his apparent desire to have every case cited in  briefs filed in support an/or in response to his pre-trial state habeas petition without any  evidence tending to show that the

---

[8]The court notes that at the time Plaintiff sought the legal material in question, the direct appeal of his identity theft conviction was pending and the same attorney who filed Plaintiff's pre-trial state habeas petition was representing him on direct appeal.  (*See Egbuonu v. Warden*, Civil Action No. 2:08-CV-1745-CLS (N.D. Ala.).    Presumably, Plaintiff's appellate counsel was a potential source from which Plaintiff could have requested the legal materials he had difficulty obtaining through Kilby's law library. Further, the court notes that federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  Thus, in the course of collaterally reviewing state criminal convictions and/or state pre-trial criminal proceedings in a federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *Estelle ,* 502 U.S. at 67-68.   Rather, when a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. §§ 2241 or  2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States" based on applicable *federal*, not state, law.

lack of legal decisions he sought to obtain deprived him of the *capability* of filing a non-frivolous, collateral claim. The documents and records filed by the parties indicate that Defendants provided Plaintiff with assistance and accommodated his research requests in a timely manner and provided him with the cases they had readily available.  Plaintiff says he wanted to pursue a federal challenge to the denial of his state pre-trial habeas petition, but fails to show how a lack of certain legal material prevented him from bringing his challenge to the federal courts. Furthermore, *Lewis* emphasizes that a *Bounds* violation does not occur because of a lack of books.  Rather, a *Bounds* violation is related to the lack of capability to present *claims*.  In this case, Plaintiff has simply not shown he is not capable of presenting claims.

In this case, the court finds that Plaintiff  misconstrues and exaggerates the constitutional parameters of the right of access to the courts. This right merely assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis,* 518 U.S. 343.  Prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. *See Lewis,* 518 U.S. at 356 ("Of course, we leave it to prison officials to determine how best to ensure that inmates ... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.").  Assuming, *aruendo,* that the type of claim Plaintiff sought to prosecute was not frivolous, he has not identified

-14-

any circumstance under which the lack of access to legal materials hindered his capacity to present his claims in federal court.  Granting relief to Plaintiff in this case solely because he did not have a law library with every legal decision and legal material which he wished to use to do research for filing other collateral attacks would be tantamount to establishing a right to a law library with specific holdings.  *Bounds* does not require and *Lewis* repudiates the notion that there is a right to a law library.  "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825).

In sum, the records of this court do no support Plaintiff's access to court claim. Plaintiff has been challenged to come forth with some evidence that Defendants engaged in conduct that so hindered his efforts to pursue a non-frivolous legal claim that he experienced adverse consequences or an <u>actual</u> injury from the alleged deprivation.  *Lewis*, 518 U.S. at 349.  He has failed to do so. His perceived impairment based  on the quality of Kilby's law library and/or Defendants' conduct in regard to his requests for legal material is insufficient to establish an "actual injury" as such is contemplated by the holding in *Lewis*.

ii.  *Denial of Internet Legal Material*

Plaintiff also claims that Defendants  interfered with his ability to access the court when they "denied him access to receive [] internet mails containing internet printed out case law decisions."  (*Doc. No. 1*.)   As with the first claim, in order to rise to the level of a

constitutional violation, Plaintiff must allege that his position as a litigant was prejudiced by Defendants' actions. *See Lewis*, 518 U.S. at 350-55. Here, Plaintiff has only asserted that Defendants deprived him of receiving mail containing internet published legal material.  He has not, however, shown that this alleged shortcoming hindered his efforts to pursue a legal claim or that his position as a litigant was in any way prejudiced by this particular act, and therefore, he has failed to state a cognizable constitutional claim. *Id*. at 349. Because Plaintiff has failed to produce sufficient evidence to support his access to courts claim, the undersigned concludes that Defendants are entitled to summary judgment.

### D.  Internet Mail Claim

In addition to claiming a denial of access to the courts, Plaintiff also alleges that Defendants' conduct in returning his mail containing information printed from the internet "contributed to and proximately caused violation of First, Eighth, and Fourteenth Amendment rights to the United States Constitution." (*Doc. No. 1 at pg. 11*.) Plaintiff maintains that Defendants' enforcement of a Standard Operating Procedure at Kilby prohibiting inmates from receiving mail containing any type of internet material violated his constitutional rights where the blanket rejection of such material was made without any justification or for any legitimate penological reason. (*Id. and Doc. No. 35*.) Defendants do not dispute that Plaintiff was prohibited from receiving internet material through the mail. They argue that inmates are not allowed to receive internet material for security reasons and that Kilby's Standard Operating Procedure #VII-6 prohibits inmates from receiving mail

-16-

containing internet material.[9]  (*Doc. No. 10, Exhs. 3, 4, 10; Doc. No. 26.*)

Defendants contend that they are entitled to qualified immunity from monetary damages in this case. Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536, U.S. 730, 739 (2002) and *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted) To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). It is undisputed that Defendants at all relevant times were acting within the scope of their employment as state correctional officers. Accordingly, the court finds that Defendants  "w[ere] acting within the scope of [their] discretionary authority" when the alleged unconstitutional acts occurred. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983).  Plaintiff must, therefore, alleged facts that, when read in a light most

---

[9]During the pendency of this action, the court notes that  the Alabama Department of Corrections changed Administrative Regulation ["AR"] 448, which governs inmate mail and, in particular, ¶V(B)(7) which governs incoming inmate mail (effective October 20, 2008).  *Available at* http://www.doc.state.al.us/adminregs.asp.   The current regulation allows inmates to receive up to four (4) pages of internet material per letter. The court is unaware, however, if Kilby's Standard Operating Procedures ["SOP"] Number VII-6 has been updated to reflect this change to AR 448 inasmuch as Kilby's SOP VII-6, issued on February 19, 2003, specifically prohibits an inmate's receipt of incoming mail containing any type of internet material. (*Doc. No. 10, at Exh. 10; see also Exh. 8.*)

favorable to him, show that Defendants are not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). In order to satisfy his burden, Plaintiff must show two things: (1) that Defendants committed a constitutional violation and (2) that the constitutional right Defendants violated was  "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328,  1332 (11th Cir. 2004). This inquiry focuses on whether the "state of the law" at the time of the alleged violation provided the government officials with "fair warning that their alleged treatment of the [plaintiff] was unconstitutional." *Hope,* 536 U.S. at 741. Courts now have discretion to determine the order in which  the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 555 U.S. __, ___, 129 S.Ct. at 818-19, 172 L.Ed.2d 565 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand.").

    To determine whether a right is clearly established, courts examine cases that articulate constitutional rules of general application as well as those cases that apply these general rules in circumstances similar to those encountered in the case at hand. *See Vinyard*, 311 F.3d at 1350-52. In so doing, courts are not to be unduly rigid in requiring factual similarity between prior cases and the case under consideration. The "salient question" is whether the state of the law gave the official "fair warning" that the alleged conduct was unconstitutional. *See Hope*, 536 U.S. at 740-41.

        This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. We look to case law to see whether

-18-

"the right the official is alleged to have violated [has] been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted); see also *Hope*, 536 U.S. at 741, 122 S.Ct. at 2516 ("[T]he salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."). Thus, " fair and clear notice to government officials is the cornerstone of qualified immunity." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1031 (11th Cir. 2001) (*en banc*)).

*Bashir v. Rockdale County, Ga.,* 445 F.3d 1323, 1330 -1331 (11th Cir. 2006).

The requisite "fair and clear notice" may be given in various ways. *Marsh*, 268 F.3d at 1031. In rare cases, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Id*. More frequently, however, we must look to case law existing at the time of the violation to see if the right was clearly established. *Id.* at 1351. "While 'some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts,' more often, the facts are so material to the violation at issue that such generalized principles are insufficient, and we must look to precedent that is factually similar to the case at hand." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir.2003) (quoting *Vinyard*, 311 F.3d at 1351).

Here, the right at issue concerns a prisoner's right to receive mail containing materials

downloaded from the internet. The court has, to date, found no decision by the United States Supreme Court or the Eleventh Circuit Court of Appeals which holds that a prison policy prohibiting inmates from receiving mail containing internet materials violates any provision of the Constitution. The Ninth Circuit Court of Appeals, in *Clement v. California Dept. of Corrections*, 364 F.3d 1148 (9th Cir. 2004), affirmed a lower court ruling which rejected a prison policy which placed a blanket ban on an inmate's ability to receive through the mail material downloaded from the internet. Other than *Clement*, there is a dearth of cases which address an inmate's right to receive through the mail internet-generated materials. During the time period involved in this case, the court has found *Clement* to be the only decision to address such issue. One case does not constitute "fair and clear notice" such that Kilby's policy of prohibiting an inmate's receipt of incoming mail containing internet material was so obviously unconstitutional that reasonable persons in Defendants' position would have known that they were violating Plaintiff's constitutional rights when they refused to allow him to receive mail containing such content.

Here, the court finds that Plaintiff has not demonstrated that he had a right to receive mail containing information downloaded from the internet which was clearly established at the time Defendants refused to allow him access to mail containing such material. Accordingly, Defendants are entitled to qualified immunity from damages on this claim.[10]

---

[10]Notwithstanding the court's recommendation that Plaintiff's constitutional challenges on this issue be dismissed on qualified immunity grounds, the undersigned notes that it is unlikely that Plaintiff presents either a viable due process or cruel and unusual punishment claim in this regard. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (the Eighth Amendment proscribes only those conditions of

**E. Respondeat Superior**

To the extent Plaintiff seeks to impose liability on Defendants Allen and Campbell

for the acts of their subordinates regarding the alleged denial of his access to the courts, such

claim entitles him to no relief. A 42 U.S.C. § 1983 does not allow a plaintiff to hold

supervisory officials liable for the actions of their subordinates under either a theory of

*respondeat superior* or vicarious liability. *Marsh v. Butler County*, 268 F.3d 1014, 1035

(11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory

officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the

basis of *respondeat superior* or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234

(11th Cir.2003) (same); *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999), citing

*Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994); *Cook ex rel. Estate of Tessier

v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In

establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or

*respondeat superior*.). Thus, Defendants are only liable if they "personally participate[d] in

the alleged unconstitutional conduct or [if] there is a causal connection between [their]

actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360 (citation

---

confinement which involve the wanton and unnecessary infliction of pain; only actions which deny
inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth
Amendment.);*Sandin v. Conner,* 515 U.S. 472, 484 (1995) (while "States may under certain
circumstances create liberty interests which are protected by the Due Process Clause ... these interests
will be generally limited to freedom from restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due Process Clause of its own force, ...
nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents
of prison life.").

omitted). "'The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' [*Hartley*, *supra*.] (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)." *Gray*, 458 F.3d at 1308.  To sufficiently notify the supervisor, the deprivations must not only be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

There is no showing that Defendants Allen and Campbell personally participated in the actions about which Plaintiff complains in this matter.   Further, Plaintiff has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants Allen and/or Campbell failed to take corrective action.   The court, therefore, concludes that Defendants Allen and Campbell are entitled to summary judgment as to Plaintiff's claims against them on the basis of *respondeat superior*.

### F. Negligence Claim

Plaintiff alleges that Defendants were negligent in failing to provide him access to various types of legal material and supplies which he needed to prepare a federal habeas petition by failing to intervene and properly assist him in this regard.  Plaintiff's claim of negligence, at best, show only a lack of due care by prison officials which is not actionable under 42 U.S.C. § 1983.  The protections of the Constitution "are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 333 (1986); *see also Whitley v. Albers,* 475 U.S. at 319 (holding that

a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . .safety"). Because Plaintiff's allegation of negligence does not rise to the level of a constitutional violation, it provides no basis for relief in this 42 U.S.C. § 1983 action.

## G. The Conspiracy Claim

Plaintiff maintains that Defendants conspired to deprive him of various legal materials he needed to file a habeas petition in federal court and also conspired to maintain an inadequate law library at Kilby. Vague and conclusory allegations of conspiracy will not support a § 1983 claim. *Fullman v. Graddick*, 739 F.2d at 556-557. Other than his self serving allegations, Plaintiff presents nothing to this court which indicates that Defendants entered into a conspiracy to deny him access to the courts and/or legal materials. The court, therefore, concludes that Plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Fullman*, 739 F.2d at 556-557.

## H. Failure To Train and Inadequate Law Library Policies

Plaintiff alleges that Defendants failed to adequately train staff with respect to providing him with meaningful access to the courts. He further alleges that there is no adequate law library policy in place which also negatively impacted his ability to access the courts. (*Doc. No. 1*.)

As already determined, Plaintiff has failed to demonstrate that he was denied constitutionally adequate access to the courts. Therefore, his allegations concerning

inadequate law library staff training and inadequate law library policies in this regard , which amount to no more than additional theories of liability in support of his denial of access to courts claim, are of no legal significance.   Nonetheless, although Plaintiff may believe that the unavailability of certain legal materials as caused by an  alleged lack of adequate training or law library policies  hindered his ability to  prosecute a federal habeas petition in the manner he desired, he has presented no evidence that either law library personnel or law library policies and/or regulations were unreasonable or that they operated in such a manner as to restrict or deny Plaintiff access to the courts so as to cause actual injury.  *See Lewis*, *supra*.  Because Plaintiff's pleadings fail to any provide any evidence of actual injury regarding his alleged inability to access the court which is attributable to deficiencies in training of  law library and/or legal staff or with the policies and regulations regarding the operation of Kilby's law library, the court concludes Defendants should be granted summary judgment on these claims.

## I.  *Equal Protection*

Plaintiff alleges that Defendants acted in a discriminatory manner with regard to his requests for and/or ability to access certain legal material.   Equal protection principles require generally that government officials behave in a way such  "that all persons similarly situated should be treated alike."  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, allege that he is similarly situated with other persons who

were treated differently and that the reason for the differential treatment was based on some constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Com'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers, rather than against instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment. Here, what Plaintiff complains of is his disappointment in the unavailability and/or inaccessibility of certain legal decisions which he desired. Plaintiff regards this conduct as actionable unequal treatment.

Nevertheless, Plaintiff does not allege that he was subjected to any tangible unequal treatment by Defendants' conduct such as their decision being based upon a constitutionally protected interest. As a matter of law, therefore, the allegations supporting this claim, without more, do not rise to the level of a constitutional violation.

### J.  Failure to Follow Regulations and Procedures

To the extent Plaintiff alleges that Defendants violated his constitutional rights when they failed to follow various administrative regulations and standard operating procedures regarding the operation of Kilby's law library and/or inmate access to legal material, such claim entitles him to no relief.  The mere violation of departmental regulations and/or standard operating procedures does not assert a violation of an inmate's constitutional rights. *Sandin v. Conner,* 515 U.S. 472 (1995); *Harris v. Birmingham Board of Education,* 817 F.2d 1525 (11th Cir. 1987). Defendants are, therefore, entitled to summary judgment on this claim.

### K.  State Law Claims

Plaintiff requests that this court adjudicate his pendent state law claims for negligence and intentional infliction of emotional distress against Defendants.  Review of any pendent state law claim is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the court concludes that exercise of such jurisdiction is inappropriate.

Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court

has jurisdiction. To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.' " *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir. 1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975). *L.A. Draper and Son v. Wheelabrator Frye, Inc.,* 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers,* 383 U.S. 715 . "If the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son,* 735 F.2d at 428. In view of this court's resolution of the federal claims presented by Plaintiff, any pendent state claims are due to be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority,* 677 F.2d 818 (11th Cir. 1982).

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment, as amended, (*Doc. Nos. 10, 26*) be GRANTED;

2.  Judgment be ENTERED in favor of Defendants and against Plaintiff;

3.  Plaintiff's pendent state law claims be DISMISSED without prejudice;

4.  This case be DISMISSED with prejudice; and

5.  The costs of this proceeding be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **September 9, 2010**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done, this 25th day of August 2010.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE